## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**NIKI FRENCHKO**            :      **Case Number:**
c/o Barron, Peck, Bennie & Schlemmer   :
3074 Madison Rd.               :      **Judge:**
Cincinnati, Ohio 45209,        :

        Plaintiff,          :
    -vs-                    :
                         :

**PAUL MONROE**            :
**(official and individual capacity)**   :
160 High Street N.W.          :
Warren, Ohio 44481          :
                         :
       And              :
                         :

**TRUMBULL COUNTY**       :
160 High Street N.W.          :
Warren, Ohio 44481          :
                         :
       And              :
                         :

**TRUMBULL COUNTY**       :
**BOARD OF COMMISSIONERS**   :
160 High Street N.W.          :
Warren, Ohio 44481          :
                         :
       And              :
                         :

**TRUMBULL COUNTY**       :
**SHERIFF'S DEPARTMENT**    :
160 High Street N.W.          :
Warren, Ohio 44481          :
                         :
       And              :
                         :

**SARGAENT HAROLD WIX**   :
**(official and individual capacity)**   :
160 High Street N.W.          :
Warren, Ohio 44481          :
                         :
       And              :

1

SARGENT ROBERT ROSS
**(official and individual capacity)**
160 High Street N.W.
Warren, Ohio 44481

        And

**MAURO CANTALAMESSA**
**(official and individual capacity)**
160 High Street N.W.
Warren, Ohio 44481

        And

**FRANK FUDA**
**(individual capacity)**
160 High Street N.W.
Warren, Ohio 44481

      Defendants.

---

## VERIFIED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF WITH JURY DEMAND

---

Plaintiff Niki Frenchko states the following for her Complaint against Defendants Trumbull County, Trumbull County Commissioners, Trumbull County Sheriff's Department, Paul Monroe, Frank Fuda, Mauro Cantalamessa, Harold Wix, and Robert Ross:

### INTRODUCTION

1. This is an action under 42 U.S.C. § 1983 for a ruthless false arrest intended to punish a political adversary for criticizing the County Sheriff in violation of the First, Fourth, and Fourteenth Amendments of the United States Constitution, as

well as Ohio law. Defendants all participated directly in a malicious arrest of County Commissioner Frenchko because she criticized Sheriff Monroe for accusations that Trumbull County inmates receive poor medical treatment, and because Plaintiff Frenchko refused to apologize to Sheriff Monroe. In fact, after expressly telling Commissioner Fenchko that she was disrupting a meeting because she "talking about" the County's "top law enforcement officer," Defendants then proceeded to demand an apology. After Commissioner Frenchko refused to apologize, Defendants arrested her for disrupting a public meeting based upon a facially unconstitutional statute. Indeed, R.C. § 2917.12 permits a government to arrest a person for speech that "outrages the sensibilities" of a government board and hurts the government's feelings. This statute facially discriminates against viewpoints, it is vague, and it violates the overbreadth doctrine. In addition to this false arrest, Sheriff Monroe has continued a pattern of abusing his police power to intimidate Commissioner Frenchko with battery and unlawful seizures to interfere with her civil rights. In fact, Sheriff Monroe specifically seized Commissioner Frenchko's phone and assaulted her in order to intimidate her and deprive her of her right to take video recordings in an open public meeting in a public building.

## PARTIES

2. Plaintiff Niki Frenchko ("Frenchko") is a County Commissioner in Trumbull County, and she resides in Trumbull County, Ohio.

3. Defendant Paul S. Monroe ("Monroe") is the Trumbull County Sheriff, and he is named here in his individual and official capacities.

3

4. Defendant Mauro Cantalamessa ("Cantalamessa") is one of the Trumbull County Commissioners, and he is named here in both his individual and official capacities.

5. Defendant Frank Fuda ("Fuda") was the President of the Board of Commissioners, and he is named here in his individual capacity, as he is no longer has an official capacity.

6. Defendant Sargent Harold Wix ("Wix") is a deputy of the Trumbull County Sheriff's Department, and he is named here in both his individual and official capacities.

7. Defendant Sargent Robert Ross ("Ross") is a deputy with the Trumbull County Sheriff's Department, and he is named here in both his individual and official capacities.

8. Defendant Trumbull County Sheriff's Department ("Sheriff's Department") is the law enforcement agency for Trumbull County, Ohio.

9. Defendant Trumbull County Board of Commissioners ("Board") is the political body of Trumbull County, Ohio.

10. Defendant Trumbull County ("County") is a body politic, which is capable of being sued under R.C. § 301.22.

11. This Complaint may refer to all Defendants named in their individual capacities as "Individual Defendants" from time to time.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over Commissioner Frenchko's claims because they are brought primarily under 42 U.S.C. § 1983, and they are substantively questions of federal law.

4

13. This Court has ancillary jurisdiction over Commissioner Frenchko's state law claims because they relate to her federal claims.

14. Venue is proper in this Court because the transactions and occurrences happened in Trumbull County, Ohio.

## BACKGROUND INFORMATION

15. Commissioner Frenchko is a Trumbull County Commissioner.

16. Commissioner Frenchko is determined to bring accountability to Trumbull County, and she uses her position as commissioner to vocalize her criticisms of County officials when she feels those officials are not properly performing their duties.

17. For example, Commissioner Frenchko has criticized Defendants for reentering a contract with the same jail doctor in a manner she asserts lacks proper oversight and accountability.

18. Defendants Cantalamessa and Fuda were the other commissioners during most of the relative time period, and they comprised the majority of the Board of Commissioners.

19. Commissioner Frenchko is critical of Commissioners Cantalamessa and Fuda, and the trio are known to have passionate disagreements about the direction of the County.

20. In fact, it is safe to say that the Commissioners have had many disputes during meetings where they can raise their voices, interrupt one another, and sometimes level certain accusations at each other.

21. Simply stated, all the Commissioners are critical of each other, and Commissioner Frenchko suffers her share of criticisms.

22. Commissioner Frenchko is also vocally critical of Sheriff Monroe.

23. On June 1, 2022, Commissioner Frenchko read a letter from someone who held herself out as the mother of a previously incarcerated male at a Trumbull County jail.

24. The mother's letter claimed that the inmate requested, but did not receive, proper medical care.

25. On June 2, 2022, Sheriff Monroe drafted a letter chastising Commissioner Frenchko for reading the mother's statement during a public meeting. (Exhibit 1).

26. According to Sheriff Monroe, he investigated the allegations, and Sheriff Monroe stated that he disagreed with Frenchko's statements.

27. Moreover, Sheriff Monroe complained that Commissioner Frenchko did not follow the complaint procedure that Sheriff Monroe believes that she should follow. (Id.)

28. However, the letter fails to provide any authority the Sheriff has to actually demand that a commissioner follows his desired complaint procedure. (Id.)

29. Nonetheless, Defendant Monroe's letter continues to spout dubious authority as rationale to silence Commissioner Frenchko's speech.

30. According to the letter, Sheriff Monroe claimed that Commissioner Frenchko "besmirched the performance of the men and women operating the Trumbull County jail . . ."

31. Finally, at its conclusion, Sheriff Monroe's letter demanded a "public apology" from Commissioner Frenchko in the "same public forum as was the publication of" what Sheriff Monroe claims were "false accusations."

32. Thus, Sheriff Monroe's letter expressly claims (wrongly) that Commissioner Frenchko must follow a complaint procedure he demanded and publicly apologize in a Commissioners' meeting.

33. It was Sheriff Monroe's plan that the clerk would read this letter at the next Commissioners' meeting on June 7, 2022.

34. During that meeting, Sheriff Monroe sent two deputies to the meeting—Defendant Wix and Defendant Ross.

35. This is abnormal.

36. Deputies did not normally attend Commissioners' meetings at the time, so it was obvious that these deputies were there because of the Defendants' plan to arrest Commissioner Frenchko.

37. Sheriff Monroe later claimed the deputies were there at the request of the other Commissioners, but this merely shows that Defendants were all planning and anticipating a verbal confrontation with Commissioner Frenchko prior to the meeting.

38. During the meeting-at-issue, Clerk Paula Vivoda-Klotz read Sheriff Monroe's letter into the record accusing Commissioner Frenchko of besmirching law enforcement officials.

39. And Clerk Paula Vivoda-Klotz read the portion of the letter demanding that Frenchko publicly apologize.

40. Commissioner Frenchko then decided to speak and defend herself against Sheriff Monroe's allegations.

41. As soon as she began to address the letter's contents, Defendants began texting one another.

42. In fact, upon information and belief, the Defendant Deputies and the Defendant Commissioners were communicating with Sheriff Monroe.

43. Commissioner Frenchko continued to speak, defend herself, and criticize Sheriff Monroe's oversight of the County jail.

44. When Commissioner Frenchko began speaking more about the inmate's allegations, Defendant Commissioner Cantalamessa interrupted her and claimed that she was beginning to "disrupt" the meeting because she "was talking about the chief law enforcement officer of Trumbull County."

45. Therefore, Defendants made it perfectly clear that mere criticisms of their sheriff constituted a "disruption" of a public meeting.

46. Defendants continued arguing with Frenchko that her speech was "unacceptable."

47. However, it was the Defendants who were disrupting the meeting at that time because they were unable or unwilling to keep quiet and not interrupt Commissioner Frenchko while she was speaking.

48. Defendant Fuda had just permitted the Clerk to read criticisms chastising Frenchko, who is his political opponent, but when Frenchko criticized their political ally, these criticisms were allegedly "disruptive."

49. In other words, Defendants decide what speech is "disruptive" solely on the viewpoints that are expressed.

50. After Defendant Cantalamessa argued she was allegedly disruptive for criticizing Sheriff Monroe, the deputies then began approaching Commissioner Frenchko.

51. Commissioner Frenchko attempted to continue and finish her speech.

52. Defendants began to demand that Frenchko "apologize to the Sheriff."

53. Defendants kept interrupting Commissioner Frenchko because she kept making critical statements and refusing to apologize to Sheriff Monroe.

54. Then, Defendant Wix walked behind Commissioner Frenchko while she was seated, and he ordered Commissioner Frenchko to stand up.

55. Commissioner Frenchko asked Defendant Wix why she needed to stand.

56. Instead of informing her of his reasoning, Defendant Wix offensively yanked the chair she was sitting in for no apparent necessary reason.

57. Defendant Wix intentionally pulled the chair to intimidate, punish, and coerce Commissioner Frenchko into submitting to his absurd demands.

58. Defendants Wix and Ross then forcefully escorted her from the meeting, and they arrested her for disrupting a public meeting.

59. Defendants unfortunately did not remedy this poor judgment, and they instead followed through with filing dubious criminal charges against Commissioner Frenchko for disrupting a public meeting under R.C. § 2917.12.

60. Sheriff Monroe ordered, permitted, and encouraged this malicious prosecution of his political rival in bad faith because he wanted to punish Frenchko for criticizing him, the jail's medical services, and refusing to publicly apologize.

61. R.C. § 2917.12 (the "Statute") states the following:

> (A) No person, with purpose to prevent or disrupt a lawful meeting, procession, or gathering, shall do either of the following:
> > (1) Do any act which obstructs or interferes with the due conduct of such meeting, procession, or gathering;
> > (2) **Make any utterance**, gesture, or display which **outrages the sensibilities of the group**. (emphasis added).

62. There is no objective standard in this Statute because it depends on the subjective "sensibilities" of the government listener.

9

63. Essentially, this Statute provides the government the unbridled discretion to arrest anyone for any comment made during a public meeting because it makes the government mad.

64. The Generally assembly has seemingly passed a new version of this Statute which goes into effect on April 6, 2023, but this amendment doubles down on this vague, viewpoint-based law.

65. According to the new version, it is still unlawful to make any utterance, which "outrages the sensibilities" of the government.

66. Here, after Defendants arrested Commissioner Frenchko, Defendants lacked the self-awareness to even conceal their motives in the public.

67. Commissioner Cantalamessa expressly stated to reporters that "[t]o talk about something that is unfounded or make something that is not necessarily true into something that's true, we can't do that with other elected officials." https://www.wkbn.com/news/local-news/commissioner-niki-frenchko-arrested-at-meeting/

68. This post-arrest comment follows the clear trend that the Defendants claimed Commissioner Frenchko was largely "disruptive" because she was "talking about the chief law enforcement officer of Trumbull County."

69. A special prosecutor was ultimately assigned to prosecute the case against Commissioner Frenchko.

70. Frenchko's Counsel issued discovery requests during the malicious prosecution.

71. Frenchko's Counsel informed the special prosecutor he was seeking the text messages, video surveillance, and phone records of the individual Defendants here

because they were seen texting and seemingly coordinating their efforts in the time leading up to Commissioner Frenchko's dubious arrest.

72. Shockingly, it became known that Defendant Cantalamessa had his phone delete and destroy evidence related to the criminal prosecution.

73. Upon information and belief, the other Defendants deleted records as well.

74. Surprisingly, the Special Prosecutor claimed that these records relating to the arrest were not the County's problem because they were communications contained on the Defendants' personal devices.

75. This is entirely incorrect because any communications related to a public body's activities are public records under the Ohio Open Records Act regardless of whether they are located on a public device, or on a personal device or email account.

76. More importantly, people are not able to lawfully purge evidence related to an ongoing criminal prosecution, and Mauro Cantalamessa recently again publicly acknowledged that his phone deletes records.

77. The special prosecutor later dismissed the case against Commissioner Frenchko even though the entire exchange was captured on video.

78. In other words, there was plenty of evidence about what occurred.

79. The evidence just showed that there was no probable cause or ability to criminally punish Commissioner Frenchko for refusing to submit to a sheriff's ego.

80. Defendants' actions were not just dubious or negligent, Defendants intentionally and maliciously used their police power in bad faith to arrest Commissioner Frenchko because she was criticizing the County's "top law enforcement" official, and she would not publicly apologize when demanded to do so.

81. Simply stated, Defendants battered Commissioner Frenchko, they humiliated her, they restrained her, they caused emotional suffering, and they abused the justice system because Commissioner Frenchko upset them with protected speech and would not apologize for it.

82. Unfortunately, Defendant Monroe was not finished with his abuse of power.

83. Recently, Defendant Monroe attended a commissioners' meeting himself.

84. Commissioner Frenchko was live streaming the public meeting.

85. The meeting was a noticed public meeting in a public building that the public could freely attend.

86. During the meeting, Sheriff Monroe was seated.

87. Commissioner Frenchko was again making suggestions concerning the medical services at the County Jail.

88. Sheriff Monroe is seen on video getting out of his chair and rapidly approaching Commissioner Frenchko.

89. Sherriff Monroe is heard objecting to the video and claiming that he did not consent to being video recorded.

90. However, his "consent" is not needed.

91. Indeed, it is well-established that the Ohio Open Meetings Act guarantees that people may record public meetings.

92. Moreover, it is common sense that videos can and will be present at public meetings.

93. The media for example may show up at will and record public meetings.

94. Regardless, Sheriff Monroe approached Commissioner Frenchko protesting, and he grabbed her smartphone, which was on a stand.

95. You can literally see his hand cover the lens in the video.

96. Commissioner Frenchko was holding the phone stand at the time.

97. Sheriff Monroe then snatched the phone and slammed it on the table.

98. Sheriff Monroe has since attempted to rewrite recorded reality, and he tried to bizarrely claim that Commissioner Frenchko just randomly tried to slap his hand, but that is offensive to both the truth and common sense.

99. Moreover, even the media's review could easily determine that Monroe "appear[ed] to be trying to reach for the phone in the video." https://www.wfmj.com/story/48523144/commissioner-frenchko-accuses-trumbull-county-sheriff-of-attempting-to-unlawfully-seize-phone

100. Sheriff Monroe has also contradicted his own statements.

101. Sheriff Monroe also said that he felt Frenchko "recording him to be an invasion of his privacy and that he had 'every right' to move the phone. ' (Id.)

102. Therefore, he admitted that he did indeed seize control of Commissioner Fenchko's property under the assertion he has "every right" to seize her property.

103. Sheriff Monroe's own admissions exhibit that his actions were intentional, and that he expressly decided to exercise dominion over her property to stop her from recording during a public meeting.

104. These actions were not motivated to protect the public.

105. These actions were individually motivated to retaliate against and punish a political rival.

106. These actions were made by the final decisionmakers, were made according to Defendants' policies, or they were otherwise ratified by the County Defendants.

## COUNT I

## 42 U.S.C. § 1983 - First Amendment Facial Challenge—Free Speech

### Against All Defendants

107.     Commissioner Frenchko restates all previous paragraphs.

108.     Under the First Amendment of the United States Constitution, laws cannot restrain or punish speech based upon viewpoints.

109.     R.C. § 2917.12 regulates viewpoints because it makes it a criminal offense to make any utterance that outrages the sensibilities of a government board during a public meeting.

110.     Consequently, if any person expresses any viewpoint during a public meeting that hurts the government's feelings, the government has the unbridled discretion to criminally charge that person.

111.     This viewpoint-based restraint facially violates the First Amendment because it restrains and punishes viewpoints based upon the listener experiencing offense because of those viewpoints.

112.     Moreover, the Statute is unconstitutional because it runs afoul of the overbreadth doctrine.

113.     Although there are theoretically some circumstances where the Statute might restrain fighting words, the Statute is clearly capable of restraining and criminalizing protected criticisms of elected officials.

114.     Here, Defendants used this Statute to arrest and retaliate against Commissioner Frenchko because she allegedly "besmirched" the Sheriff's Department, criticized the top County law enforcement official, and refused to apologize for her criticisms.

115. This Statute was directly utilized to punish a viewpoint on matters of great public concern, which included no fighting words.

116. Commissioner Frenchko is entitled to injunctive relief, declaratory judgment, attorney fees, costs, and compensatory and nominal damages.[1]

## COUNT II

## 42 U.S.C. § 1983 - Fourteenth Amendment Facial Challenge—Due Process

### Against All Defendants

117. Commissioner Frenchko restates all previous paragraphs.

118. Statutes violate the Fourteenth and First Amendments when they are facially vague.

119. R.C. § 2917.12 is vague because "outrages the sensibilities" is a subjective standard providing the government listener with the unbridled discretion to determine what constitutes a violation of the Statute.

120. The potential criminal speech, and whether that speech is unlawful, is completely dependent on the "sensibilities" of the government, which can have different outcomes in different meetings depending on the particular emotional fragility of any particular government body.

121. There is no objective standard that a speaker can determine what she can and cannot say to not face possible arrest.

122. Here, the vagueness of this Statute was apparent because Defendants used this Statute to retaliate against Frenchko because she hurt the Defendants' feelings and refused to publicly apologize.

---

[1] Under the 11th Amendment, Frenchko seeks only injunctive relief regarding the Attorney General. All claims for money damages are against the County actors.

123. Commissioner Frenchko is entitled to injunctive relief, declaratory judgment, attorney fees, costs, and compensatory and nominal damages.[2]

## COUNT III

### 42 U.S.C. § 1983 - First Amendment Retaliation and Compelled Speech
### All Defendants in all Capacities

124. Commissioner Frenchko restates all previous paragraphs.

125. Defendants all retaliated against Frenchko for criticizing law enforcement officials and refusing to publicly apologize.

126. There is ample notice to public officials that they cannot arrest and retaliate against people for criticizing law enforcement and government officials.

127. There is ample notice that public officials cannot punish people for refusing to state allegiance to a government or its officials.

128. Indeed, it is well known that a government has no power to compel most speech, let alone apologies.

129. Nonetheless, Defendants maliciously ignored their Constitutional duties to not retaliate against Commissioner Frenchko for her criticisms and refusal to apologize.

130. Defendants were not acting in the public's interest, but they were rather acting in bad faith to retaliate against their political rival.

131. Defendants intended to humiliate and emotionally harm Commissioner Frenchko.

---

[2] Under the 11th Amendment, Frenchko seeks only injunctive relief regarding the Attorney General. All claims for money damages are against the County actors.

132. Defendants had the final decision-making authority to arrest and file charges against Commissioner Frenchko, and they all worked together to abuse that power.

133. Defendants damaged Frenchko, they humiliated her intentionally, and they caused her emotional damage relating to this unlawful arrest.

134. Commissioner Frenchko is entitled to injunctive relief, declaratory judgment, compensatory damages, nominal damages, attorney fees, and costs against all Defendants, as well as punitive damages against the individual Defendants.

## COUNT IV

### 42 U.S.C. § 1983 - Fourth Amendment - Malicious Arrest, Malicious Prosecution, and Unlawful Seizure of Person

### All Defendants in all Capacities

135. Commissioner Frenchko restates all previous paragraphs.

136. Defendants worked together and conspired to punish Commissioner Frenchko.

137. Defendants seized the person of Commissioner Frenchko without probable cause to arrest her.

138. Defendants unlawfully arrested Commissioner Frenchko without probable cause.

139. Defendants maliciously prosecuted Commissioner Frenchko without probable cause to even arrest her, let alone prosecute her for refusing to apologize.

140.    No reasonable government official would believe he had the ability to arrest a commissioner during a meeting for criticizing a Sheriff's department and refusing to apologize.

141.    Defendants were not protecting the public.

142.    On the contrary, Defendants maliciously seized Commissioner Frenchko and arrested her for the purpose of retaliating against her for her critical viewpoints and refusal to apologize.

143.    Defendants acted in bad faith, and with a conscious disregard for Commissioner Frenchko's rights.

144.    Defendants damaged Frenchko, they humiliated her intentionally, and they caused her emotional harm relating to this unlawful arrest.

145.    Commissioner Frenchko is entitled to injunctive relief, declaratory judgment, compensatory damages, nominal damages, attorney fees, and costs against all Defendants, as well as punitive damages against the individual Defendants.

<u>**COUNT V**</u>

<u>**False Arrest**</u>

**All Individual Defendants in Their Individual Capacities**

146.    Commissioner Frenchko restates all previous paragraphs.

147.    Defendants had no lawful authority or probable cause to arrest or otherwise confine Commissioner Frenchko.

148.    Regardless, Defendants intentionally restrained, arrested, and confined Commissioner Frenchko.

149.    Commissioner Frenchko was aware of her arrest, and she did not consent to her arrest.

150.    Defendants acted maliciously and in conscious disregard of Frenchko's rights.

151.    Defendants damaged Frenchko, they humiliated her intentionally, and they caused her emotional harm relating to this unlawful arrest.

152.    Commissioner Frenchko is entitled to injunctive relief, declaratory judgment, compensatory damages, nominal damages, attorney fees, costs, and punitive damages.

## COUNT VI

### Malicious Prosecution

### All Individual Defendants in Their Individual Capacities

153.    Commissioner Frenchko restates all previous paragraphs.

154.    Defendants had no lawful authority or probable cause to arrest or otherwise confine Commissioner Frenchko.

155.    Regardless, Defendants filed charges against Commissioner Frenchko.

156.    Defendants acted maliciously and in conscious disregard of Frenchko's rights.

157.    As a result, Frenchko suffered damages apart from her initial arrest.

158.    Defendants damaged Frenchko, they humiliated her intentionally, and they caused her emotional harm relating to this prosecution.

159.    Commissioner Frenchko is entitled to injunctive relief, declaratory judgment, compensatory damages, nominal damages, attorney fees, costs, and punitive damages.

## COUNT VII

### Civil Conspiracy

### All Individual Defendants in Their Individual Capacities

160.     Commissioner Frenchko restates all previous paragraphs.

161.     Defendants worked together, and they conspired to falsely arrest and later maliciously prosecute Commissioner Frenchko.

162.     Defendants damaged Frenchko, they humiliated her intentionally, and they caused her emotional harm relating to this unlawful arrest.

163.     Commissioner Frenchko is entitled to injunctive relief, declaratory judgment, compensatory damages, nominal damages, attorney fees, costs, and punitive damages.

## COUNT VIII

### Battery

### Defendant Wix, Defendant Ross, and Defendant Monroe in their Individual Capacities

164.     Commissioner Frenchko restates all previous paragraphs.

165.     Defendant Wix had no probable cause to arrest or otherwise lay a finger on Commissioner Frenchko.

166.     Nonetheless, Defendant Wix offensively snatched and pulled Commissioner Frenchko's chair in an offensive manner while she was sitting in it.

167.     Defendants further battered Frenchko when they handcuffed her with no probable cause and for no reason but to humiliate and intimidate her.

168.     Defendant Wix made this offensive contact with Commissioner Frenchko's person intentionally with the purpose to intimidate and punish Commissioner Frenchko for her criticisms.

169.     Defendant Monroe recently offensively grabbed Commissioner Frenchko's phone while it was attached to her person in order to deprive her of it.

170.     Defendants damaged Frenchko, they humiliated her intentionally, and they caused her emotional damage.

171.     Commissioner Frenchko is entitled to injunctive relief, declaratory judgment, compensatory damages, nominal damages, attorney fees, costs, and punitive damages.

## COUNT IX

### Assault

### Defendant Monroe in his Individual Capacity

172.     Commissioner Frenchko restates all previous paragraphs.

173.     Sheriff Monroe attended a public meeting, and he approached Commissioner Frenchko to deprive her of her right to record public meetings.

174.     Sheriff Monroe intentionally made a move at Commissioner Frencko's person that placed her in the fear of imminent physical harm.

175.     Sheriff Monroe assaulted Commissioner Frenchko maliciously and with the specific intent to intimidate her for recording him at the public meeting.

176.     Sheriff Monroe harmed Commissioner Frenchko.

177.     Commissioner Frenchko is entitled to injunctive relief, declaratory judgment, compensatory damages, nominal damages, attorney fees, costs, and punitive damages.

## COUNT X

## Destruction of Public Records Under R.C. § 149.351(B)(1) and R.C. § 149.351(B(2)

### All Defendants in All Capacities

178.    Commissioner Frenchko restates all previous paragraphs.

179.    Defendants communicated with one another in the time leading up to Commissioner Frenchko's malicious arrest.

180.    Defendants communications recorded the activities of Trumbull County, and they are public records.

181.    It does not matter whether Defendants communicated with each other on their own devices.

182.    Defendants have a statutory duty to maintain and not destroy these public records.

183.    Defendants and other staff destroyed these records.

184.    Commissioner Frenchko is entitled to statutory damages, attorney fees, costs, and injunctive relief.

## COUNT XI

## Civil Liability for Criminal Acts under R.C. §§ 2307.60(A)(1) and

## 2921.12(A)(1) for Destruction of Evidence

### All Individual Defendants

185. Commissioner Frenchko restates all previous paragraphs.

186. After Commissioner Frenchko's malicious arrest, Defendant Cantalamessa deleted his communications with the other Defendants leading up to Commissioner Frenchko's arrest.

187. These communications constituted evidence related to the criminal prosecution of Commissioner Frenchko.

188. Upon information and belief, the other Defendants also deleted records of these communications.

189. Under R.C. § 2921.12(A)(1), it is a criminal offense for a person who knows of a criminal proceeding to "destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation . . ."

190. Defendants and staff were aware of the proceeding against Frenchko, but they deleted certain relevant records regardless.

191. The special prosecutor claimed wrongly that these records were not public records wrongly, but regardless, these records related to a criminal proceeding.

192. These communications were never produced despite a valid request to obtain them.

193. The destruction of these records damaged Commissioner Frenchko.

194.    Defendants acted maliciously and in conscious disregard for Commissioner Frenchko's rights.

195.    Defendants have harmed Commissioner Frenchko, and she is entitled to compensatory damages, injunctive relief, punitive damages, and attorney fees and costs.


## COUNT XII

## Civil Liability for Criminal Acts Under R.C. §§ 2307.60(A)(1) and 2921.45

## Interference with Civil Rights

### All Individual Defendants

196.    Commissioner Frenchko restates all previous paragraphs.

197.    Defendants have established a pattern and practice of interfering with Frenchko's civil rights to not suffer wrongful arrest, seizure of her person, seizure of her property, and her freedom to speak with retaliation.

198.    R.C. § 2921.45 demands that no public official use his power to interfere with the civil rights of others.

199.    Defendants have acted maliciously with the conscious purpose of damaging Commissioner Frenchko.

200.    Defendants have harmed Commissioner Frenchko, and she is entitled to compensatory damages, injunctive relief, punitive damages, and attorney fees and costs.

## COUNT XIII

### 42 U.S.C. § 1983 - Fourth Amendment Seizure of Property

### Defendants Monroe, Trumbull County, Trumbull County Sheriff's Department, and Trumbull County Commissioners

201.    Commissioner Frenchko is entitled to damages.

202.    Commissioner Frenchko restates all previous paragraphs.

203.    Defendant Monroe intentionally seized Commissioner Frenchko's phone because he wanted to deprive her of her right to record him during a public meeting.

204.    Defendant Monroe did attempt to seize and succeed at seizing the personal property of Commissioner Frenchko with no probable cause to do so.

205.    Sheriff Monroe had no probable cause or reasonable belief that he had the authority to seize Commissioner Frenchko's cellphone.

206.    Defendant Monroe acted maliciously and in conscious disregard for Frenchko's rights.

207.    Defendant Monroe was the final decisionmaker regarding police policies within Trumbull County.

208.    Commissioner Frenchko was damaged, and she is entitled to damages, attorney fees, costs, punitive damages, injunctive relief, declaratory judgment, and all other relief available under law and equity.

## COUNT XIV

## Trespass to Chattel and Conversion

### Defendant Sheriff Monroe

209.    Commissioner Frenchko restates all previous paragraphs.

210.    Defendant Monroe intentionally grabbed and exercised control and dominion over Commissioner Frenchko's phone.

211.    Defendant Monroe had no legal right to exercise such control over Commissioner Frenchko's phone.

212.    Commissioner Frenchko is entitled to damages, injunctive relief, attorney fees, punitive damages, costs, and other available relief.

**WHEREFORE**, Commissioner Frenchko respectfully requests that this Court finds for her and awards her the following relief:

    a.  An order enjoining R.C. § 2917.12;

    b.  An order declaring that R.C. § 2917.12 is unconstitutional;

    c.  An order enjoining the County Defendants from continuing to unlawfully arrest Commissioner Frenchko;

    d.  An Order declaring that Commissioner Frenchko's arrest was unconstitutional;

    e.  Compensatory damages;

    f.  Nominal damages;

    g.  Attorney fees;

    h.  Costs and expenses;

    i.  Punitive damages against the Defendants in their individual capacities; and

    j.  All other relief this Court deems proper under law or equity.

26

Respectfully Submitted,

**/s/ Matt Miller-Novak**
Matthew Miller-Novak (0091402)
Steven C. Davis, Esq. (0065838)
Barron, Peck, Bennie & Schlemmer
3074 Madison Road
Cincinnati, Ohio 45209
(513) 721-1350
MMN@BPBSLaw.com
SCD@BPBSlaw.com

**/s/ David J. Betras**
David J. Betras (0030575)
6630 Seville Drive
Canfield, Ohio 44406
Telephone: (330) 746-8484
Facsimile: (330) 702-8280
Email: dbetras@bkmlaws.com

Attorneys for Plaintiff


Through Counsel, Commissioner Niki Frenchko requests a jury for all issues entitled to be tried in front of a jury.


**/s/ Matt Miller-Novak**

**VERIFICATION**

I verify that the facts contained within this Complaint are true to the best of my knowledge and belief under penalty of perjury.

_Niki Frenchko_

Niki Frenchko

This verification was signed before me on this _10_ day of ~~March,~~ *April* 2023, in _Trumbull_ County, OH.

_David J Betras_

Notary

DAVID J. BETRAS
Attorney at Law
NOTARY PUBLIC
STATE OF OHIO
Commission Has
Expiration Date
Section 147.03 O.R.C.

28