# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **NIKI FRENCHKO** | : | **Case Number:** 4:23-cv-00781 |
| | : | **Judge:** |
| Plaintiff, | : | |
| -vs- | : | |
| **PAUL MONROE, et al** | : | |
| Defendants. | : | |

## MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff Niki Frenchko moves this Court for a temporary restraining order and preliminary injunction to enjoin Defendants Monroe, Cantalamessa, Fuda, Wix, Ross, Trumbull County, Trumbull County Commissioners, and Trumbull County Sheriff's Department from continuing to destroy records and seizing her property unlawfully to interfere with her right to record public meetings. A Memorandum in Support of this Motion is attached.

Respectfully Submitted,

*/s/ Matt Miller-Novak*
Matthew Miller-Novak (0091402)
Steven C. Davis, Esq. (0065838)
Barron, Peck, Bennie & Schlemmer
3074 Madison Road
Cincinnati, Ohio 45209
(513) 721-1350
MMN@BPBSLaw.com
SCD@BPBSlaw.com

1

***/s/ David J. Betras***
David J. Betras (0030575)
6630 Seville Drive
Canfield, Ohio 44406
Telephone: (330) 746-8484
Facsimile: (330) 702-8280
Email: dbetras@bkmlaws.com

Attorneys for Plaintiff

**MEMORANDUM IN SUPPORT**

I. **INTRODUCTION**[1]

This is a case about government officials who abuse their police powers to punish their political rival. Defendants Monroe, Cantalamessa, Fuda, Wix, Ross, Trumbull County Sheriff's Department, Trumbull County Commissioners, and Trumbull County (collectively "Defendants") have conspired together to maliciously arrest, batter, assault, and seize Plaintiff Niki Frenchko ("Commissioner Frenchko") and her property. And they have destroyed public records and evidence to conceal their unlawful conduct.

There is no secret that Trumbull County's leadership is mired in contention. There is no secret that Commissioner Frenchko is critical of the majority leadership in Trumbull County. There is no secret that the majority leadership in Trumbull County does not appreciate Commissioner Frenchko's criticisms. There is no secret that Defendants also criticize Commissioner Frenchko. All the Parties in this Action are critical of one another.

However, the Defendants—not Frenchko—control Trumbull County's police power, and the Defendants are willing to abuse that power to punish Commissioner Frenchko. This Court should enjoin Defendants from using that power to destroy public records and unlawfully seize Commissioner Frenchko's property to interfere with her right to record public meetings.

---

[1] Every fact in this Motion is supported by the Verified Complaint, which Commissioner Frenchko signed and verified under oath.

### A. Defendant Sheriff Monroe demanded Commissioner Frenchko apologize for criticizing the Sheriff's Department.

In the summer of 2022, Commissioner Frenchko engaged in criticisms of inmate healthcare in the County jail. She cited a letter from an inmate's mother.

Defendant Monroe was angry. Sheriff Monroe wrote a letter condemning Commissioner Frenchko for her criticisms, and he did not pull any punches. Indeed, Sheriff Monroe chastised Commissioner Frenchko for not complaining in a manner he deemed proper even though he has no authority over Commissioner Frenchko. Sheriff Monroe also accused Commissioner of "besmirching" the Sheriff's Department. Finally, Sheriff Monroe Demanded that Commissioner Frenchko apologize during a public meeting.

### B. Defendants conspired together to arrest Commissioner Frenchko during a Commissioners' meeting.

Defendants worked together to have the clerk read Sheriff's Monroe's letter during the meeting. Sheriff Monroe had two deputies present even though deputies did not typically attend commissioner meetings. After the clerk read Sheriff Monroe's letter, Commissioner Frenchko spoke to respond to Sheriff Monroe's letter. While Commissioner Frenchko was speaking, Commissioner Frenchko could see Defendants text messaging each other.

When Commissioner Frenchko began criticizing Sheriff Monroe further, the Defendants interrupted her and said that she was disrupting the meeting because she was "talking about the top law enforcement official in the County." Thus, according to Defendants, merely criticizing the Sheriff was a "disruption." Defendants then began demanding that Commissioner Frenchko apologize numerous times. Commissioner Frenchko refused to apologize.

4

Because Commissioner Frenchko would not apologize, Defendant Wix approached her from behind, and he yanked her chair away from the table while she sat in it. Defendant Wix ordered Commissioner Frenchko to stand, and she had no choice but to comply. Defendant Wix then ordered Commissioner Frenchko to leave her meeting. Defendants Wix and Ross arrested her claiming that she was guilty of disrupting a public meeting for refusing to apologize to Sheriff Monroe.

**C. Defendants destroyed evidence relating to Commissioner Frenchko's Prosecution.**

After arresting Commissioner Frenchko, Defendants then filed criminal charges against Commissioner Frenchko. During this retaliatory prosecution, Commissioner Frenchko's counsel, David Betras, requested text messages between the Commissioners. The special prosecutor claimed that these records were not under his control because these records were on personal devices. This was not true.

Regardless, Defendants never produced these requested records. On the contrary. Defendant Mauro Cantalamessa admitted that he allowed his phone to delete text messages. And Commissioner Cantalamessa recently admitted again that his phone deletes public records in a public meeting.

After her defense counsel continued to demand this *deleted* evidence, the special prosecutor dismissed the case against Commissioner Frenchko.

**D. Defendant Monroe seized Commissioner Frenchko's phone during a public meeting because she was recording it.**

Recently, Defendant Sheriff Monroe came to a commissioners' meeting. Sheriff Monroe sat in the audience. Commissioner Frenchko had her camera on a phone stand. When Sheriff Monroe was about to speak, Commissioner Frenchko turned her phone towards him.

5

On video, Sheriff Monroe approached Commissioner rapidly. Sheriff Monroe is on video stating that he did not consent to being recorded. Sheriff Monroe then lunged at Commissioner Frenchko, he grabbed her phone while she was holding the stand, and he slammed it on the table. After seizing her phone, Sheriff Monroe told the media that he had a right to take her phone because he claimed he had an expectation of privacy (even though it was a public meeting).

## II. THIS COURT SHOULD ENJOIN DEFENDANTS FROM DESTROYING PUBLIC RECORDS AND INTERFERRING WITH COMMISSIONER FRENCHKO'S RIGHT TO RECORD PUBLIC MEETINGS.

This Court should enjoin Defendants from continuing to interfere with Commissioner Frenchko's right to record public meetings, and from continuing to destroy public records and evidence. When deciding whether to issue a preliminary injunction, courts determine the following: (1) whether a plaintiff has a strong likelihood of success on the merits of her action; (2) whether a plaintiff would suffer irreparable injury without the injunction; (3) whether issuing the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Blue Cross & Blue Shield Mut. of Ohio v. Columbia/HCA Healthcare Corp.*, 110 F.3d 318, 322 (6th Cir. 1997). These "are factors to be balanced, not prerequisites that must be met." *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003). The degree of proof necessary for each factor depends on the strength of the other factors. *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 657 (6th Cir. 1996).

**A. Commissioner Frenchko is Likely to Succeed on the Merits**.

1. <u>Defendants have a pattern of abusing their police power to retaliate against their political rival.</u>

Before diving into Defendants' interference with Commissioner Frenchko's rights to record meetings and their destruction of records, it is important to understand their pattern of abusing their police power. Defendants believe wrongly that they have the right to use their police power to maliciously abuse Commissioner Frenchko because she criticizes them. The Sixth Circuit recently provided notice to all law enforcement officials that it is unlawful to arrest and punish people for merely criticizing officers. Nonetheless, Defendants live in a fractured fairytale where they believe they can arrest a fellow county commissioner for criticizing the county sheriff in the middle of her own meeting.

In *Wood v. Eubanks*, 25 F.4th 414 (6th Cir. 2022), a citizen wore a T-shirt that said "F*** the Police" to a county fair in Ohio. The police received complaints about the shirt. *Id*. at 419. The police officers instructed the citizen to leave the fair and escorted him from the property. *Id*. While they were escorting the citizen from the fair, the citizen called the officers, "f**king pigs," and "f**kin thugs with guns that don't uphold the United States Constitution." *Id*. at 420. The citizen called the officers "rat bastards." *Id*. He called one of the officers a "fat-ass." *Id*. The citizen accused the officers of committing battery." *Id*. The officers then arrested the citizen for disorderly conduct and obstructing official business. *Id*. at 421. The citizen filed a complaint against all the officers alleging numerous constitutional claims. The trial court dismissed the claims holding the officers were entitled to qualified immunity. The citizen appealed.

The Sixth Circuit reversed. The Sixth Circuit held that an officer falsely arrests a person when that officer lacks probable cause to arrest the plaintiff. The Sixth Circuit reasoned that officers have a duty to suffer criticisms. *Id.* at 423.

> Further, both the Supreme Court and this court have made clear that "police officers . . . 'are expected to exercise greater restraint in their response than the average citizen.'" Barnes v. Wright, 449 F.3d 709, 718 (6th Cir. 2006) (quoting Greene, 310 F.3d at 896). "Police officers are held to a higher standard than average citizens, because the First Amendment requires that they 'tolerate coarse criticism.'" D.D., 645 F. App'x at 425 (quoting Kennedy, 635 F.3d at 216); see also City of Houston v. Hill, 482 U.S. 451, 462-63, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987) ("**The freedom of individuals verbally to oppose or to challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state**."). *Id.* (emphasis added).

Despite their clear duty to suffer insult, the officers still attempted to argue that their arrest was proper because the citizen's "language consisted of personally abusive epithets" that "constitute fighting words." *Id.* The Sixth Circuit rejected this argument. *Id.* Rudeness and insult are not "grounds for a seizure." *Id.* at 424. And the citizen in *Wood* did not create a situation where violence was likely, and none of the officers appeared to view the citizens insults as an invitation to "fisticuffs" despite his profane insults. *Id.* 425. Consequently, the First Amendment protected the citizen's speech, and the officers lacked probable cause to arrest him for his profane insults. *Id.*

Here, Frenchko did not even use vulgarity like the plaintiff in *Wood*. On the contrary, she used her position as a commissioner, during her own commissioner's meeting, to peacefully read critical statements. She did not physically threaten any officer, she was seated, and she was responding to Defendant Sheriff Monroe's criticisms. Defendants claimed that Commissioner Frenchko was "disrupting" the meeting because she was "talking about the highest law enforcement official" in the County. After she

8

refused to apologize, deputies arrested her. Then, they maliciously prosecuted her, and they destroyed evidence trying to conceal their unconstitutional scheme.

This was no accident. Nor was this abusive arrest a one-time mistake in the heat of passion. Instead, Sheriff Monroe has established a practice of abusing his badge to punish and intimidate Commissioner Frenchko. And Sheriff Monroe has made it entirely evident that he will continue to use his police power to continually batter, falsely arrest, and maliciously prosecute Commissioner Frenchko, as well as interfere with her property rights and ability to record public meetings.

Although Commissioner Frenchko can certainly make a case for even greater protection at this point, she is respectfully requesting that this Court immediately restrain Defendants from (1) interfering with Commissioner Frenchko's rights to record Commissioner meetings to protect herself from further aggression, and (2) continuing to destroy public records and relevant evidence to conceal their unlawful conspiracies. These requests are both very necessary under these circumstances.

2. <u>Defendants unlawfully seized Frenchko's property and interfered with her right to record a public meeting.</u>

Police officers may not seize or search a person's cellphone without probable cause, and Ohio law does not permit a government to forbid a person to record a public meeting. The Fourth Amendment provides: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Riley v. California*, 573 U.S. 373, 381-2, 134 S. Ct. 2473 (2014). An officer generally cannot seize or search any property without first obtaining a judicial

9

warrant. *Id., generally* (holding that a search of a cellphone without a warrant or probable cause was unreasonable under the fourth amendment).

The Sixth Circuit Court of Appeals has held that seizures of property require probable cause. *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 543 (6th Cir. 2002). An officer can only seize a person's property without a warrant when: (1) an "officer has a reasonable and articulable suspicion that the property he wishes to seize is connected with criminal activity;" and (2) "the scope of the seizure must be reasonable, both in duration and in intrusiveness." *Id.* at 544. Thus, an officer must have some reasonable belief that property is somehow connected to criminal activity to seize the property without a proper warrant.

Here, there was no reasonable belief that Frenchko was committing a crime for recording a public meeting. On the contrary, Ohio law specifically mandates that any person has a right to record a public meeting, and that a public body may not forbid a person from recording their meetings. *McVey v. Carthage Twp. Trustees*, 4th Dist. Athens No. 04CA44, 2005-Ohio-2869 (4th Dist. 2005), *see also*, *Kline v. Davis*, 2001-Ohio-2625 (4th Dist. 2001).[2] Simply stated, there is no reasonable belief in Ohio that a person is engaged in a criminal act merely because she is recording a public meeting in a public building.

In this case, Sheriff Monroe realized that Commissioner Frenchko was recording him in the middle of a *public* meeting. It was a commissioners' meeting, and Sheriff Monroe was the guest at this meeting—not Commissioner Frenchko. Commissioner

---

[2] See also, Ohio Attorney General Sunshine Law Manual 2023 at pg. 113. https://www.ohioattorneygeneral.gov/Files/Publications-Files/Publications-for-Legal/Sunshine-Laws-Publications/2022-Sunshine-Manual.aspx

10

Frenchko was not threatening to throw the phone at Sheriff Monroe, and she was not otherwise engaged in criminal activity. There is nothing here that even hints at the reasonable belief that Commissioner Frenchko was in the commission of a crime involving her cellphone. Sheriff Monroe's fragile sensitivities do not amount to probable cause to seize Commissioner Frenchko's phone. If Sheriff Monroe does not want people recording him at a public meeting, then he should stay home. He has no right to batter Commissioner Frenchko and seize her property over his camera-shyness.

Commissioner Frenchko is very likely to succeed in her claims that Defendants unlawfully seized her phone and interfered with her right to record a public meeting. And because Defendants have established a pattern of maliciously battering and arresting Commissioner Frenchko, it is extremely important that she can record meetings to protect herself against future police abuse. This Court should immediately enjoin Defendants from interfering with her rights to record public meetings.

3. <u>Defendants have already unlawfully destroyed public records and evidence.</u>

Ohio's Public Records Act under R.C. § 149.43 requires public bodies to maintain and produce public records. Under the Act, electronic communications are public records. *State ex rel. Glasgow v. Jones*, 119 Ohio St.3d 391, 2008-Ohio-4788, 894 N.E.2d 686, ¶ 21 (2008). In *State ex rel. Glasgow v. Jones*, the state representative conceded that messages she sent in her official capacity are public records even when they were sent from her personal email accounts. *Id.* at ¶23; *see also*, *Sinclair Media III, Inc. v. City of Cincinnati*, Ct. of Cl. No. 2018-01357PQ, 2019-Ohio-2623, ¶ 14 (holding that emails and text messages are public records regardless of whether they are sent from publicly-issued devices or privately-owned devices).

A public body and its officials violate R.C. § 149.351(A) when they improperly remove, destroy, damage or otherwise dispose of public records. This Statute consequently permits an aggrieved person to bring an action to enjoin public officials from further destruction of public records. Moreover, under R.C. § 2921.12, it is illegal for a person to destroy records and evidence when that person is aware of an official proceeding or investigation that is in progress or is likely to occur.

Here, all Defendants are aware that they arrested and prosecuted Commissioner Frenchko because she publicly criticized Sheriff Monroe and refused to apologize. Nonetheless, Defendants permitted or otherwise destroyed communications and public records that related to their prosecution of Commissioner Frenchko. Specifically, Defendant Mauro Cantalamessa has publicly admitted that his phone deletes text messages every 30 days. According to him, this is a preset on his phone. However, it is commonsense that "presets" are just that—presets. A person can choose another setting that is not the factory preset. More importantly, if he is aware that his phone is deleting public records—which he admits—he clearly has the statutory duty to back up these public records through screenshots or other means. Defendants cannot just sit there and watch their phone delete public records and evidence they know relate to their malicious prosecution of a political rival because of a "preset."

Defendants have clearly thumbed their nose at their obligation to maintain public records on their phones. Because there is no reason to trust these Defendants to not continue to destroy public records and evidence, this Court should restrain them from further destruction of public records and evidence while this matter is litigated.

**B. Immediate relief is needed to stop irreputable harm.**

Because Defendants openly destroy records, there is no reason to wait. Indeed, further destruction of records will prejudice Commissioner Frenchko. Moreover, Defendants have no right under Ohio law to destroy public records. On the contrary, they have an express duty under Ohio law to not destroy public records.

Moreover, Defendant Sheriff Monroe came to a commissioners' meeting, and he unlawfully seized Commissioner Frenchko's phone. After he unlawfully seized her phone, he claimed that he had a right to do so. Because Sheriff Monroe seemingly believes he is permitted to seize Commissioner Frenchko's phone, there is no reason to believe that he will not continue to exercise control over her property without probable cause to do so in the future.

**C. Injunctive relief will not harm third parties.**

Enjoining Defendants will not harm parties before the Court. On the contrary, it will help third parties not before the Court. Members of the public should feel safe to record commissioner meetings without suffering battery. The public should feel that there are consequences for public officials who destroy public records. Injunctive relief is necessary to protect both Commissioner Frenchko and the public generally.

**D. Public policy favors immediate action.**

As the Sixth Circuit has observed, the preservation of constitutional rights is always in the public interest. *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994). And it is particularly in the public's best interest to protect public records documenting controversies within public office.

### III. CONCLUSION

Accordingly, Commissioner Frenchko respectfully requests that this Court enjoins all Defendants from destroying any further public records and evidence and interfering with her right to videotape open meetings.

Respectfully Submitted,

***/s/ Matt Miller-Novak***
Matthew Miller-Novak (0091402)
Steven C. Davis, Esq. (0065838)
Barron, Peck, Bennie & Schlemmer
3074 Madison Road
Cincinnati, Ohio 45209
(513) 721-1350
MMN@BPBSLaw.com
SCD@BPBSlaw.com

***/s/ David J. Betras***
David J. Betras (0030575)
6630 Seville Drive
Canfield, Ohio 44406
Telephone: (330) 746-8484
Facsimile: (330) 702-8280
Email: dbetras@bkmlaws.com

Attorneys for Plaintiff

### CERTIFICATE OF SERVICE

I certify that I served this Motion, along with the Verified Complaint, on Defendants' last known Counsel on this 17th day of April, 2023.

***/s/ Matt Miller-Novak***