1                      UNITED STATES DISTRICT COURT
                        NORTHERN DISTRICT OF OHIO
2                            EASTERN DIVISION

3
     NIKI FRENCHKO,                 ) Case No. 4:23-cv-781
4                                   )
               Plaintiff,           )
5                                   )
          vs.                       ) Cleveland, Ohio
6                                   ) Tuesday, April 18, 2023
     PAUL MONROE, et al.,           )
7                                   )
               Defendants.          )
8

9

10
               TRANSCRIPT OF MOTION HEARING PROCEEDINGS
11
               BEFORE THE HONORABLE J. PHILIP CALABRESE
12
                    UNITED STATES DISTRICT JUDGE
13

14

15

16

17

18

19

20   Official Court Reporter:   Gregory S. Mizanin, RDR, CRR
                                United States District Court
21                              801 West Superior Avenue
                                Court Reporters 7-189
22                              Cleveland, Ohio 44113
                                216.357.7036
23                              Gregory_Mizanin@ohnd.uscourts.gov

24

25      Proceedings recorded by mechanical stenography; transcript
            produced with computer-aided transcription.

1    APPEARANCES:

2

3    For Plaintiff Niki Frenchko:

4
          MATTHEW E. MILLER-NOVAK, ESQ.
5         Barron Peck Bennie & Schlemmer
          3074 Madison Road
6         Cincinnati, Ohio 45209
          513.721.1350
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          TUESDAY, APRIL 18, 2023

2                                  - - -

3                 (Proceedings commenced at 2:16 p.m.)

4                                  - - -

5                 THE COURT:  Good afternoon.

6           This is Case Number 4:23-cv-781, Niki Frenchko versus

7    Paul Monroe and others.

8           Counsel, will you please state your appearances for

9    the record.

10                MR. MILLER-NOVAK:  Matt Miller-Novak on behalf

11   of Commissioner Niki Frenchko.

12                THE COURT:  All right.  Thank you.  Thank you

13   for being here on short notice.

14          This is a lawsuit that was filed yesterday along with

15   a motion for temporary restraining order.  Temporary

16   restraining order proceedings of course may proceed ex

17   parte.

18          I'll note for the record that no counsel for any

19   defendant is present.

20          I'll also note for the record that yesterday, counsel

21   for the plaintiff, you in fact filed a notice detailing the

22   efforts at service notifying defense counsel and defendants

23   of the proceedings today.

24          Mr. Miller-Novak, would you please just briefly state

25   for the record the additional efforts since the filing of

1    that notice that you've made to advise the defendants and

2    their counsel of the proceedings today.

3              MR. MILLER-NOVAK:  Yes, Your Honor.

4         Actually, after I filed that notice with the Court

5    through the e-file system, I did call and leave phone

6    messages with both.  I believe it was -- Prosecutor Danso is

7    the head prosecutor.  I did get a bounceback on the e-mail

8    that he was out of office, and it gave the name of a Jason

9    Toth, who's an assistant prosecutor.  So I also called and

10   left a message with him yesterday afternoon.  And I talked

11   to Brodi Conover, who is their counsel on another case, and

12   we had tried again today before the hearing began, Your

13   Honor.

14             THE COURT:  All right.  Based on all those

15   efforts, the Court finds that the defendants and their

16   counsel through the office of the county prosecutor, who's

17   charged by law of representing them, had actual notice of

18   the proceedings today.

19        As I indicated, this is a motion for temporary

20   restraining order, which I have reviewed.

21        Mr. Miller-Novak, did you wish to speak to the motion?

22        You can remain seated and just speak directly into the

23   microphone, if you would, for the benefit of our court

24   reporter.

25             MR. MILLER-NOVAK:  I appreciate it, Your

1    Honor.

2         Honestly, Your Honor, I think it's somewhat of an easy

3    order to grant in the sense that what I'm asking you to do

4    is things that are her statutory right as well as their

5    duties under law.

6         So I've asked for -- you know, I haven't wanted to put

7    you in a place that we have to make big sweeping decisions

8    early, I've asked for two things that I think are very

9    narrow and very important in this case moving forward, so I

10   want to break them into two parts and just kind of make them

11   digestible here.  So it's really more about the information

12   and protecting information during the proceeding of this

13   case.

14        So after Ms. Frenchko was arrested in the summer of

15   2022, at least one of the commissioners after -- well, let

16   me step back for a second.  Her criminal defense attorney

17   had done the normal kind of requests for discovery and asked

18   for communications between the commissioners as well as the

19   deputies.

20        It was actually a guest prosecutor at that time had

21   suggested that those records were beyond the public's

22   control because they were on personal devices.  I provided

23   you plenty of law that shows that that is not true.  It is

24   practically black-letter law for those of us that practice

25   open-records cases, that just because you send

1    communications in your public duties on a private cell phone

2    in the state of Ohio, doesn't mean that they're not public

3    records.

4              THE COURT:  Well, those are two different

5    things you just said.  You recited the black-letter law,

6    which I think is accurate, but whether they're within the

7    control of the public body is a different question.

8         So I guess one of the questions I have is whether

9    you've served subpoenas to Verizon or T-Mobile or anyone

10   like that.

11             MR. MILLER-NOVAK:  We have not yet, Your

12   Honor, because under Ohio, you really shouldn't need to.

13   All you have to do is an Ohio public records request.  And,

14   again, it doesn't matter if it's personal e-mail accounts,

15   personal cell phones.  If the records are connected to your

16   duties as a public official in the state of Ohio, they are

17   public records, and they should be maintained as such.

18        The Supreme Court I believe has ruled on that.  There

19   are plenty of cases, Your Honor, where the Supreme Court has

20   compelled governments to produce private text messages and

21   e-mails from any public body, whether commissioners or city

22   council members or anything that is defined as a public body

23   or a public official in the state of Ohio.

24        And I think that's kind of a main issue here is

25   that --

1           THE COURT:  Have you made those public records

2     requests?

3           MR. MILLER-NOVAK:  I have prior to this case.

4     And those records were requested in conjunction with the

5     criminal proceedings against Commissioner Frenchko and they

6     were never produced, and approximately about seven weeks --

7     six to seven weeks before we filed suit, I have also

8     requested records -- I've issued record requests that would

9     have encompassed those, and it's been crickets on their end

10    in terms of providing those.

11         But what I can note to Your Honor is that Commissioner

12    Mauro Cantalamessa has on two separate occasions stated that

13    his phone has a preset and has admitted to deleting

14    essentially text messages on his phone every 30 days.

15         THE COURT:  So I guess, that being the case, I

16    don't understand why if you're getting stonewalled by the

17    defendants.

18         MR. MILLER-NOVAK:  Mm-hmm.

19         THE COURT:  On the public records requests, I

20    assume you have not sought a writ from the Court of Appeals

21    or the Supreme Court?

22         MR. MILLER-NOVAK:  Well, I have not.

23         THE COURT:  So I don't understand not having

24    taken steps to compel the city to honor the law, which, as I

25    understand it, they'd be required to do.  You haven't served

1    subpoenas on the providers.

2              MR. MILLER-NOVAK:  Well, I haven't served

3    subpoenas on the providers because I haven't had an active

4    case number in order to do that.

5              THE COURT:  Well, under Ohio law you don't

6    need one.

7              MR. MILLER-NOVAK:  Oh.  Well, in going towards

8    the writ -- so here's an issue with that.  Initially they

9    were requested pursuant to just criminal discovery under

10   that law.  In terms of our --

11             THE COURT:  Are they really criminal

12   discovery, though?  I mean, criminal discovery is much

13   narrower and different than -- open file in Ohio is

14   different than federal obviously, but it's not civil

15   discovery either.

16             MR. MILLER-NOVAK:  Well, there's actually some

17   case law that suggests that criminal discovery can be more

18   broad actually than Open Records Act because certain things

19   that might fall under an exemption to Open Records Act could

20   be discoverable in a criminal case.  And same thing with a

21   civil case, Your Honor.  You could ask for things that fall

22   under an exemption.  Like trade secrets, for instance.  If a

23   government has a trade secret of a company in an economic

24   development case and you request those records, it falls

25   under an exemption.  That wouldn't mean that it's not

1    discoverable in a civil case.  So there are circumstances

2    where civil discovery is more broad than Ohio Open Records

3    Act and then vice versa.

4         But regarding this case, Your Honor, I think the

5    concern -- and when you look at the Open Records Act,

6    there's two portions to it.  There's one, "I want the

7    records, give them to me."  And there's also another part of

8    the Open Records Act that gives a taxpayer standing or a

9    requester standing to actually enjoin the government from

10   destroying records.  And I think that's more what's at case

11   here because we have one of these commissioners who's openly

12   admitted that his cell phone has destroyed certain

13   communications that would fall under public records, and he

14   has --

15                THE COURT:  Given that admission, I don't know

16   why you haven't pursued those remedies through the state

17   courts, which my experience says that they do actively

18   enforce those remedies.

19                MR. MILLER-NOVAK:  They do, but the reason

20   we've decided to do that here, because, number one, I

21   believe that it falls under this court's ancillary

22   jurisdiction.  And the records that we are seeking directly

23   relate to the substantive case that falls under the Fourth

24   and First Amendment.

25         And the other issue is too, Your Honor, if you look at

1    standing for a writ for the open records case, it's very --

2    like it could be anybody, and it's any person.  If you look

3    at standing for getting an injunction for destruction of

4    records, you have to have a personal stake and a personal

5    harm.  That's required under the law.  And because this case

6    Commissioner Frenchko requested records that related to

7    communications surrounding her arrest during her own

8    meeting, that we think that it's so related and intertwined

9    with this that it probably would not have been the

10   responsible course to have two separate actions, we think we

11   would have probably run into a lot of briefing and

12   objections from the defendant.

13           If you want me to continue.

14                   THE COURT:  Yes, please.

15                   MR. MILLER-NOVAK:  Okay.

16           So that is largely why we're here today.  We're just

17   trying to preserve evidence, Your Honor, and preserve public

18   records.  If this gentleman has a preset on his phone -- and

19   I will add that he also publicly admitted again many months

20   later that his phone is now still deleting text messages and

21   is, quote/unquote, on a preset.  I obviously have owned many

22   cell phones in the last 20-some years, as many of us have,

23   and I'm not aware of any phone model that has a preset where

24   it automatically deletes text messages.

25                   THE COURT:  Mine does.

1          MR. MILLER-NOVAK:  Does it?

2          Well, we'll take him at his word, and maybe it does,

3     but --

4                    THE COURT:  But, see, that goes back to my

5     subpoena question because just because the phone is set that

6     way, doesn't mean that the provider doesn't have the

7     records.

8                    MR. MILLER-NOVAK:  I don't think it will, Your

9     Honor.  And the reason I don't think it will is because I'm

10    pretty sure cell phone records don't necessarily preserve

11    the messages themselves.  What they preserve is the

12    communication.  So to show a number -- texting a number, it

13    won't necessarily have the messages contained within that.

14    I do not believe that a --

15                    THE COURT:  I suspect we're going to find out

16    in the course of this litigation.

17                    MR. MILLER-NOVAK:  We most certainly are going

18    to subpoena things and find out, but what we're really

19    asking this court is since we know that there is a pattern

20    of at least one of these defendants openly admitting that he

21    has not changed the preset on his phone, because we all know

22    you can do that, and you can also take screenshots of your

23    public records, you can do that.  So he admits that he knows

24    that his phone is destroying public records and he allows it

25    to continue.

1          So what we're just asking for is that this court

2     orders that it -- any evidence relating to this case is

3     preserved, number 1.  Number 2, that any public records

4     contained on his or anybody else's phone or e-mail accounts

5     are also maintained and not destroyed during the pendency of

6     this case.

7          The other issue that we've come here today for is that

8     it's the open meetings law that essentially I cited at least

9     two cases that people have a right to record public meetings

10    in the state of Ohio of a public body.  And essentially

11    Commissioner Frenchko, because the county itself does not

12    videotape its meetings, it's just part of her thing, she

13    likes to live-stream the meetings so the public can see

14    every word that's spoken, everything that happens in her

15    mission of transparency.  In addition to that, as we've kind

16    of told the story, she does obviously not have a very good

17    relationship with the county sheriff's department and she's

18    had problems with them in the past, so she feels that she

19    needs to do it to protect herself.

20         Recently, in March of 2023, Sheriff Monroe attended a

21    commissioners meeting.  Now I think we all should understand

22    that this is a commissioners meeting, and technically any

23    other agent of the county is technically a visitor at a

24    commissioners meeting.  The public body is the

25    commissioners.  Mr. Monroe attended the meeting, and while

1    she was live-streaming it, she turned the camera to record

2    his comments during the meeting.  He very aggressively said,

3    "I do not consent to this."  He immediately approached her,

4    took the camera from her stand that was attached to her hand

5    and slammed it down on the table.

6          We've obviously made allegations in our complaint that

7    that is a violation of the Fourth Amendment and an unlawful

8    seizure of property as well as trespass to her property and

9    battery.  But in the meantime, I think what's really

10   important here is that she has a right in the state of Ohio,

11   and I would argue probably a First Amendment right as well,

12   to record a public meeting.

13         I don't think I cited it, but there was a recent

14   Southern District case called -- I think it was *Hicks versus*

15   *Crowley*, where the Southern District of Ohio did talk to

16   some length about the right to information in public

17   meetings under the First Amendment here.

18         So all we're asking is that her right to record

19   meetings, which is guaranteed under the state of Ohio and I

20   would argue the First and Fourteenth Amendments is no longer

21   interfered with during the pendency of this meeting because

22   certain statements might be made in these meetings that are

23   actually supportive of her claims.

24                    THE COURT:  Well, let me ask a couple other

25   questions that go beyond the specific motion that brings at

1    least you here today.

2          First, I know the lawsuit was just filed yesterday, so

3    we're at the earliest of early days in the case, but what

4    efforts at service have been made of the summons and the

5    complaint?

6                    MR. MILLER-NOVAK:  Well, I always start, Your

7    Honor, with sending waivers of service to see if those are

8    done, and these were -- I had my paralegal e-mail me the --

9    I was out of town, so I forwarded those to the head

10   prosecutor of the county.

11         Now, you know -- and just as matter of course that it

12   tends to represent counties in these cases, and I'm sure --

13   I don't know, you know, some of these individuals might get

14   their own counsel and things like that.  I don't know how

15   that will shake out, Your Honor.  But for at least now, I've

16   sent a copy of the complaint as well as this motion to the

17   head prosecutor as well as the assistant prosecutor.

18         And then I'm aware of an attorney in Cincinnati named

19   Brodi Conover with Bricker & Eckler, who represents the

20   county in another case, and I called and talked to him.  And

21   I also sent him a copy of the pleadings I think.

22                    THE COURT:  The reason I ask about that -- and

23   I'll just be upfront about this -- and I'll expect you to

24   file waivers if they come back promptly.  If not, my very

25   strong preference would be that you effect personal service

1    so as to minimize the time for responses because the minute

2    that defendants are represented, I expect them to appear in

3    person in this court through counsel, even before their

4    answer date.  I have never had defendants not respond to a

5    TRO motion before.  I understand that they're not served,

6    that they have no obligation to be here, but I do expect

7    them to fully participate in these proceedings.  And there's

8    some things that I have prepared to ask them about today and

9    I need to have that conversation with them.  You can advise

10   them of that, you can give them the transcript, but we will

11   be back here as soon as they have actual receipt of the

12   summons and complaint and process.

13        Next, let me ask you, what efforts to resolve this

14   dispute between Commissioner Frenchko and the defendants

15   have been made before filing suit?

16                 MR. MILLER-NOVAK:  I will say right now that

17   the relationship between these parties is kind of the

18   Hatfields and McCoys right now, Your Honor.  I don't know

19   that -- I don't know how welcoming ears will be, but, you

20   know, it's not as if it wasn't publicly known that her

21   criminal defense attorney, who is now my co-counsel, David

22   Betras, had expressed his feelings about the matter and his

23   intent to file suit and -- I mean, they've kind of doubled

24   down, in our opinion, when they came to another meeting and

25   seized her phone.  That isn't exactly a correction of course

1    of conduct for us.  It's actually showing a pattern of

2    interfering with her civil rights.

3         So at this point in time we felt it was necessary to

4    file this action.  At this point -- and, you know, I'm never

5    going to turn down an opportunity to talk, but it hasn't

6    presented itself yet, Your Honor.  And given their

7    statements in the media, I don't know it will anytime soon,

8    to be honest.

9                   (Pause in proceedings.)

10                  MR. MILLER-NOVAK:  And if Your Honor wishes,

11   not to keep talking during awkward silence, but if --

12                  THE COURT:  I was just making some notes.  My

13   apologies.

14                  MR. MILLER-NOVAK:  No, that's okay.

15        But if Your Honor wishes, I mean, we don't mind, we

16   can pursue personal service, if you'd prefer that.

17                  THE COURT:  Well, I think under the rules you

18   have an obligation to seek waivers first.  I would let that

19   process play out, but I wouldn't let it drag.  And, again,

20   you know, as soon as the defendants have been served, as

21   soon as they're within the jurisdiction of the Court, I

22   intend to summon them, and we'll have some discussions.

23                  MR. MILLER-NOVAK:  Okay.  You think giving it

24   about a week would be your preference?

25                  THE COURT:  I'll defer to your judgment on

1    that.

2                    MR. MILLER-NOVAK:  Okay.

3                    THE COURT:  You've worked with some of these

4    counsel and parties before, so you'll have a good sense of

5    that.

6                    MR. MILLER-NOVAK:  Okay.  Thank you.

7                    (Pause in proceedings.)

8                    THE COURT:  All right.  So turning to the

9    motion for temporary restraining order, I'm prepared to rule

10   on that based on your argument and review of the papers.

11       Temporary restraining order constitutes an

12   extraordinary and emergency measure.  In analyzing whether

13   to grant a temporary restraining order, a court analyzes

14   whether specific facts in an affidavit or a verified

15   complaint clearly show that immediate and irreparable

16   injury, loss, or damage will result to the movant.  That's

17   the standard under Rule 65(b)(1)(A).

18       Temporary restraining order intends to prevent

19   immediate and irreparable harm to the complaining party

20   during the period necessary to conduct a hearing on a

21   preliminary injunction.  Its purpose is to preserve these

22   things -- state of things until the rights of the parties

23   can be fairly and fully investigated.

24       To determine whether to grant a temporary restraining

25   order, a court considers the following factors:

1          1, whether the movant has shown a strong or

2    substantial likelihood of success on the merits;

3          2, the movant will suffer irreparable harm without the

4    relief requested;

5          3, granting the relief requested will cause

6    substantial harm to others;

7          And 4, the public interest will be served by granting

8    the relief requested.

9          Although no single factor is determinative, a finding

10   that there is simply no likelihood of success on the merits

11   is usually fatal.

12         In this case, as Mr. Miller-Novak has indicated, the

13   likelihood of success on the merits lies with the plaintiffs

14   on the particular bases on which the temporary restraining

15   order is sought, so that particular aspect of Sixth Circuit

16   law does not come into play.  By which, I mean the Sixth

17   Circuit says that "a finding that there's no likelihood of

18   success on the merits is usually fatal," so that's not what

19   comes into play here.

20         In this case, in my view, the analysis turns on

21   irreparable harm, the second of the factors.

22         Under the law of this circuit, where money damages do

23   not fully compensate for an injury, a plaintiff's harm is

24   irreparable.  Money damages do not fully compensate an

25   injury where the nature of the loss makes it difficult to

1    calculate or determine damages.

2         In my view, that is not the case here.  With respect

3    to both aspects of relief sought, the law does regularly

4    contemplate reducing the loss of records or the failure to

5    record public meetings to civil damages that are

6    recoverable, so I don't think it's a case that's ripe at the

7    moment for a temporary restraining order.  That's certainly

8    the case in the public meetings context with respect to the

9    second matter Mr. Miller-Novak raised.

10        With respect to destruction of records, Ohio law

11   specifically provides a cause of action for spoliation of

12   evidence.  So under that cause of action, any destruction of

13   records would be subject to civil remedy under that

14   provision.  In addition, I note that at the very latest,

15   yesterday, and very likely considerably earlier, each of the

16   defendants was under a duty imposed by law to preserve

17   evidence.  And if they have failed to discharge that duty,

18   federal law and the civil rules provide remedies for that

19   and sanctions under Rule 37 and otherwise.  So those are the

20   appropriate remedies, in my view, based on the relief

21   sought.

22        I don't think it's appropriate at this juncture to

23   issue an order specifically requiring the defendants to

24   preserve those records.  Again, I think the duty at this

25   state of affairs suffices.  I believe the defendants are on

1    notice of that and their obligations.  And, again, if they

2    have failed to take steps to preserve those documents that

3    might be at issue and responsive and discoverable, then the

4    law imposes consequences for that.

5        Unfortunately I've had -- in several other cases -- to

6    deal with that, so if we have to go down that path, we'll go

7    down that path.

8        One additional factor I note that comes into play with

9    respect to granting the temporary restraining order motion

10   or actually denying it on this record is that, as

11   Mr. Miller-Novak indicated, the specific dispute dates to

12   July of 2022, so I don't think this is a situation where

13   there's a threat of imminent harm.

14       I know you see that differently, but I don't think the

15   threat is any different today than it was, say, a week ago

16   or the like.  And, again, I think that the defendants have a

17   duty and obligation at this point that will suffice to

18   remedy the issues complained of in the motion.

19       I will ask, Mr. Miller-Novak, that you promptly serve

20   subpoenas on each of the cell phone providers.  I'll make a

21   note of that under Rule 45.  The owners of the cell phones

22   are entitled to notice before you serve that, so I'll direct

23   you to serve those subpoenas next week.  But I'll include

24   notice in the minutes and order coming out of today that

25   I've directed you to serve those subpoenas so that they're

1    on notice under Rule 45 that if they intend to object, their

2    time is running.

3                    MR. MILLER-NOVAK:  Your Honor, I can't.  I

4    don't know who their cell phone providers are at this time.

5                    THE COURT:  I'll add that to the agenda in

6    that case for our first meeting.  I'll ask them to identify

7    on the record who it is and direct you to serve promptly at

8    that point.

9                    MR. MILLER-NOVAK:  Okay.

10        Your Honor?

11                    THE COURT:  Yes.

12                    MR. MILLER-NOVAK:  Since it sounds like you're

13    going to deny my TRO, should I --

14                    THE COURT:  I will, yes.

15        Let me make clear one thing for the record for you and

16    for the record.  Again, I don't think that that relates in

17    any way to the likelihood of success on the merits, either

18    with respect to the two issues you've identified or any

19    other claim here, so I would not want you or any defendant

20    to read the record that way.

21        I'm sorry.  I cut you off.

22                    MR. MILLER-NOVAK:  No.  That's fine.  It's

23    your courtroom, you're allowed to do that.

24        So -- but regarding the preliminary injunction, Your

25    Honor, I may withdraw it because I think this makes sense to

1  do so.  And maybe what I would ask for instead, if you would

2  be so kind, is to open up -- and I think you kind of have --

3  and maybe to open up some expedited discovery because, you

4  know, that might be really important to preserve records and

5  to seek that information if they happen to file a 12(b)(6).

6  What I would hate to see is for us to be in briefing on

7  initial motions to dismiss on immunity and other issues and

8  not get to pursue those records in the meantime.

9              THE COURT:  Well, that's one reason why I

10  wanted to get everybody in here in person and on the record

11  at the first moment where the defendants have actually been

12  served.  We'll discuss all of those issues and talk about

13  discovery and motions and any number of other things on my

14  agenda including sending those subpoenas.

15             MR. MILLER-NOVAK:  That would be great.  Thank

16  you.

17             THE COURT:  Any other items from your

18  perspective?

19             MR. MILLER-NOVAK:  I don't believe so, Your

20  Honor.  None that I think we should be talking about until

21  they're all here I guess.

22             THE COURT:  All right.  I will put out an

23  order.  It's very likely just going to say for the reasons

24  stated on the record, the Court denies the motion for

25  temporary restraining order and directs you to do the other

1    things we've talked about today.

2         If there's nothing further, we'll stand adjourned for

3    now but reconvene as soon as we have defendants who are

4    ready, willing, and able to appear.

5         Thank you.

6              (Proceedings concluded at 2:46 p.m.)

7

8

9                    **C E R T I F I C A T E**

10

11        I certify that the foregoing is a correct transcript

12   of the record of proceedings in the above-entitled matter

13   prepared from my stenotype notes.

14              _/s/ Gregory S. Mizanin_          _October 3, 2023_

15              GREGORY S. MIZANIN, RDR, CRR              DATE

16

17

18

19

20

21

22

23

24

25