1                    UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF OHIO
2                          EASTERN DIVISION

3
     NIKI FRENCHKO,                    ) Case No. 4:23-cv-781
4                                      )
                  Plaintiff,           )
5                                      )
          vs.                          ) Cleveland, Ohio
6                                      ) Wednesday, May 3, 2023
     PAUL MONROE, et al.,              )
7                                      )
                  Defendants.          )
8

9

10
                    TRANSCRIPT OF HEARING PROCEEDINGS
11
             BEFORE THE HONORABLE J. PHILIP CALABRESE
12
                    UNITED STATES DISTRICT JUDGE
13

14

15

16

17

18

19

20
     Official Court Reporter:   Gregory S. Mizanin, RDR, CRR
21                              United States District Court
                                801 West Superior Avenue
22                              Court Reporters 7-189
                                Cleveland, Ohio 44113
23                              216.357.7036
                                Gregory_Mizanin@ohnd.uscourts.gov
24

25      Proceedings recorded by mechanical stenography; transcript
            produced with computer-aided transcription.

1    APPEARANCES:

2

3    For Plaintiff Niki Frenchko:

4            MATTHEW E. MILLER-NOVAK, ESQ.
             Barron Peck Bennie & Schlemmer
             3074 Madison Road
5            Cincinnati, Ohio 45209
             513.721.1350

6
             DAVID J. BETRAS, ESQ.
7            Betras, Kopp & Harshman
             6630 Seville Drive
8            Canfield, Ohio 44406
             330.746.8484

9

10   For Defendants Paul Monroe, Trumbull County, Mauro
     Cantalamessa, and Frank Fuda:

11
             DANIEL T. DOWNEY, ESQ.
12           HELEN K. SUDHOFF, ESQ.
             Fishel Downey Albrecht & Riepenhoff
13           7775 Walton Parkway, Suite 200
             New Albany, Ohio 43054
14           614.221.1216

15

     For Defendants Sergeant Harold Wix and Sergeant Robert Ross:
16
             ANDREW N. YESOWITZ, ESQ.
17           Teetor Westfall
             200 East Campus View Blvd., Suite 200
18           Columbus, Ohio 43235
             614.412.4000

19

20

21

22

23

24

25

<table>
<tbody>
<tr><td>1</td><td>WEDNESDAY, MAY 3, 2023</td></tr>
<tr><td>2</td><td>- - -</td></tr>
<tr><td>3</td><td>(Proceedings commenced at 9:33 a.m.)</td></tr>
<tr><td>4</td><td>- - -</td></tr>
<tr><td>5</td><td>THE COURT:  Good morning.</td></tr>
<tr><td>6</td><td>This is Case Number 4:23-cv-781.</td></tr>
</tbody>
</table>

1      WEDNESDAY, MAY 3, 2023

2                  - - -

3      (Proceedings commenced at 9:33 a.m.)

4                  - - -

5      THE COURT:  Good morning.

6      This is Case Number 4:23-cv-781.

7      Counsel, will you please state your appearances for

8  the record.

9      MR. MILLER-NOVAK:  Matt Miller-Novak on behalf

10  of Commissioner Frenchko.

11      MR. BETRAS:  Attorney Dave Betras on behalf of

12  Commissioner Niki Frenchko.

13      THE COURT:  And I'll note that Commissioner

14  Frenchko is present with you as well.

15      Who do we have on the defense side?

16      MR. DOWNEY:  Good morning, Your Honor.

17      It's Dan Downey and Helen Sudhoff, and we're here on

18  behalf of Sheriff Monroe, Trumbull County, and then former

19  Commissioner Fuda and Commissioner Cantalamessa.

20      MR. YOSOWITZ:  Good morning.

21      This is Andrew Yosowitz.  I'm here on behalf of

22  Sergeants Harold Wix and Robert Ross.

23      THE COURT:  Thank you.

24      So I have three items of business to address this

25  morning.

1          So the first is that last month the Court conducted a

2     hearing on plaintiff's motion for a temporary restraining

3     order.  The defendants at that point, to my knowledge, had

4     not been served, so you were under no formal obligation to

5     appear.  But I will tell you, I've been on the bench for

6     almost four years between state court and federal court,

7     before that I practiced for almost 20 years, I have never

8     once even heard of defendants not appearing in response to a

9     motion for temporary restraining order.  You're not off to a

10    good start.

11         Second, I want to talk about discovery.  Generally

12    speaking, I don't think anybody here has much question about

13    the facts that bring you here.  As a general proposition,

14    this dispute should not involve that much discovery.

15    Everyone understands the circumstances why you're here very

16    well.

17         That said, I don't doubt that each of you will want

18    some discovery.  What you need to understand is that

19    discovery is almost always burdensome, expensive,

20    time-consuming, and contentious.  It tends to create other

21    disputes that take over the life of the case and distract

22    from the merits of the underlying dispute.  That's

23    particularly true in a case like this where the allegations

24    necessitate discovery from electronically-stored information

25    and cell phones in particular.  You would think -- I at

1    least would think -- that extracting data from cell phones

2    is relatively routine these days.  I'm here to tell you that

3    in my experience it is not.  It's not that straightforward,

4    and it's fraught with peril.

5         And that takes me to one of the issues that came up at

6    the hearing on the temporary restraining order.  I directed

7    plaintiff to serve subpoenas for the cell phone carriers of

8    each of the defendants, so I want the defendants to identify

9    now who your cell phone carriers are so that the plaintiffs

10   can carry out my direction to them from last month.

11        Sheriff, who's your cell phone carrier during the

12   relevant time period?

13                   MR. ROSS:  AT&T.

14                   THE COURT:  For your work and personal phones,

15   all devices?

16                   MR. ROSS:  AT&T.

17                   THE COURT:  Thank you, sir.

18       For the commissioners?

19                   MR. MAURO:  AT&T as well.

20                   THE COURT:  All devices?

21                   MR. MAURO:  Yes.

22                   THE COURT:  Sergeants?

23                   MR. ROSS:  FirstNet through AT&T.

24                   MR. WIX:  Sergeant Harold Wix, AT&T FirstNet.

25                   THE COURT:  Is there --

1              MR. FUDA:  Commissioner Fuda, T-Mobile.

2              THE COURT:  Thank you.  My apologies.

3              MR. FUDA:  That's okay.

4              THE COURT:  I was about to ask if there was

5    anyone I was missing.

6         Mr. Miller-Novak, is there anyone I'm missing in that

7    regard?

8              MR. MILLER-NOVAK:  No, Your Honor.  But I

9    think we'll probably also need their cell phone numbers.  I

10   can understand if they don't want to put them on the record,

11   but if they're e-mailed to me so we can maintain their

12   privacy.

13             THE COURT:  Provide the applicable numbers,

14   personal and work numbers, before you leave today to

15   Mr. Miller-Novak.

16        My direction to plaintiff's counsel is no later than a

17   week -- I'm sorry -- no later than Monday, May 8th, you're

18   to prepare subpoenas and provide the notice that Rule 45

19   requires.

20        Defendants, you have until Friday, May 12th, to make

21   any objections you might have to those subpoenas.  At that

22   point if you have any disputes over the subpoenas or

23   retrieving that data and information from the carriers that

24   you cannot resolve, I'm referring you to my civil standing

25   order.  It's available on the Court's website.  I have a

1   process outline there for the resolution of discovery

2   disputes.  You may not file anything under that process

3   until you comply with the terms of that order.

4        I'm expecting you to resolve any disputes to the

5   extent defendants have objections, but I expect that cell

6   phone data to be provided.  Of course they are subject to

7   reasonable protections for privacy and the like.  And I

8   don't expect that plaintiff will ask for what she's not

9   entitled to, but if you have any disputes over that that you

10  reach impasse on, the week after Friday, May 12th, that

11  following week, I will expect a phone call from you in

12  compliance with my order.  I will be in touch with you

13  within 24 hours, in all likelihood, and we will get that

14  matter resolved so as not to delay it.

15       Is that all clear, everyone?

16            MR. DOWNEY:  Yes, Your Honor.

17            MR. YOSOWITZ:  Yes, Your Honor.

18            THE COURT:  I'm determined, among other

19  things, not to delay discovery in this case.

20       Defendants, I assume that you will file a Rule 12

21  motion.  Defendants almost always do.  That's fine, that's

22  your right.  If you want to know what my ruling will be, you

23  can find out right now.  I've had this case before, case

24  called *Hinners v. O'Shea*.  It's a similar fact pattern, it's

25  similar allegations, it's similar arguments.  Of course it's

1    different, it's a different dispute and different facts, I

2    understand that, but it will give you pretty strong guidance

3    on where things are going at the Rule 12 stage.  So I would

4    encourage you to read it.  If you still think you need to

5    bring a Rule 12 motion, fine.  I'll decide it promptly.  But

6    we're not staying discovery in the meantime.

7         I want to make clear at the outset, no party is using

8    discovery in this case for any improper purpose.  It's not a

9    weapon.  It's not to delay matters.  It's a tool to

10   investigate the parties' respective claims and defenses.

11   That's it.  Nothing more.  And as I indicated, I don't

12   expect there to be much need for that much discovery.

13        That said, I do expect in this case, as in most cases,

14   discovery will take a great deal of work, time, and effort

15   and expense.  And as far as I'm concerned, that work begins

16   today.  I'm removing the stay on discovery under Rule 26,

17   and you're free to begin discovery consistent with the

18   discussion we've had about the subpoenas.

19        My courtroom deputy will forward to each of you my

20   standard Rule 26(f) report.  I expect you to meet and confer

21   in good faith, both with your respective clients and with

22   each other, and to agree on a discovery plan for the case.

23   We'll set a deadline for that submission before we adjourn.

24        In addition to working cooperatively among counsel and

25   each other, I do expect parties -- parties to sign that

1    document to evidence that you understand your discovery

2    obligations and commitments.

3         That takes me to my third item of business today.

4         This case obviously is in the early stages.  We aren't

5    even at the deadline to answer, move, or otherwise respond

6    to a complaint.  But it's clear to me from what I've seen

7    already that there's a lot of water under the bridge between

8    the parties to this case.  At bottom the taxpayers of

9    Trumbull County should not see their elected officials

10   behaving like this; that is to say behaving like children.

11   I appreciate that there are very few models in our civic

12   discourse in our country today at any level of government

13   for how to have disagreements about matters of public

14   concern that are held deeply and in good faith.  They are

15   important issues, and you may have very personal feelings

16   about them.  And, again, I understand that there's very few

17   models today for how to address those in a constructive way

18   through the normal political process.  I'm hard-pressed to

19   name any.

20        I want to say as well that I appreciate the case is at

21   the pleadings stage.  Commissioner Frenchko makes

22   allegations; that's all they are, they're allegations.  I

23   understand that there's multiple sides to this story for

24   every one of you on the defense side.  So I don't take any

25   of the allegations as true, but if there's any kernel of

1    truth to anything alleged, the citizens of Trumbull County

2    deserve better from all of you.

3         So my message to you today is clear and it's simple.

4    You have to find a way now to resolve your differences.  The

5    lawsuit can go on, that's fine.  But my concern is that your

6    working relationship to the people to whom you are

7    accountable has broken down, and that is not acceptable, and

8    you have to find a way to repair those relationships.  Even

9    though you might vigorously disagree with one another, and

10   even frankly really deep-down strongly dislike one another,

11   that's fine.  There's nothing wrong with that.  You still

12   have to work together.  You all serve the same constituents.

13        Additionally, federal court is really not the best

14   forum for resolution of those issues, either on a personal

15   level or for the kinds of disputes that appear to be at

16   issue and to divide you.  Certainly litigation has a place

17   in our society.  It serves a very valuable role.  I wouldn't

18   be here if I didn't believe that deep down, and I don't

19   think any of the lawyers would be here if they didn't

20   believe that deep down either.

21        The federal court is generally not good at a few

22   things.  One is repairing relationships.  Litigation tends

23   to make them worse, not better.  And federal court is,

24   generally speaking, not a good place for government to carry

25   out its important vital functions.

1        So what comes next in the case as you'll see both from

2   the cell phone discussion we've had and the Rule 26(f)

3   report is a lot of time, effort, money, and distraction for

4   all of you.  And we are just barely scratching the surface

5   of what you're about to get into in terms of motion

6   practice, discovery, and all the other disputes and

7   disagreements that come with litigation.

8        Based on what I've seen thus far, again, we're at the

9   very early stages, there's just allegations at this point, I

10  doubt very much unfortunately that there's an opportunity to

11  resolve this dispute in any meaningful way.  But you're

12  about to engage in a process that has tremendous financial

13  costs to the public, to say nothing to the additional cost

14  to the public of seeing their elected officials engaged in

15  this sort of litigation and the potential for the

16  interference with the conduct of the public business.  And I

17  have no doubt that under the best of circumstances, even if

18  you all got along and saw eye-to-eye on everything, that

19  conducting the business of the citizens of Trumbull County

20  is incredibly challenging and difficult.  And this certainly

21  will not help.  But I am ordering you today to make a

22  good-faith effort to resolve your dispute now before the

23  case gets out of hand and more expensive.

24        In my experience, both as a lawyer and now on the

25  bench, once parties start incurring costs in discovery and

1   litigation, you become entrenched in your positions.  And

2   the costs often make resolution difficult or impossible.  In

3   the *Hinners* case, for example, that case remains at the

4   Rule 12 stage.  There was a motion to dismiss, I granted it

5   in part and denied it in part.  And the costs in that case

6   are in the hundreds of thousands of dollars.  There's been

7   no discovery.

8        So you need to make a good-faith effort at resolution

9   now.  I am ordering you to mediation with the magistrate

10  judge in this case, Judge Thomas Parker.  And I'm ordering

11  you to see him today.  He's in this building downstairs.

12  And he's expecting you.

13       Again, I don't expect that you'll be able to resolve

14  this dispute, but I do expect you to make a good-faith

15  effort toward that end.  If Judge Parker tells me that any

16  one of you have not participated in good faith and made that

17  effort, I will put on an order to show cause why I should

18  not sanction you.  I want to be clear about that.

19       Judge Parker will tell you what he needs from you,

20  what he expects from you, and what timeframe.  That's all up

21  to him.  Anything he talks about with you is confidential.

22  I will only get reports that you have resolved the case or

23  you have not resolved the case, but I will also take from

24  him recommendations about scheduling matters.

25       So, for example, if after talking with Judge Parker

1    today you don't want to live under the deadlines for the

2    cell phone subpoenas that I indicated, if he recommends that

3    I adjust those deadlines, I will.  Otherwise, those

4    deadlines stand.  And that will be the case as long as

5    you're negotiating in good faith with him throughout the

6    life of this case, particularly in the early stages.

7            I do want to set a deadline for the answer -- the

8    deadline to answer, move, or otherwise plead.

9            Defense counsel, what's the current deadline based on

10   service?

11                MR. DOWNEY:  I believe, Your Honor, it's

12   Tuesday of next week.

13                THE COURT:  Does that deadline work for that,

14   or do you need a different deadline?

15                MR. DOWNEY:  Your Honor, I would prefer to

16   extend that deadline if we could.

17                THE COURT:  To what?

18                MR. DOWNEY:  Another week would be great, Your

19   Honor.

20                MR. YOSOWITZ:  Your Honor, this is Andrew

21   Yosowitz.  I have the deadline as May 17th.

22                THE COURT:  And does that deadline work for

23   you, Mr. Yosowitz?

24                MR. YOSOWITZ:  Yeah.  Any -- I can answer

25   quickly.

1            MR. DOWNEY:  And, Your Honor, you mentioned

2    the *Hinners* case, which obviously I'm on that one as well,

3    and we do anticipate filing a motion for judgment on

4    pleadings, but not on all the claims, just on some of them.

5    So I did anticipate that the Court would want us to move

6    forward with discovery.

7            THE COURT:  Fair enough.  Thank you.

8        If May 17th works, does that work for you as well as a

9    deadline?

10           MR. DOWNEY:  Yes, Your Honor.

11           THE COURT:  That way we'll have one deadline

12   for everyone to try to keep things reasonably aligned and on

13   track for everyone.

14       I'll just note a couple things in that regard.  This

15   is all contained in my civil standing order.

16       If you intend to file on May 17th a motion, I do

17   require an answer with that motion.

18       If any defendant intends to file a motion -- and

19   perhaps I was a little premature in setting that date -- I

20   do require all defendants to file one motion and join it.  I

21   don't -- in other words -- want two, three, or more motions.

22   I have just found that that helps me stay on track and it

23   helps identify points of agreement and disagreement on the

24   defense side.

25       So if after conferring -- this will be the only

1   exception I make to my Judge Parker recommendation rule --

2   the defendants intend to file a motion and you need a little

3   bit of additional time to coordinate that filing with the

4   deadlines, that's fine.  But otherwise I'm going to follow

5   Judge Parker's recommendations with respect to scheduling.

6                    MR. DOWNEY:  If I may, Your Honor.

7                    THE COURT:  Yes.

8                    MR. DOWNEY:  One other issue that I would like

9   to bring to the Court's attention is that you're absolutely

10  correct that this is a very public case, particularly in

11  Trumbull County where all folks reside.  And currently there

12  is no response on the books on behalf of the folks who are

13  facing these allegations, my clients, Mr. Yosowitz's

14  clients.

15       And although I appreciate and understand the Court's

16  recommendation to send us into mediation with Magistrate

17  Judge Parker immediately, I do think, from my clients'

18  perspective, that they will wish to have a public document

19  filed in response to these allegations, both an answer and a

20  motion prior to -- hopefully to the Court's agreement to

21  engaging in a mediation process.  And that is -- from my

22  perspective and the perspective of my clients -- very, very

23  important for their standing within the community based on

24  the allegations that have been made, Your Honor.

25                    THE COURT:  Well, you have a deadline for that

1     of May 17th.  As I indicated, I doubt very much that you're

2     going to be able to resolve your differences in this case

3     with Judge Parker or without Judge Parker.  I'd like you to

4     prove me wrong on that, but I'm not going to hold my breath

5     or hold out much hope.  But, in any event, I'm not sure what

6     Judge Parker's prepared to do today or not do today with

7     you, but I think you can talk about all of that with him.

8                    MR. DOWNEY:  Thank you, Your Honor.

9                    MR. MILLER-NOVAK:  Your Honor, if I could have

10    just a little bit of clarification on your first -- I think

11    it might have been your second matter regarding discovery.

12         I understand that you have instructed me to subpoena

13    phone records by May 8th, and I intend to do so.  And that

14    you've also essentially waived the Rule 26 kind-of stay on

15    discovery until after the conference.

16         So, just so I'm in understanding, you're ordering me

17    to subpoena documents from the phone carriers by the 8th,

18    but you're allowing us -- permitting us to engage

19    immediately in Rule 26 discovery at large, correct?

20                    THE COURT:  I'm ordering you by May 8th to

21    provide the notice required under Rule 45.  So Rule 45

22    requires that before you serve a subpoena, you provide

23    notice to the defendants.  The defendants may have

24    objections, they may not have objections.  Frankly, they may

25    or may not have standing to object.  If you have any

1    objections, we'll deal with those by May 12th.  And then if

2    you are unable to resolve any objections, that's where I say

3    we'll convene the following week by Zoom or by phone and

4    address all of that to move things forward.

5        I think at this point, if you want to serve written

6    discovery requests, that's fine.  Candidly, I've toyed with

7    the idea of whether it makes sense to require that before

8    the Rule 26(f) conference because I think it helps move

9    things forward.  So if you want to serve, that's fine.  I

10   trust that counsel and clients will cooperate in providing

11   reasonable extensions and the like.  Again, not doing so for

12   any improper purpose and under the procedures we've outlined

13   in consultation with Judge Parker.

14       Additionally, you have initial disclosures to make.

15       The other deadline I wanted to set today, as I

16   indicated earlier, was the 26(f) report deadline.  And I do

17   strongly encourage -- and in this case I'll require you to

18   make initial disclosures before having the 26(f) conference

19   because I think it will facilitate those discussions and

20   maybe eliminate much of the discovery that needs to be done.

21   As I indicated, I don't think it's that great in any event.

22   But subject to your schedules and your thoughts since

23   matters in the early days, and you know your clients and

24   records and things like that, I'd be looking at June 16th,

25   but that might be a little bit aggressive for getting a

1    report from you.

2                    MR. FUDA:   Judge, I want to make one

3    correction at this time.   I am not the commissioner, I'm the

4    former commissioner.

5                    THE COURT:   Thank you.

6                    MR. DOWNEY:   And, Your Honor, if I may.

7          This is one of many cases that are currently pending,

8    and I didn't know if the Court was aware of the other

9    matters that are pending before Judge Pearson and Judge

10   Adams.

11         There's a significant amount of litigation involving

12   Trumbull County right now, and -- and attorneys have been --

13   at least one attorney's been conflicted out of the other

14   cases as they were proceeding on, and I think that from the

15   defense perspective, we wanted to be certain that the Court

16   is aware that that has complicated matters with respect to

17   the assignment and retention of counsel with respect to this

18   particular case.

19         In fact, typically I think with a TRO it would be sent

20   to a carrier, a carrier would review it, but a county

21   prosecutor would appear on behalf of the county before an

22   attorney could even consider retention.   In this particular

23   case, I think the Trumbull County prosecutor was conflicted

24   out of doing anything like that.   And so I did want to let

25   the Court know that, you know, we apologize that there was

1     no one present at the initial date, but there were

2     complicating matters that prevented that at the time, Your

3     Honor.

4                    THE COURT:  What are the other cases that are

5     pending?

6                    MR. DOWNEY:  Well, I have entered appearance

7     on behalf of the county in the *Gedeon* case, which is

8     currently before Judge Pearson.  I was recently retained

9     with respect to the *Blair* case, which is currently before

10    Judge Adams.  And I do believe that there are other cases of

11    which I am not a part of -- looks like *Cook versus Trumbull*

12    *County*, and I'm not certain of the judge; *Vivoda-Klotz*

13    *versus Trumbull County*, I'm not sure -- certain of the judge

14    assigned to that one.  But there are numerous cases.  And

15    because of that, it's been very complicated from a defense

16    perspective on how to move forward.  I represent the county

17    in those cases.  Commissioner Frenchko has her own

18    individual counsel in at least one of those cases, I think

19    two of them that I'm now entering in on.  And, you know,

20    with this case, she's the plaintiff and, you know, those --

21    those issues I think have complicated matters for the

22    carrier.

23         And it's not often that I come up from Columbus to

24    northeast Ohio to represent folks.  That's one of the

25    reasons that I am on this case.

1    THE COURT:  You've answered one of the

2    questions I had when I looked at the counsel roster, so that

3    helps me understand that.  I assume that none of the other

4    cases involve this set of operative facts, they involve

5    different disputes of one kind or another.

6    MR. DOWNEY:  No, Your Honor.  And I did my due

7    diligence prior to accepting the retention --

8    THE COURT:  I ask not for your purposes but

9    for my mine.  I trust you did, I don't doubt that.  I just

10   assume that this is the only lawsuit involving this

11   transaction or occurrence as it were as opposed to like the

12   other cases don't factually overlap with these allegations.

13   MR. DOWNEY:  Correct, Your Honor.

14   MR. MILLER-NOVAK:  Your Honor, I don't know

15   that I entirely agree with that.  I mean, we need to look

16   into it.  And, you know, this is the first we learned today

17   of who was going to be representing the county, and we think

18   there could be potentially some -- some overlap because some

19   of the issues in the employment matters kind of relate some

20   of the tensions that you outlined earlier.  And there is at

21   least one case that counsel here does represent the county

22   where Ms. Frenchko is named and is at the center of some

23   allegations against herself.  And we're not prepared to

24   speak on that yet, and we don't want to speak out of turn,

25   but we need to get more information regarding that.

1          THE COURT:  I think -- I understand your

2     position, and I don't doubt that you're both saying the same

3     thing from your respective seats as it were.  My point is

4     really that you didn't check on the civil cover sheet that

5     there's any related cases.  I don't trust that this case is

6     related in the meaning of the rules in that regard.  And

7     that's all I'm trying to get at, and it sounds like this

8     case is not related.  It doesn't mean that there's not

9     collateral consequences, both substantively or

10    representationally in other matters, and that might well be.

11    As far as I'm concerned, that's all the more reason for you

12    to get to see Judge Parker sooner rather than later.  I only

13    have this one case, and I intend to push it forward.  Again,

14    unless and until Judge Parker tells me to hold off and -- it

15    sounds like there's even more issues than these, and you all

16    have a lot of work to do to get through them.

17         Anything else we need to accomplish today?

18               MR. MILLER-NOVAK:  No, Your Honor.  I don't

19    believe so on our side.

20               MR. YOSOWITZ:  Judge, I think we got a little

21    sidetracked.  Did we set June 16th as the initial disclosure

22    date on behalf of Sergeant Ross and Wix?  I'm okay with that

23    date --

24               THE COURT:  June 16th was my date for the

25    submission of the 26(f) report, so the initial disclosures

1    would need to be a week or two before that.

2             MR. MILLER-NOVAK:  Your Honor, I'm assuming

3    that there will be an order that's issued regarding all

4    these dates.

5             THE COURT:  There will.

6             MR. MILLER-NOVAK:  Okay.

7             THE COURT:  Again, if Judge Parker recommends

8    a different date, I'm happy to move it at his

9    recommendation, but otherwise that's a few weeks off, so I

10   think you've got some time to roll up your sleeves and get

11   down to work.

12            MR. MILLER-NOVAK:  Your Honor, can I ask you

13   one more question?  I'm sorry.

14       You mentioned a case earlier that you wanted us to

15   look at.  And I got *O'Shea* I think, but I think I missed the

16   first part.

17            THE COURT:  *Hinners*.

18            MR. MILLER-NOVAK:  *Hinners*?

19            THE COURT:  H-I-N-N-E-R-S.

20            MR. MILLER-NOVAK:  And I was right about

21   *O'Shea*, Your Honor?

22            THE COURT:  Correct.  Although if I remember

23   right, it's no longer technically the O'Shea.  I think he's

24   out of the case.

25            MR. MILLER-NOVAK:  Thank you.

1          MR. YOSOWITZ:  Last thing, Your Honor.  If the

2  record can reflect I've already e-mailed plaintiff's counsel

3  with the cell phone numbers for Sergeants Ross and Wix.

4          THE COURT:  All right.  Thank you.

5      All right.  If there's nothing further, report to

6  Judge Parker before you leave, and we will move forward

7  accordingly.

8          (Proceedings concluded at 10:03 a.m.)

9

10

11                **C E R T I F I C A T E**

12

13      I certify that the foregoing is a correct transcript

14  of the record of proceedings in the above-entitled matter

15  prepared from my stenotype notes.

16                */s/ Gregory S. Mizanin        October 4, 2023*

17                GREGORY S. MIZANIN, RDR, CRR        DATE

18

19

20

21

22

23

24

25