**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| NIKI FRENCHKO, | : | Case No. 4:23-cv-781 |
| | : | |
| Plaintiff, | : | |
| v. | : | Judge J. Philip Calabrese |
| | : | |
| PAUL MONROE, *et al.*, | : | |
| | : | |
| Defendants. | : | |

---

**DEFENDANTS SHERIFF PAUL MONROE, TRUMBULL COUNTY, OHIO,
TRUMBULL COUNTY BOARD OF COMMISSIONERS, TRUMBULL COUNTY
SHERIFF'S OFFICE, MAURO CANTALAMESSA, FRANK FUDA, HAROLD WIX,
AND ROBERT ROSS'S JOINT MOTION FOR SUMMARY JUDGEMENT**

---

Defendants, Sheriff Paul Monroe, Trumbull County, Ohio, Trumbull County Board of
Commissioners, Trumbull County Sheriff's Office, Mauro Cantalamessa, Frank Fuda, Sergeant
Harold Wix and Sergeant Robert Ross jointly move this Court for summary judgment on all claims
herein pursuant to Fed. R. Civ. P. 56. The undisputed record demonstrates there was probable
cause to arrest Plaintiff on July 7, 2022, and Defendants are entitled to qualified immunity. There
was no conspiracy among Defendants to arrest Plaintiff. Plaintiff does not have a claim for the
destruction of public records nor a claim for destruction of evidence, and she cannot prove her
assault, battery, and property-related claims arising from the March 9, 2023 meeting. In all, there
are no material facts in dispute which would provide Plaintiff with any viable claim for relief
against these Defendants. Accordingly, summary judgment in favor of Defendants is warranted.
A Memorandum in Support which more thoroughly explains Defendants' position is attached and
incorporated herein.

Respectfully Submitted,

s/ Daniel T. Downey
Daniel T. Downey (0063753)
Helen K. Sudhoff (0101259)
Jennifer M. Meyer (0077853)
**FISHEL DOWNEY ALBRECHT & RIEPENHOFF LLP**
7775 Walton Parkway, Suite 200
New Albany, OH  43054
(614) 221-1216 – Telephone
(614) 221-8769 – Facsimile
ddowney@fisheldowney.com
hsudhoff@fisheldowney.com
jmeyer@fisheldowney.com
*Counsel for Defendants Sheriff Paul Monroe,*
*Trumbull County, Trumbull County Board of*
*Commissioners, Trumbull County Sheriff's Office,*
*Mauro Cantalamessa, and Frank Fuda*

/s/ Andrew N. Yosowitz (per consent 10-24-23)
Andrew N. Yosowitz (0075306)
Matthew S. Teetor (0087009)
Teetor Westfall, LLC
200 E. Campus View Blvd. Suite 200
Columbus, OH  43235
(614) 412-4000 – Telephone
(614) 412-9012 – Facsimile
ayosowitz@teetorlaw.com
mteetor@teetorlaw.com
*Counsel for Defendants Harold Wix*
*and Robert Ross*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................... iii

MEMORANDUM IN SUPPORT ............................................................................... 1

I.     RELEVANT FACTS ......................................................................................... 1

     A.    Trumbull County Commissioner Operations .......................................... 1

     B.    Plaintiff Disrupts The July 7, 2022 Trumbull County Commissioners' Meeting and is Arrested. ............................................................................. 3

     C.    Plaintiff's Criminal Matter and Public Records Request. ........................ 9

     D.    Plaintiff's Phone Stand Was Moved During The March 9, 2023 Hearing. .......... 11

II.    LEGAL ANALYSIS ........................................................................................ 14

     A.    Defendants are Entitled to Summary Judgment on Plaintiff's Facial Challenge to R.C. 2917.12. ............................................................... 14

           i.    Defendants are Entitled to Qualified Immunity on Plaintiff's Facial Challenges. ................................................................... 14

           ii.   R.C. § 2917.12 is not Facially Unconstitutional. ..................... 18

     B.    Defendants are Entitled to Summary Judgment on Plaintiff's First Amendment Claims. ........................................................................... 21

     C.    Defendants are Entitled to Qualified Immunity on Plaintiff's Fourth Amendment Claims. ............................................................................. 24

           i.    Subjective Motivations are Irrelevant to the Probable Cause Analysis. .... 25

           ii.   Probable Cause Disposes of Plaintiff's Fourth Amendment Claim.......... 25

           iii.  Even if There Were No Actual Probable Cause, Defendants are Still Entitled to Qualified Immunity Because a Reasonable Officer Could Believe that Probable Cause Existed. ................... 28

           iv.  Plaintiff Has No Fourth Amendment Claim Against the Remaining Defendants. ................................................................. 30

     D.    Defendants are Entitled to Summary Judgment on Plaintiff's False Arrest and Malicious Prosecution Claims as There Was Probable Cause for Her Arrest. ...... 30

     E.    Defendants are Entitled to Summary Judgment as There Was No Conspiracy or Plan for Plaintiff's Arrest. ............................................ 31

     F.    Defendants are Entitled to Summary Judgment Because Plaintiff Lacks Any Basis for a Battery Claim........................................................ 34

     G.    Defendants are Entitled to Summary Judgment Because Plaintiff Lacks Any Basis for an Assault Claim. .................................................. 37

     H.    Defendants are Entitled to Summary Judgment as There is No Viable Claim for Destruction of Public Records. .......................................... 38

i

I.      Defendants are Entitled to Summary Judgment as There is No Viable Claim for Civil Liability for Criminal Acts as There is No Evidence of Destruction of Records in Plaintiff's Criminal Matter................................................................. 42

J.      Defendants are Entitled to Summary Judgment as There is No Viable Claim for Civil Liability for Criminal Acts as Plaintiff's Civil Rights Were Not Interfered With........................................................................................................................ 45

K.      Defendants are Entitled to Summary Judgment as Plaintiff Lacks Any Fourth Amendment Seizure of Property Claim on This Record. ...................................... 46

L.      Defendants are Entitled to Summary Judgment as Plaintiff is Unable to Demonstrate a Viable Claim for Trespass to Chattel or Conversion Against Sheriff Monroe.............................................................................................................. 47

M.      Immunity Bars Plaintiff's Claims for Relief Against the Political Subdivision Defendants, Warranting Summary Judgment. ........................................................ 49

N.      Punitive Damages Are Not Warranted or Available.............................................. 49

III.    CONCLUSION........................................................................................................... 50

## **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987) .............. 29

*Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S. Ct. 2074, 179 L. Ed. 2d 149 (2011) ................. 15

*Ashwander v. TVA*, 297 U.S. 288, 346–347 (1936).................................................................. 19

*Atwater v. Lago Vista*, 532 U.S. 318, 354, 121 S. Ct. 1536, 149 L. Ed. 2d 549 (2001).............. 24

*Ayotte v. Planned Parenthood of Northern New Eng.*, 546 U.S. 320, 329 (2006) ...................... 19

*Barrera v. City of Mount Pleasant*, 12 F. 4th 617, 624 (6th Cir. 2021) ........................................ 25

*Besancon v. Cedar Lane Farms, Corp.*, 2017-Ohio-347, ¶ 25 (Ct. App.)................................... 47

*Blumenthal v. Crotty*, 346 F.3d 84, 104 (2d Cir. 2003) ............................................................... 17

*Bongo Prods., LLC v. Lawrence*, 603 F. Supp. 3d 584, 590 ....................................................... 23

*Boos v. Barry*, 485 U.S. 312, 332 (1988)..................................................................................... 21

*Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2011) ......................................................... 29

*Brown v. Dep't of Rehab. & Corr.*, 2014-Ohio-1810, ¶ 13 ......................................................... 35

*Brown v. Ohio State Highway Patrol*, Ohio Ct. Claims Case No. 2017-00721 JD,
   2018-Ohio-4511, ¶ 7 ............................................................................................................... 34

*Burgess v. Fischer*, 735 F.3d 462, 479 (6th Cir. 2013)................................................................ 46

*Burton v. City of Detroit* 2022 U.S. App. LEXIS 35266 at *2 ..................................................... 27

*Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 906 (6th Cir. 2019)................................................ 46

*Carroll v. Carman*, 574 U.S. 13, 17, 135 S. Ct. 348, 190 L. Ed. 2d 311 (2014) (per curiam) ..... 15

*Citizens in Charge, Inc. v. Husted*, 810 F.3d at 441 .............................................................. 16, 17

*City of Cincinnati v. Nelson,* No. C-74321, 1975 Ohio App. LEXIS 7443, * 5 (May 5, 1975)... 34

*City of Columbus v. Doyle*, 149 Ohio App.3d 164, 2002-Ohio-4490, 776 N.E.2d 537 ... 17, 26, 27

*City of Los Angeles v. Patel*, 576 U.S. 409, 415 (2015) .............................................................. 18

*Cook v. Kudlacz*, 2012 Ohio 2999, 974 N.E.2d 706, ¶ 90 (7th Dist.)......................................... 33

*D'Agastino v. City of Warren*, 75 Fed. Appx. 990, 995 (6th Cir. 2003)...................................... 34

*Devenpeck v. Alford*, 543 U.S. 146 (2004) ................................................................................. 25

*Dice v. White Family Cos.*, 173 Ohio App. 3d 472, 477 ............................................................. 47

*District of Columbia v. Wesby*, 583 U.S. 48 ......................................................................... 25, 28

*Dressler v. Rice*, 739 Fed. Appx. 814, 823, n.6 (6th Cir. 2018) ................................................. 32

*Dunlop v. City of New York*, No. 06 Civ. 0433, 2008 U.S. Dist. LEXIS 38250
   (S.D.N.Y. May 6, 2008)............................................................................................................ 33

*Foster v. Health Recovery Servs.*, 493 F. Supp.3d 622, 642 (S.D. Ohio 2020)........................... 46

iii

*Fox v. DeSoto*, 489 F.3d 227 at 236 (6th Cir. 2007) ................................................................ 15

*Gray v. Shelby Cnty.*, 2023 U.S. App. LEXIS 21581, *19 (6th Cir. Aug. 15, 2023) .................. 35

*Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) ............................................................ 20

*Green v. Taylor*, Case No. 1:03-cv-1804, 2006 U.S. Dist. LEXIS 103827 (N.D. Ohio
     Apr. 11, 2006) ...................................................................................................................... 42

*Hanna v. Drobnick*, 514 F.2d 393, 397 (6th Cir. 1975) ............................................................ 16

*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) ................ 15

*Healy v. Planned Parenthood of Greater Ohio*, 2023 U.S. Dist. LEXIS 57851, *9 .................. 32

*Henderson v. City of Euclid*, 2015-Ohio-15, at ¶ 55 (Ohio Ct. App. 2015) .............................. 31

*Hinners v. O'Shea*, 2022 U.S. Dist. LEXIS 98018 ................................. 17, 21, 32, 38, 40, 42, 45

*Howse v. Hodous*, 953 F.3d 402, 409 (6th Cir. 2020) ............................................................... 24

*Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509
     (6th Cir. 1991) ...................................................................................................................... 32

*Illinois v. Gates*, 462 U.S. 213, 232, 103 S. Ct. 2317, 76 L. Ed. 527 (1983) ............................ 24

*Jackson v. City of Cleveland*, 925 F.3d 793, 817 (6th Cir. 2019) .............................................. 32

*Jackson v. City of Columbus*, 194 F.3d 737, 753 (6th Cir. 1999) .............................................. 33

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2464 (2018) .. 23

*Joyce v. Gen. Motors Corp.* (1990), 49 Ohio St.3d 93, 96) ....................................................... 47

*Kaley v. United States*, 571 U.S. 320, 338 (2014) ..................................................................... 24

*Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2474, 192 L. Ed. 2d 416 (2015) ............................. 15

*Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir. 2000) ............................................................ 21

*Liverpool, New York & Philadelphia S. S. Co. v. Commissioners of Emigration*,
     113 U.S. 33, 39 (1885) .......................................................................................................... 19

*Love v. City of Port Clinton*, 37 Ohio St. 3d 98, 99) ................................................................. 36

*Martin v. Heideman*, 106 F.3d 1308, 1313 (6th Cir. 1997) ....................................................... 36

*Maryland v. Pringle*, 540 U.S. 366, 371, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003) ................ 24

*McRae v. Icon Entertainment Group, Inc.*, 10th Dist. No. 08AP-820, 2009-Ohio-5119, ¶ 8 ...... 37

*Mercer v. Halmbacher*, 2015-Ohio-4167, ¶ 20, 44 N.E.3d 1011, 1017 (Ct. App.) ..................... 48

*Michigan v. DeFillippo*, 443 U.S. 31 (1979) ...................................................................... 16, 17

*Mitchell v. Forsyth*, 472 U.S. 511, at 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985) ............... 15

*Monell v. Dept. of Soc. Servs.*, 436 U.S. 758, 690-91(1978) ..................................................... 49

*Morrison v. Bd. of Trustees of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009) ........................ 35

*Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019) ...................................................................... 21

iv

*Novak v. City of Parma*, 2021 U.S. Dist. LEXIS 34396 ................................................ 32

*O'Toole v. O'Connor*, 2016 U.S. Dist. LEXIS 109923 ........................................ 22, 23

*Ohio Assn. of Pub. School Emps./AFSCME Local 4, AFL-CIO v. Madison Local School Dist. Bd. of Edn.*, 190 Ohio App.3d 254, 2010 Ohio 4942, 941 N.E.2d 834 ............... 33

*Palmer v. Foley*, 2nd Dist. No. 21235, 2006-Ohio-4013 ................................................ 42

*Patriot Water Treatment, LLC v. Ohio Dep't of Natural Res.*, 2013 Ohio App. LEXIS 5638 .... 38

*Payton v. New York*, 445 U.S. 573, 585, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980) ................... 24

*Pearson v. Callahan, 555* U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) ................. 15

*Peroli v. Huber*, 2021 U.S. Dist. LEXIS 16889, *11 (N.D. Ohio Jan. 29, 2021) ........................ 31

*Pierson v. Ray*, 386 U.S. 547 (1967) ...................................................................... 16

*Plumhoff v. Rickard*, 572 U.S. 765, 780 (2014) ............................................................ 18

*Qualls v. Peregrine Health Servs.*, 2022-Ohio-4644, P31 .......................................... 37, 38

*Redd v. City of Enterprise*, 140 F.3d 1378, 1384  (11th Cir. 1998) ....................................... 29

*Regan v. Time, Inc.*, 468 U.S. 641, 652 (1984) .............................................................. 19

*Rhodes v. City of New Philadelphia*, 129 Ohio St. 3d 304, 2011-Ohio-3279, 951 N.E.2d 782 .................................................................................... 38, 40

*Risbridger v. Connelly*, 275 F.3d 565, 573-74 (6th Cir. 2002) ........................................... 16

*Robinson v. Lucas*, 753 F.3d 606, 622 (6th Cir., 2014) ................................................... 49

*Ruble v. Escola*, 898 F. Supp. 2d 956, 981 (N.D. Ohio 2012) ......................................... 46

*Salerno*, 481 U.S. at 745 ........................................................................... 18, 19

*Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) .......................... 15, 29

*Schwaller v. Maguire*, 2003-Ohio-6917, P14 ............................................................. 34

*Schweder v. Baratko,* 103 Ohio App. 399, 403, 143 N.E.2d 486 (1957) .............................. 34, 35

*Shadwick v. City of Tampa*  (1972), 407 U.S. 345, 347, 32 L. Ed. 2d 783, 92 S. Ct. 2119 ......... 28

*Smiley v. Cuyahoga Metro. Hous. Auth.*, 2008 U.S. Dist. LEXIS 108007 .............................. 50

*Sollenberger v. Sollenberger*, 173 F.Supp.3d 608, 632-33 (S.D. Ohio 2016) ........................... 42

*Stafford v. Clever Investigations, Inc.*, 2007-Ohio-5086, P9 ............................................. 36

*Stanford v. Northmont City Sch. Dist.,* Case No. 3:19-cv-399, 2022 U.S. Dist. LEXIS 176968, at *7 (S.D. Ohio Sept. 28, 2022) .......................................................................... 42

*State ex rel. Bristow v. Baxter*, 2018-Ohio-1973, ¶ 2, 12-16 ............................................. 40

*State ex rel. Davila v. City of E. Liverpool*, 2011-Ohio-1347, P26 ...................................... 40

*State ex rel. Glasgow*, 894 N.E.2d at ¶ 4-5, 16-19 ......................................................... 40

*State v. Brand*, 2 Ohio App.3d 460, 442 N.E.2d 805 (Ohio Ct. App. 1981) .............................. 17

*State v. Fairbanks* (1972), 32 Ohio St.2d 34, 39-40, 289 N.E.2d 352.............................................. 28

*State v. Jackson*, 2012-Ohio-4219, 2012 WL 4056778, ¶ 34 (Ohio Ct. App. 2012).................... 26

*Swanson v. Powers*, 937 F.2d 965, 968-69 (4th Cir. 1991) ...................................................... 17

*Thomas v. Shipka*, 818 F.2d 496 (6th Cir. 1987) ...................................................................... 16

*Trussell v. General Motors Corp.*, 53 Ohio St. 3d 142, (Ohio 1990)............................................ 31

*United States v. Salerno*, 481 U.S. 739, 745 .............................................................................. 17

*Voyticky v. Vill. Of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005)............................................ 28

*Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 208............................. 22

*Warshak v. United States*, 532 F.3d 521, 528 (6th Cir. 2008) .................................................... 18

*Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991)........................................................... 15

*White v. Jackson*, 865 F.3d 1064, 2017 U.S. App. LEXIS 13926, 2017 WL 3254496................. 29

*White v. Pauly*, 137 S.Ct. 548, 550, 196 L. Ed. 2d 463 (2017)..................................................... 15

*Whren v. United States*, 517 U.S. 806, 810-13 (1996).................................................................. 25

*Wilkins v. Daniels*, 744 F.3d 409, 415 (6th Cir. 2014) ................................................................ 23

*Williams v. Aetna Fin. Co.*, 83 Ohio St. 3d 464, 475 (Ohio 1998) .............................................. 33

*Wolfel v. Morris*, 972 F.2d 712, 719-20 (6th Cir. 1992)............................................................... 16

**Statutes**

R.C. § 2744.03(A)(6)(b) ......................................................................................................... 31, 36

R.C. § 2901.22(A)........................................................................................................................ 25

R.C. § 2917.12(A)(1).................................................................................................................... 20

R.C. 149.351(C)(1) ...................................................................................................................... 40

R.C. 2744.02(A)(1) ...................................................................................................................... 50

R.C. 2744.02(B)(5) ...................................................................................................................... 42

R.C. 2744.03(A)(6) ...................................................................................................................... 46

R.C. 2744.03(A)(6)(c).................................................................................................................. 42

R.C. 2744.05 ................................................................................................................................ 50

R.C. 2901.22(B)............................................................................................................................ 46

R.C. 2917.12 ................................................................................................................................ 14

R.C. 2921.12 ................................................................................................................................ 45

R.C. 2921.12(A)........................................................................................................................... 43

R.C. 2921.12(A)(1)....................................................................................................................... 42

R.C. 2921.45 ................................................................................................................................ 45

**Other Authorities**

*Restatement of the Law 2d, Torts 236, Section 132* (1965) .......................................................... 34

**Rules**

Fed. R. Civ. P. 56................................................................................................................................. 1

## MEMORANDUM IN SUPPORT

What seems simple is often complex and what seems complex is often simple. Plaintiff alleges a grand 'everyone is out to get me' conspiracy.  There was no grand conspiracy to arrest Plaintiff on July 7, 2022. Plaintiff was lawfully arrested after she continuously and purposefully interrupted the reading of a letter into the public record. The letter from Sheriff Monroe was intended to respond to false accusations previously leveled by Plaintiff. The undisputed record also establishes that Plaintiff does not have any viable basis for her destruction of evidence or destruction of public records claims against any Defendant. Further, Plaintiff is unable to demonstrate any personal or property-related claims arising out of the March 9, 2023 meeting where Sheriff Monroe moved Plaintiff's phone stand which resulted in her phone momentarily falling onto the table.

In sum, there are no material facts in dispute which would entitle Plaintiff to relief against Sheriff Paul Monroe, Trumbull County, Ohio, Trumbull County Board of Commissioners, Trumbull County Sheriff's Office, Mauro Cantalamessa, Frank Fuda, Sergeant Harold Wix, or Sergeant Robert Ross. Accordingly, summary judgment in favor of Defendants should be granted as a matter of law.

## I.  RELEVANT FACTS

### A.  Trumbull County Commissioner Operations

Plaintiff, Michelle Niki Frenchko, is a current commissioner elected to the Trumbull County Board of Commissioners. (Pl. Cmpl., Doc. 1, PageID#3). She assumed office in January 2021. (*See* Pl. Depo, Doc. 49, PageID#1040). At all times relevant to this case, Mauro Cantalamessa and Frank Fuda were also commissioners. (*See* Pl. Cmpl., Doc. 1, PageID#4). Commissioner Fuda was the Presiding Officer. (Fuda Depo., Doc. 42-1, PageID#303-304).

Since taking office in January 2021, Plaintiff has had issues with her fellow commissioners, fellow staff, and the operations of Trumbull County, Ohio. (*See* e.g., Pl. Cmpl., Doc. 1, PageID#5-6;). However, despite these contentions, Plaintiff is regularly able to voice her various opinions regarding Trumbull County, Ohio at the commissioners' meetings, in the course of her position as commissioner, and personally on her social media page, among other available outlets. (*See* Mauro Declaration, attached hereto as Ex. J; Pl. Depo., Doc., 50, PageID#1120-1121) Plaintiff also live streams the commissioners' meetings and other Trumbull County-related activities on her personal Facebook page, "Niki Frenchko." (Pl. Depo., Doc. 50, PageID# 1119-1121).

Even before taking office in January 2021, Plaintiff admits she was aware of issues with Trumbull County's public records retention and procedures. (Pl. Depo., Doc. 50, PageID#1169). Despite perceiving these issues, Plaintiff has not worked with the prosecutor's office or the records retention committee towards any solutions. (Id. at PageID#1169-1171).

The Trumbull County Board of Commissioners operate under Roberts Rules of Order during their weekly commissioners' meetings. (Pl. Depo., Doc. 50, PageID#1119). Every year the Board of Commissioners passes Roberts Rules of Order, but do not specify which version they use. (Id.). The Commissioners generally agree that any commissioner can add resolutions to the agenda through the course of the meeting. (Cantalamessa Depo. Doc. 43-1, PageID#431, 443)

On June 1, 2022, Plaintiff, Commissioner Fuda, and Commissioner Cantalamessa were participating in the weekly public commissioners meeting. (*See* June 1, 2022 Meeting Minutes, attached hereto as Ex. A). Although not on the agenda, Plaintiff brought up a letter she allegedly received from an inmate's mother which criticized the Trumbull County Sheriff Office's handling of inmate medical care. (*See* id.). She read the letter from the inmate's mother in the public meeting and aired her concerns with medical care at the jail. (*See* id.).

Soon after Plaintiff read the letter addressing a lack of medical treatment at the jail, Sheriff Paul Monroe and other Sheriff Office staff investigated the alleged complaints contained in the letter Plaintiff read. (*See* Monroe Letter, Doc. 47-2, PageID#982-983; and *see* Ex. B). Based on jail records, the Sheriff Office determined that the allegations of lack of medical care were unsubstantiated. (*See* Id.). Sheriff Monroe wrote a letter to Plaintiff explaining what was uncovered in the investigation. (Id.). Since the complaints of insufficient medical care were unfounded, Sheriff Monroe requested Plaintiff clarify her prior misstatements in a subsequent public meeting. (Id.). Sheriff Monroe also reminded Plaintiff of the procedures in place for lodging complaints related to the jail. (Id.).

Sheriff Monroe provided this letter to Plaintiff as well as Commissioners Cantalamessa and Fuda on July 5, 2022. (Id.). Sheriff Monroe did not ask the Commissioners to have his letter read during a public meeting. (Monroe Depo., Doc. 44-1, PageID#575-576). Commissioner Fuda asked Sheriff Monroe if Sheriff Monroe would like to read the letter during the next public meeting. (Fuda Depo., Doc.42-1, 385). Sheriff Monroe stated he did not want to read the letter himself nor did he request it be read. (Monroe Depo., Doc. 44-1, PageID#575-576). Commissioner Fuda asked if the letter could be read by someone else at the next meeting, and Sheriff Monroe did not object.  (Fuda Depo., Doc.42-1, 385).

**B.      Plaintiff Disrupts The July 7, 2022 Trumbull County Commissioners' Meeting and is Arrested.**

The next meeting occurred on July 7, 2022. (Pl. Depo., Doc. 50, PageID#1123). All three commissioners - Plaintiff, Commissioner Fuda, and Commissioner Cantalamessa were in attendance. (*See* e.g., Frenchko Cell Phone Video attached hereto as Ex. M, 00:45-00:55). The meeting was captured in Plaintiff's Facebook Live Stream as well as through the Commissioner's audio recording system and surveillance video of the hearing room. (*See* e.g., Ex. M, Frenchko

3

Cell Phone Video; July 7, 2022 Meeting Audio attached hereto as Ex. O. and manually filed; and

Hearing Room Video attached hereto as Ex. N and manually filed)[1]. During the meeting,

Commissioner Fuda directed the Clerk, Paula Vivoda-Klotz, to read Sheriff Monroe's letter into

the public record. (Ex. M, Frenchko Cell Phone Video, at 36:27; Ross Decl. ¶ 14 attached hereto

as Ex. K; Wix Decl. ¶ 14 attached hereto as Ex., L.). When Commissioner Fuda announced that

the letter would be read, Plaintiff made no objections regarding the agenda or timing of the letter.

(Id.).

> The following events were captured on Plaintiff's cell phone video and surveillance video:

- 36:43 to 38:05 – The clerk, Paula Vivoda-Klotz begins reading the letter into the record. Plaintiff initially had her phone facing the public but then turned her camera to face herself and pointed it in the direction of the Clerk and Commissioner Fuda. (Id. at 36:40-37:20). Commissioner Fuda scooted his seat up, but the Clerk was still in view of Plaintiff's camera. (Id.). For some reason, Plaintiff moved her seat back to film the Clerk from behind while the Clerk read her letter and then later moved her camera. to the front of the dais in an apparent attempt to film the Clerk's face. (Frenchko Cell Phone Video, 36:43 to 38:05; Ross Decl., ¶ 15; Wix Decl., ¶ 15);

- Sgts. Ross and Wix are seated along the back wall of the Commissioners' Hearing Room on opposite sides from one another. (Ross Decl., ¶ 16; Wix Decl., ¶ 16; Ex. N, Hearing Room Video from 11:10 a.m. to 11:21:30 a.m.);

- 38:05 to 38:18 – Plaintiff leaves her seat on the dais and sits down in the first row of the public seating area. (Frenchko Cell Phone Video, 38:05 to 38:18; Hearing Room Video, 11:10:54 to 11:11:11; Ross Decl., ¶ 17; Wix Decl., ¶ 17);

- At 39:33, Plaintiff, now in the gallery, blurts out "That's not true. That's not true." This interruption causes the clerk to stop reading the letter. Commissioner Fuda bangs his gavel and states: "Point of order." Plaintiff again asserts "That's not true." (Id.). Commissioner Fuda asks the clerk to continue reading the letter. (Frenchko Cell Phone Video, 39:33 to 39:43);

- Four seconds after the clerk starts reading the letter again, Plaintiff interrupts: "If I would have known this was being read, I would have had, um, you know, maybe

---

[1] When events are captured on video, "[t]o the extent that videos in the record show facts so clearly that a reasonably jury could view those facts in only one way, those facts should be viewed in the light depicted by the videos." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686; *Latits v. Phillips*, 878 F.3d 541, 547 (6th Cir. 2017).

the mother could have come." The clerk stops reading again. Commissioner Fuda bangs the gavel and states: "Will you allow the clerk to finish what she's been asked to read?" (Frenchko Cell Phone Video from 39:48 to 40:12). Plaintiff continues to protest the reading of the letter. More specifically, Plaintiff exclaimed for the first and only time that "well this is not even part of our meeting." (Frenchko Cell Phone Video, at 40:00). Commissioner Fuda rebutted "yes, it is" and Plaintiff argued "no it is not, these attacks or complaints against me during a meeting don't relate to commissioners business this is ridiculous." (Frenchko Cell Phone Video, at 39:55-40:15);

- From 40:12 to 40:47, Plaintiff continues making verbal comments while the clerk is reading, but the clerk continues to read the letter into the record. At 40:47, Ms. Frenchko interrupts again arguing that: "Well, the woman should be here. I feel bad that the previous inmate and her mother aren't here…" Commissioner Fuda asks: "Will you allow the clerk to finish?" Commissioner Fuda tells Ms. Frenchko that she is interrupting. He directs the clerk to continue. (*Id.* at 40:12 to 41:15);

- Less than twenty seconds after the clerk restarts her reading of the letter, Plaintiff interrupts for a fourth time. She begins challenging the letter: "I did. I asked for, I asked for…I asked for a copy of their policies. They wouldn't even send me a copy of their policies until this week." Commissioner Fuda requests Ms. Frenchko to "stop" and asks the clerk to continue. (*Id.* at 41:20 to 41:46);

- The clerk, Paula Vivoda-Klotz is now visibly upset. Plaintiff mocks her: "Oh, what, is it upsetting?" A member of the public can be heard saying, "Stop it." Ms. Vivoda-Klotz tells Plaintiff that she is upset. (*Id.* at 41:47 to 42:05);

- A member of the public can be heard stating: "Stop it. You're being so mean." Meanwhile, the clerk tries to read the letter while hiding her face from Plaintiff. (*Id.* at 42:05 to 42:23);

- Plaintiff gets up from her seat in the gallery and moves to the side of the room so she can record the clerk. (*Id.* at 42:23 to 42:35; Ross Decl., ¶¶ 21-23; Wix Decl., ¶¶ 21-23). Plaintiff states: "If you are uncomfortable being on camera, then you shouldn't be the clerk." (*Id.*);

- The clerk starts reading again. Plaintiff talks over the clerk, but the clerk keeps reading and is finally able to finish reading the letter into the record. (*Id.* at 42:40 to 44:40)

(*See* also Ross Decl., ¶¶ 17-20; Wix Decl., ¶¶ 17-20).

Plaintiff then returned to her seat and began providing her opinions regarding the letter.

(Frenchko Cell Phone Video at 44:40-46:03). She stated, all without interruption by her fellow

5

commissioners, "there was a letter that was written by an inmate's mother um about someone who requested um medical treatment they were told that the kiosk was broken um that they were not able to get treatment they were um they ended up getting meningitis and being in the hospital and going and to rehab. Now the individual has bells palsy and is blind um and um I sent a copy of this letter to the mother and she emphatically said that there's – that her son did not say the Sheriff was doing a great job. The person who was with her – there were witnesses of him asking for help because there was um there were phone calls um from my understanding." (Id.). Plaintiff went on to say that "once I brought this up at a public meeting uh I received more complaints about things that happened at the jail and one of them was that an inmate was taken off of his medicine uhh and then ended up dying within a few days um because of uhh being taken off of." (Id. at 45:44-46:06). At this point, Plaintiff was no longer responding to the Sheriff's letter to address new complaints she has received. (Id.).

Commissioner Fuda attempted to ask Plaintiff something, but Plaintiff cut him off. (Id. at 46:06-46:45). Commissioner Cantalamessa stated that this was "getting disruptive," and that Plaintiff was talking about the chief law enforcement official in the county. (Id.). Plaintiff asks him to stop interrupting her, and Commissioner Cantalamessa clarified that he thought she had finished. (Id.). Commissioner Fuda reminded Plaintiff that she interrupted "everyone the entire time." (Id.). Plaintiff went on to state "so what happened here was I brought something up I asked the Sheriff for a copy of the standard operating procedures" and Commissioner Fuda interjected to state that she has a choice and that if she is not going to apologize, then they will move on with the meeting. (Id.). Commissioner Fuda did not demand or require her to apologize. (Id.). Plaintiff

continued to rant about not receiving operating procedures from the Sheriff's Office. Commissioner Fuda asks to move on repeatedly.[2] (Id.).

Plaintiff then brings up a separate complaint of hers, stating "another thing for county business" that "jobs and family services is not-" at which time Commissioner Fuda banged his gavel and instructs them to move on, but Plaintiff continued on with her new complaints about a sperate entity, jobs and family services. (Id. at 46:45-47:00). Notably, Plaintiff's new complaints regarding jobs and family services were not on the agenda, which she claims she was attempting to follow during this meeting. (See Pl. Depo., Doc. 49, PageID#1043).

Plaintiff continued that "jobs and family services is not posting" when the Sergeants approached the commissioners hearing box. (Frenchko Cell Phone Video, Ex. M, at 47:00-47:30). Sergeant Wix asked Plaintiff to "please stand up please" and she asked why. (Id.). He explained that she was being very disruptive and was disturbing the meeting. (Id.). Plaintiff claimed she was not disrupting the meeting, and Sergeant Wix clarified she was. (Id.). For the first time, after Plaintiff was asked to stand, Commissioner Cantalamessa clarified that Plaintiff could be removed for disrupting a meeting. (Id.). Neither Commissioner Cantalamessa nor Commissioner Fuda asked for Plaintiff to be removed. (Id.). Plaintiff again stated she was not being disruptive before standing up and leaving the meeting. (Id.). Notably, neither Sgt. Ross nor Sgt. Wix touched Plaintiff at all in the Commissioner's hearing room.[3] (Commissioner Hearing Room Video, 11:19:57 to

---

[2] Emails between Plaintiff and the Sheriff's Office, attached hereto as Exhibit C, demonstrate Plaintiff was provided policies as requested and she did not subsequently follow up on her request after receiving said policies.

[3] The Complaint alleges that "Defendant Wix offensively yanked the chair she [Ms. Frenchko] was sitting in for no apparent necessary reason." (Complaint, ¶ 56, PageID # 9). The overhead surveillance video belies Plaintiff's allegation. When Plaintiff initially refused to stand up, Sgt. Wix pulled the chair back a couple of inches. (Commissioner Hearing Room Video, 11:20:00 to 11:20:05; Frenchko Cell Phone Video, 47:10; Wix Decl., ¶ 32).

11:20:39; Wix Decl., ¶ 34; Ross Decl., ¶ 34). The crowd clapped as she walked out of the meeting. (Id. at 47:40-47:50).

In the hallway outside the Commissioners' Hearing Room, Plaintiff was placed under arrest for disturbing a lawful meeting. (Frenchko Cell Phone Video at 47:56 to 48:20; Ross Decl., ¶ 35; Wix Decl., ¶ 35). The actual arrest itself was uneventful. Plaintiff informed Sgts. Ross and Wix that she had various medical conditions. (Frenchko Cell Phone Video, at 48:40 to 49:15; Ross Decl., ¶ 38; Wix Decl., ¶¶ 38-39). Sgt. Wix offered to call paramedics, but Plaintiff declined. (*Id.*; Wix Decl., ¶ 38; Ross Decl., ¶ 39). From 49:15 to 49:30 on the video, Plaintiff stated that the handcuffs were too tight. (Frenchko Cell Phone Video at 49:15 to 49:30; Ross Decl., ¶ 42; Wix Decl., ¶ 41). Less than one minute later, Sgt. Ross added a second set of handcuffs to relieve any shoulder discomfort. (Frenchko Cell Phone Video at 50:00 to 50:40; Wix Decl., ¶ 41; Ross Decl., ¶ 42). After double cuffing Plaintiff, Sgt. Ross asked her: "Is that better?" Plaintiff responded, "Yes." (*Id.*). Plaintiff had no further complaints regarding the handcuffs. (*Id.*; Frenchko Depo., Vol. II, Doc. 50, PageID # 1208). Surveillance video confirms that, after being double-cuffed, Plaintiff's arms were not behind her back, they were by her side. (*See* 5th Floor Elevator Video attached hereto as Ex. P and manually filed with the Court).

Plaintiff was escorted to the Trumbull County Jail which is internally connected to the Commissioners' office. Sgts. Ross and Wix and no further contact with Plaintiff after bringing her to the jail. (Wix Decl., ¶¶ 42-44; Ross Decl., ¶¶ 42-44; Frenchko Depo., Vol. II, Doc. 50, PageID # 1208-09).

After completing their report, Sgts. Ross and Wix filed a complaint for disturbing a lawful meeting in the Warren Municipal Court. (Wix Decl., ¶ 47; Ross Decl., ¶ 48; Municipal Court Complaint attached hereto as Exhibit Q; Arrest Report attached hereto as Ex. D). Plaintiff was

released within a couple of hours the same day. (*See* Pl. Depo., Doc. 50, PageID#1138-1139). A copy of their arrest report was also submitted to the Court. (Wix Decl., ¶ 47; Ross Decl., ¶ 48). A deputy clerk at the Warren Municipal Court found that there was probable cause to arrest Plaintiff. (*See* Probable Cause Determination attached hereto as Ex. R). Ultimately, the charge was dismissed without prejudice on August 29, 2022. (*See* Dismissal Entry attached hereto as Ex. S).

    **C.**    **Plaintiff's Criminal Matter and Public Records Request.**

Following her July 7, 2022 arrest, Plaintiff's counsel sent a letter on July 25, 2022 addressed to Trumbull County Prosecutor Dennis Watkins, Mauro Cantalamessa, and Frank Fuda, "requesting the preservation of any and all documents and information pertaining to the Commissioner's Meeting held on July 7, 2022 when Niki Frenchko was arrested" including "Memos[,] Text messages[,] Phone call logs[,] Any messages from any social media platforms[,] Texts or calls from private cell phones[.]" (Jul. 25, 2022 Letter from Counsel attached hereto as Ex. E). The letter, which was not sent to Sheriff Monroe or Sgts. Wix and Ross, also "request[s] that Sherriff Monroe send me the policy and procedure that correlates with the arrest of Ms. Frenchko at the Commissioners meeting on July 7, 2022. Also, the names of the 2 officers that arrested Ms. Frenchko also." (Id.).

Plaintiff separately emailed a request to Sheriff Monroe and the general commissioner's email on August 8, 2022, requesting "[u]nder the ohio sunshine law, Please send me all call logs between commissioners, Gedeon, Taylor, Blair Klotz & Monroe or staff & text messages for the same, from June 25- today." (Records Request, Doc. 47-6, PageID#1007; and *see* Ex. F). Plaintiff did not follow up regarding this request. (*See* id.). Plaintiff also did not send this to the Clerk, whom Plaintiff believes is responsible for fulfilling records requests for the Trumbull County Board of Commissioners. (Records Request, Doc. 47-6, PageID#1007; Pl., Depo., Doc. 50, PageID#1172-1173; Trumbull County Meeting Minutes attached hereto as Ex. G.).

In the meantime, Plaintiff and her counsel requested an Order of Preservation in her criminal case which was granted on August 4, 2022. (*See* Preservation Order, Doc. 47-5, PageID#1005-1006; and *see* Ex. H and I). The order was allegedly sent to the Sheriff's Office and to the Trumbull County Commissioners. (Id.). However, only Sheriff Monroe and Plaintiff recall receiving this communication. (*See* Monroe Depo., Doc. 44-1, PageID#633; Cantalamessa Depo., Doc. 43-1, PageID#500; Fuda Depo., Doc. 42-1, PageID#98). On August 8, 2022, Special Prosecutor Raymond Srp. responded to Plaintiff's counsel to clarify the request for preservation of records after speaking to Sheriff Monroe. (Srp Email, Doc. 47-7, PageID#1008-1010). Based on the clarification requested in the letter from the prosecuting attorney to Plaintiff's counsel, it is clear that the Sheriff's Office was confused as to the scope and requirements of the order to preserve. (*See* id.). The Special Prosecutor also noted that the security footage includes numerous angles and is automatically overwritten due to volume and that "Trumbull county and the State of Ohio do not have any control over the person [sic] electronic devices of employees, or their social media platforms." (*See* id.). Plaintiff's counsel responded to this letter on August 24, 2022 clarifying that he was not seeking public records and that he wanted certain text messages from personal devices, surveillance footage, and emails. (*See* id.). Before the documents requested were preserved under this order, the criminal charges against Plaintiff were dismissed days later on Augst 29, 2022. (Ex. S, Dismissal Entry).

The next communication regarding preservation of records did not occur until over eight months later on March 9, 2023. (March 9 Spoilation Notice, Doc. 47-9, PageID#1020-1021). Plaintiff's counsel sent a letter to the Trumbull County Prosecutor's Office demanding "Sheriff Monroe, the Sheriff's Department and its agents, the Commissioners, everyone in the room today [March 9, 2023], and every human being, public official, employee, and agent in the County

maintains any and all records that relate in any manner to both Commissioner's Frenchko's previous arrest and today's events during this meeting. This includes all records, whether they exist on their personal devices or County devices. This includes, but is not limited to, emails, text messages, phone logs, social media messages, phone records, and any other tangible, physical, or electronic communication. This demand includes all phones, laptops, tablets, pagers, smartphones, desktops, letters, or even a scribble on a cocktail napkin." (Id.). Plaintiff has not demonstrated that this communication was passed on to Defendants. (*See* id.). Regardless, this request broadly seeks the preservation of "any and all records" that "relate in any manner" over eight months after Plaintiff's July 7, 2022 arrest (*See* id.).

Notably, prior to becoming a commissioner, Plaintiff felt there were issues with Trumbull County, Ohio's public records retention practices. (Pl. Depo., Doc. 50, PageID#1169-1171). Despite this, Plaintiff has not acted officially to address her concerns. (*See* id.). Instead, Plaintiff has inundated Trumbull County, Ohio with public records requests she has submitted to the point that she was informed that her public records requests were impacting the ability of commissioners' staff to get their work done. (*See e.g.*, Ex. G, Trumbull County Meeting Minutes). Further, during her time as a commissioner, Plaintiff has received numerous public records requests. (*See* e.g., id.). Plaintiff has stated that it is the job of the Clerk to fulfill these records requests but that it is the job of the custodian of the records to assess whether a specific record is a public record. (Pl. Depo., Doc. 50, PageID#1172-1175; Ex. G, Trumbull County Meeting Minutes). Plaintiff has received public records requests for her phone records, yet she has never turned over any records from her phone to fulfill these requests. (Id.).

**D.      Plaintiff's Phone Stand Was Moved During The March 9, 2023 Hearing.**

The next incident at issue in this case occurred on March 9, 2023 when the Board of Commissioners were holding a public budget hearing. (*See* Pl. Cmpl., Doc. 1, PageID#12-13; Pl.

Depo., Doc. 50, PageID#1153; and *see* March 9th Meeting Video attached hereto as Ex. T and manually filed). Sheriff Monroe was in attendance along with other Trumbull County officials. (*See e.g.*, March 9 Spoliation Notice, Doc. 47-9, PageID#1020). The Commissioners were seated at a table in the center of the room while those viewing the meeting sat in individual chairs in a circle away from the table. (March 9th Meeting Video, at 00:10-2:30 attached hereto as Exhibit T and manually filed). The Commissioners were discussing potential changes to the operation of the jail to save money. (Id.). Commissioner Cantalamessa asked Sheriff Monroe to give his opinions regarding their suggestions. (Id.). Sheriff Monroe got out of his seat to approach the table where the commissioners were seated. (Id.).

At this time Plaintiff was livestreaming the meeting on her Facebook and her phone was elevated on a phone stand that was positioned on the table. (Id.). When Sheriff Monroe walked towards the table to speak, Plaintiff moved the phone on the stand towards Sheriff Monroe. (Id.). Feeling that her phone was in his personal space and reacting quickly, he moved the phone stand away from him. (Id.). In moving the phone stand, the phone fell onto the table that the stand was on. (Id.). Sheriff Monroe did not "seize" Plaintiff's phone, he did not grab or throw her phone, and he did not otherwise exercise control over her phone. (Id.). Plaintiff claims this momentarily disrupted the streaming of the video. (Pl. Depo. Doc. 50, PageID#1120). The Facebook live demonstrates Plaintiff was still streaming before and after the time her phone fell from the stand. (Id.). Plaintiff was able to pick her phone off of the table and turned the camera towards herself. (Id.). Plaintiff exclaimed that "oh my god, you do not do that" and that "do you know that if you touch something that is connected to someone that is battery so you don't, so you don't" as Sheriff Monroe asked her to please stand back from him. (Id.). Plaintiff argued that what he did was

inappropriate, he stated that she is inappropriate. (Id.). The entire interaction lasted approximately one or two seconds. (Id.).

After Plaintiff picked her phone up from the table, Sheriff Monroe attempted to give the opinion relating to jail finding as requested by the commissioners. (Id.). He stated to the audience "we would love to do that" but Plaintiff interrupted him to remark "disgusting." (Id.). Sheriff Monroe continued on to say that "some of our highest paid employees are with the Sheriff's office. The way we are working to save money is to promote better quality services in the jail" but Plaintiff interrupted him again to interject "for your friend, yeah I know what you are doing." (Id.). Sheriff Monroe asked Plaintiff to let him finish and she repeated "I know what you are doing. You are helping your buddy." (Id.). Commissioner Malloy informed Plaintiff that she was being "awfully rude", and she rebutted that "what was rude was him coming and snatching up my phone while I was trying to live stream and this was completely inappropriate." Commissioner Malloy asked Plaintiff if she was filming a live stream or a reality TV show, and she responded that "it does not matter" while she walked over to the Sheriff who had returned to his seat to capture him on her live stream. (Id.). Commissioner Cantalamessa points out that people are leaving, and Plaintiff states "that is fine." (Id.). The meeting adjourned shortly after.  (Id.).

Based upon these circumstances described above, Plaintiff filed fourteen causes of action on April 17, 2023 against Trumbull County Sheriff Paul Monroe, Trumbull County, Ohio, the Board of Trumbull County Commissioners, the Trumbull County Sheriff's Office, Sergeant Wix, Sergeant Ross, Commissioner Mauro Cantalamessa, and former Commissioner Frank Fuda. (Pl. Cmpl., Doc. 1, at PageID#1-26). She moved for a temporary restraining order and preliminary injunction after filing suit, both of which were denied. (Minutes and Order, Doc. 6, PageID#81). In all, Plaintiff's Complaint centers on three distinct incidents: Plaintiff's arrest for disrupting a

lawful public meeting on July 7, 2022, an alleged destruction of criminal evidence and public records, and Plaintiff's interaction with Sheriff Monroe during a budget hearing meeting on March 9, 2023. (Pl. Cmpl., Doc. 1, at PageID#1-26). Now, Defendants move for summary judgment on all claims herein as a matter of law.

## II.  **LEGAL ANALYSIS**

Defendants are entitled to summary judgment as a matter of law. Each of Plaintiff's fourteen causes of action are addressed below.

### A.  **Defendants are Entitled to Summary Judgment on Plaintiff's Facial Challenge to R.C. 2917.12.**

Counts I and II of Plaintiff's Complaint present a facial challenge to R.C. 2917.12. (Pl. Cmpl., Doc. 1, PageID#14-16). Plaintiff seeks to enjoin enforcement of the statute and to make Defendants personally liable for enforcing it. Because Defendants had no clearly established duty to decline enforcement of this properly enacted and presumptively constitutional statute, and because R.C. § 2917.12 is not facially unconstitutional, Defendants are entitled to qualified immunity.

#### i.  *Defendants are Entitled to Qualified Immunity on Plaintiff's Facial Challenges.*

Ohio, like many States[4], prohibits the disruption of a lawful meeting. The Ohio General Assembly enacted R.C. § 2917.12 in 1974. It states in pertinent part:

(A) No person, with purpose to prevent or disrupt a lawful meeting, procession, or gathering, shall do either of the following:
  (1) Do any act which obstructs or interferes with the due conduct of such meeting, procession, or gathering;
  (2) Make any utterance, gesture, or display which outrages the sensibilities of the group.

---

[4] *See e.g.* Ky.Rev.Stat. §525.150; Mich. Comp. Laws § 750.170; Tenn. Code Ann. § 39-17-306; 18 Pa.C.S. § 5508.

Qualified immunity gives officials "breathing room" to make reasonable, but mistaken judgments. *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). The Supreme Court directs that "police officers may not be held liable for damages unless the officers were 'plainly incompetent' or 'knowingly violate[d] clearly established law." *Carroll v. Carman*, 574 U.S. 13, 17 (2014) (per curiam). "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, at 526 (1985). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan, 555* U.S. 223, 231, (2009) (internal citations omitted).

Qualified immunity under federal law is applied using a two-part test. First, courts must determine whether the alleged acts violate a constitutional right. Second, the court must determine whether at the time of the actions, the constitutional right is "clearly established." *Saucier v. Katz*, 533 U.S. 194 (2001). The determination must be based on what a reasonable officer would believe or understand under the circumstances given what was known to the officer at the time. *White v. Pauly*, 137 S.Ct. 548, 550 (2017); *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2474 (2015); *Fox v. DeSoto*, 489 F.3d 227 at 236 (6th Cir. 2007). The standard is objective and must not be applied using hindsight unavailable to the officers at the time the action was taken. *Id.* Once a defendant has shown that he was acting within his discretionary authority, the plaintiff bears the burden of proving that he is not entitled to qualified immunity. *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991). Plaintiff does not meet that burden in this case.

At the time Plaintiff was arrested, no court had declared R.C. § 2917.12 facially unconstitutional. When public officials implement validly enacted state laws that no court has invalidated, their conduct typically satisfies the core inquiry—the "objective reasonableness of an official's conduct—that the immunity doctrine was designed to test." *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 441 (6th Cir. 2016). The Supreme Court tells us that public officials should generally receive qualified immunity when enforcing properly enacted laws. *Michigan v. DeFillippo*, 443 U.S. 31 (1979). The Court noted that "[t]he enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." *Id*. at 38. The Court was more explicit in *Pierson v. Ray*, 386 U.S. 547 (1967): "A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does." *Id*. at 555. The Supreme Court has *never* denied qualified immunity to a public official who enforced a properly enacted statute that no court had invalidated. *Citizens in Charge*, 810 F.3d at 441. "Any other approach would place risky pressures on public officials to second-guess legislative decisions." *Id*. at 442.

The Sixth Circuit has adopted similar reasoning in granting qualified immunity to public officials who enforced validly enacted laws. *See Risbridger v. Connelly*, 275 F.3d 565, 573-74 (6th Cir. 2002); *Hanna v. Drobnick*, 514 F.2d 393, 397 (6th Cir. 1975), *repudiated on other grounds by Thomas v. Shipka*, 818 F.2d 496 (6th Cir. 1987); *cf. Wolfel v. Morris*, 972 F.2d 712, 719-20 (6th Cir. 1992). Other circuits have done the same, treating the fact that an officer enforced a presumptively constitutional law as creating "a heavy presumption in favor of qualified

immunity." *Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 104 (2d Cir. 2003) *Swanson v. Powers*, 937 F.2d 965, 968-69 (4th Cir. 1991).

R.C. § 2917.12 is not unconstitutional, let alone "so grossly and flagrantly unconstitutional" that any reasonable officer would decline to enforce it. *DeFillippo*, 443 U.S. at 38. Ohio courts have consistently upheld the constitutionality of R.C. § 2917.12. *See e.g., State v. Brand*, 2 Ohio App.3d 460, 442 N.E.2d 805 (Ohio Ct. App. 1981) (rejecting facial challenge to R.C. § 2917.12); *City of Columbus v. Doyle*, 149 Ohio App.3d 164, 2002-Ohio-4490, 776 N.E.2d 537, ¶ 15 ("2317.12 is clear and unequivocal; it gives fair notice of what is forbidden. The plain meaning is that it prohibits any person from acting with a purpose to prevent or disrupt a lawful gathering and from succeeding in that effort by actually obstructing or interfering with its due conduct. This court finds no imprecision in the statutory language that would prevent a person of ordinary intelligence from knowing what is and what is not proscribed.").

In *Hinners v. O'Shea*, 2022 U.S. Dist. LEXIS 98018 (N.D. Ohio May 31, 2022), this Court held that a local ordinance similar to R.C. § 2917.12(A)(1) was not facially unconstitutional. *Id*. at *69. This Court did hold that the part of the local ordinance identical to R.C. § 2917.12(A)(2) was unconstitutional. *Id*. at *67. Two points: First, if any part of the statute can be enforced—like this Court ruled it could in *Hinners*—then the statute is not facially unconstitutional because facial unconstitutionality requires a finding that "no set of circumstances exists which under the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745. Accordingly, R.C. § 2917.12 cannot be so "flagrantly unconstitutional" that any reasonable officer would decline to enforce it.

*Citizens in Charge, Inc.* proves the point. In *Citizens in Charge, Inc.*, the Sixth Circuit granted qualified immunity to the Ohio Secretary of State who enforced a statute that was later held unconstitutional. The Secretary of State was entitled to qualified immunity "where the

plaintiffs' arguments about the law's unconstitutionality may be winning ones but where the Secretary's decision to *enforce* the law was not objectively unreasonable." 810 F.3d at 445. Second, to be "clearly established" for the purpose of determining qualified immunity, existing precedent—either a controlling authority or a "robust consensus of cases of persuasive authority"—must have placed the constitutional question "beyond debate." *Plumhoff v. Rickard*, 572 U.S. 765, 780 (2014). It is not clearly established that R.C. § 2917.12 is unconstitutional. Neither the U.S. Supreme Court, the Sixth Circuit nor the Ohio Supreme Court have ever held that R.C. § 2917.12 is facially unconstitutional. On the contrary, as argued above, R.C. § 2917.12(A)(1), the section at issue in this case, has consistently been held constitutional. As a result, at the time of Plaintiff's arrest, it was not clearly established that R.C. 2917.12 was unconstitutional. Therefore, Defendants are entitled to qualified immunity.

Moreover, Sheriff Monroe, Commissioner Fuda, and Commissioner Cantalamessa did not arrest Plaintiff nor play any role in the enforcement of R.C. 2917.12, and even if they somehow did, these individuals would similarly be entitled to qualified immunity.

### ii.       *R.C. § 2917.12 is not Facially Unconstitutional.*

A facial challenge is an attack on a statute itself as opposed to a particular application. *City of Los Angeles v. Patel*, 576 U.S. 409, 415 (2015). Under *Salerno*, a plaintiff can only succeed in a facial challenge by "establish[ing] that no set of circumstances exists under which the Act would be valid," *i.e.*, that the law is unconstitutional in all of its applications. *Salerno*, 481 U.S. at 745.

A facial challenge to a law is no small matter. At stake is not an attempt to invalidate the law in a discrete setting but an effort "to leave nothing standing," *Warshak v. United States*, 532 F.3d 521, 528 (6th Cir. 2008) (en banc), to invalidate the law in each of its applications, to take the law off the books completely. As a result, facial challenges are disfavored for several reasons. Facial challenges run contrary to the fundamental principle of judicial restraint that courts should

neither '"anticipate a question of constitutional law in advance of the necessity of deciding it'" nor '"formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.'" *Ashwander v. TVA*, 297 U.S. 288, 346–347 (1936) (Brandeis, J., concurring) (quoting *Liverpool, New York & Philadelphia S. S. Co. v. Commissioners of Emigration*, 113 U.S. 33, 39 (1885)). Finally, facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution. We must keep in mind that '"[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people.'" *Ayotte v. Planned Parenthood of Northern New Eng.*, 546 U.S. 320, 329 (2006) (quoting *Regan v. Time, Inc.*, 468 U.S. 641, 652 (1984) (plurality opinion)). With these principles in view, we turn to the merits of Plaintiff's facial challenge to R.C. § 2917.12 asserted in Counts I and II.

As an initial matter, Plaintiff concedes that R.C. § 2917.12 is constitutional depending on the circumstances: "Although there are theoretically some circumstances where the Statute might restrain fighting words, the Statute is clearly capable of restraining and criminalizing protected criticisms of elected officials." (Pl. Cmpl., Doc. 1, PageID#14). This concession sinks Plaintiff's facial challenge. A facial challenge to a legislative act is the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the act would be valid. *Salerno*, 481 U.S. at 745. Because the fact that a statute might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, litigants bringing facial challenges must meet a heavy burden. *Id*. Since Plaintiff concedes that there are circumstances in which R.C. § 2917.12 is enforceable, her facial challenge fails.

Plaintiff's facial challenge fails for another more fundamental reason: R.C. § 2917.12(A)(1) is constitutional. Plaintiff was arrested for her interruptive and disruptive *conduct*,

not the *content* of her interruptions. (Ross Decl., ¶ 47; Wix Decl. ¶ 46). More specifically, Plaintiff was arrested for violating R.C. § 2917.12(A)(1). (Ross Depo., Doc. 46-1, PageID#839).

A statute will only be declared unconstitutionally vague if "its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The statute must provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. *Id.* at 108. Where First Amendment freedoms are involved, the law must be sufficiently definite in order to avoid chilling expression. *Grayned*, 408 U.S. at 108.

R.C. § 2917.12(A)(1) simply prohibits individuals from intentionally engaging in behavior that has the effect of disrupting or preventing the ordinary conduct of a meeting. The statute is designed to preserve the free speech of those conducting a lawful meeting by preventing others from disrupting it. *Brand*, 2 Ohio App. 3d at 462. R.C. § 2917.12(A)(1) reaches only the disorderly physical or verbal conduct of individuals who are acting with the specific intent to prevent or disrupt a meeting. Stated differently, the statute does not regulate the context of any person's speech, it applies to his conduct and the act of speaking when the actor's intent is not to facilitate the exchange of ideas but rather to disrupt or prevent either an exchange or the legitimate expression of ideas by others. *Id*. A person of ordinary intelligence knows the type of conduct that is likely to cause an impairment to the ordinary conduct of a meeting. *Id*. at 461.

Under R.C. § 2917.12(A)(1) police officers are not given unfettered discretion. Whether a person's conduct prevents or disrupts a lawful meeting is an objective standard that does not acquire its meaning from a particular officer's determination of what constitutes 'disruption.' Although an officer must initially make a determination as to whether the statute has been violated before he makes an arrest, the officer's assessment of the defendant's conduct is not the defining element of the offense. Because R.C. § 2917.12(A)(1) communicates its reach in words of common

understanding, *Boos v. Barry*, 485 U.S. 312, 332 (1988), it provides fair notice to citizens as to the type of conduct that is proscribed. Accordingly, R.C. 2917.12(A)(1) is not facially unconstitutional, and even if it somehow was, Defendants are entitled to qualified immunity.

**B.    Defendants are Entitled to Summary Judgment on Plaintiff's First Amendment Claims.**

Probable cause defeats a retaliatory arrest claim in all but the narrowest of circumstances. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019). As discussed *infra*, there was actual and arguable probable cause for Plaintiff's arrest. Accordingly, Plaintiff's First Amendment retaliation claim fails against all Defendants.

However, even if there was no probable cause for Plaintiff's arrest, her First Amendment claims still fail on their merits. To establish a First Amendment retaliation claim, the plaintiff must prove that (1) they engaged in a constitutionally protected activity; (2) the defendant's adverse action caused them to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) the adverse action was motivated, at least in part, as a response to the exercise of the plaintiffs' constitutional rights. *Hinners*, 2022 U.S. Dist. LEXIS 98018 at *28 citing *Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir. 2000).

Here, Plaintiff was disrupting a lawful public meeting, which is not a constitutionally protected activity. Plaintiff also did not suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity. Most significantly, Plaintiff's arrest was not motivated by any exercise of constitutional speech; rather, it was motivated by her clear disruptions to the July 7, 2022 Trumbull County Commissioners' meeting.

Defendants Monroe, Fuda and Cantalamessa took no adverse action against Plaintiff. Sheriff Monroe was not at the July 7, 2022 meeting. (*See generally*, Ex. M, Frenchko Cell Phone Video). There is no evidence he ordered her arrest. (*See e.g.*, Ross Depo., Doc. 46-1, PageID#904;

Wix Depo., Doc. 45-1, PageID#764). Sheriff Monroe simply wrote Plaintiff a letter responding to a letter she read which included allegations and misstatements against him and his office. (Sheriff's Letter, Doc. 47-1, PageID#982). He did not have her arrested nor did he compel any apology from her. (*See* Id.).

As for Commissioners Fuda and Cantalamessa, they did not arrest Plaintiff or order her arrest. The decision to remove and arrest Plaintiff was made by Sgts. Wix and Ross. (Wix Decl., ¶¶ 30, 45; Ross Decl., ¶¶ 30, 46). Plaintiff was permitted to voice her objections to Sheriff Monroe's letter. (Ex. M, Frenchko Cell Phone Video, at 44:40-47:00). Neither Commissioner compelled her to speak, and expressly recognized that she was not going to apologize and attempted to continue the meeting. (Id.). Neither Commissioner required any apology from Plaintiff, nor did they play any role in her arrest. (Id.).

There is no evidence that Defendants Wix and Ross arrested Plaintiff because of the exercise of her constitutional rights as opposed to her disruption of the meeting. Wix and Ross were not aware that Plaintiff had criticized Sheriff Monroe in the past or that Sheriff Monroe had written a letter in response. (Wix Decl., ¶ 13; Ross Decl., ¶ 13.) Wix and Ross did not even know most of what Plaintiff was saying. (Ross Decl., ¶ 47; Wix Decl. ¶ 46). Plaintiff was arrested for her conduct, not the content of her interruptions. (*Id.*).

Plaintiff's attempts to assert a claim for compelled speech are even more farfetched. A claim for compelled speech requires evidence that the government compelled a person to convey the government's message. *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 208. Claims for compelling speech encompass circumstances where the government compels the endorsement of ideas it approves. *O'Toole v. O'Connor*, 2016 U.S. Dist. LEXIS 109923, *32. Although a complex range of factors may come into play, the type of forced-speech policy most

likely to run afoul of the First Amendment is, generally speaking, one in which individuals are coerced into betraying their convictions by involuntarily affirming the government's position on a controversial topic. *Bongo Prods., LLC v. Lawrence*, 603 F. Supp. 3d 584, 590 (citing *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2464 (2018)) (internal quotation marks omitted). Examples where courts have found instances of unconstitutional compelled speech include a statute requiring students to recite the Pledge of Allegiance or a statute requiring the display of the state's motto on license plates. *O'Toole,* 2016 U.S. Dist. LEXIS 109923 at *32.

Compelled speech requires actual compulsion. *Wilkins v. Daniels*, 744 F.3d 409, 415 (6th Cir. 2014) (A "general principle of compelled speech jurisprudence . . . is that a violation of the First Amendment right against compelled speech occurs only in the context of actual compulsion."). Nobody compelled Plaintiff to say anything. Again, Sheriff Monroe was not present, so he did not compel Plaintiff to say anything. Sgts. Wix and Ross did not ask or compel Plaintiff to apologize. (Frenchko Depo., Vol. II, Doc. 50, PageID # 1212). Commissioner Cantalamessa did not ask or compel Plaintiff to apologize. (Frenchko Cell Phone Video, at 44:40-47:00). Commissioner Fuda *asked* Plaintiff if she was going to apologize to the Sheriff. (Id.). But asking and compelling are two very different things. Commissioner Fuda did not threaten Plaintiff or order her arrest because Plaintiff did not apologize. As stated above, the decision to remove and arrest Plaintiff was made independently by Sgts. Wix and Ross.

In sum, the facts at hand and the applicable law demonstrate that there is no basis for Plaintiff's First Amendment claims for retaliation and compelled speech against Defendants. Accordingly, summary judgment is warranted in favor of Defendants on these claims.

23

C.      **Defendants are Entitled to Qualified Immunity on Plaintiff's Fourth Amendment Claims.**

The existence of probable cause and/or arguable probable cause defeats Plaintiff's Fourth Amendment claims for malicious arrest,[5] malicious prosecution, and unlawful seizure. *Howse v. Hodous*, 953 F.3d 402, 409 (6th Cir. 2020) (Fourth Amendment claims for false arrest and malicious prosecution rise and fall on whether there was probable cause). Moreover, Defendants are entitled to qualified immunity.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Because arrests are "seizures" of "persons" they must be reasonable under the circumstances." *See Payton v. New York*, 445 U.S. 573, 585 (1980). A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence. *Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001). To determine whether an officer had probable cause for an arrest a court "examine[s] the events leading up to the arrest, and then decide[s] 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). Because probable cause "deals with probabilities and depends on the totality of the circumstances," 540 U.S., at 371, it is "a fluid concept" that is "not readily, or even usefully, reduced to a neat set of legal rules," *Illinois v. Gates*, 462 U.S. 213, 232 (1983). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id*. at 243-244, n. 13. Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014).

---

[5] There is no federal cause of action for malicious arrest outside of a Fourth Amendment claim for unlawful seizure.

24

### i.       *Subjective Motivations are Irrelevant to the Probable Cause Analysis.*

Plaintiff alleges that her arrest was motivated by Defendants' animosity towards her and, therefore, was not based on probable cause. But plenty of cases "make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Barrera v. City of Mount Pleasant*, 12 F. 4th 617, 624 (6th Cir. 2021) citing *Devenpeck v. Alford*, 543 U.S. 146 (2004); *Wren v. United States*, 517 U.S. 806, 810-13 (1996). Indeed, the officer's subjective state of mind for making an arrest need not even be the criminal offense as to which the known facts provide probable cause.[6] *Devenpeck*, supra. The Fourth Amendment permits certain actions to be taken in certain circumstances, whatever the intent. *Id*. Subjective intentions play no role in the objective probable cause analysis.

### ii.       *Probable Cause Disposes of Plaintiff's Fourth Amendment Claim.*

Here, there was probable cause for Plaintiff's arrest. R.C. 2917.12(A)(1) states that "[n]o person, with purpose to prevent or disrupt a lawful meeting, procession, or  gathering, shall . . . [d]o any act which obstructs or interferes with the due conduct of such meeting, procession, or gathering[.]" Under Ohio law, a person acts purposely when it is the person's specific intention to cause a certain result, *or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.* R.C. § 2901.22(A) (Emphasis added). To prove a violation of the statute, it is not necessary to prove that the suspect actually intended to disrupt the meeting; it is sufficient to prove that the suspect intended the conduct in which he/she engaged

---

[6] Plaintiff alleges that she was arrested under R.C. § 2917.12(A)(2) for outraging the sensibilities of a group. (Complaint, Doc. 1, ¶ 1, PageID # 3). Defendants contend that Plaintiff was arrested under R.C. § 2917.12(A)(1) for obstructing and interfering with the meeting. Under *Devenpeck*, it does not matter which subsection of the statute the parties *think* applies. If the facts support probable cause for any offense/subsection in the entire Ohio Revised Code, the arrest is lawful. *Devenpeck*, 543 U.S. 153-55; *Wesby*, 583 U.S. at 54, fn. 2.

and those actions disrupted the meeting. *Doyle*, 2002-Ohio-4490 at ¶¶ 27-28. The word "disrupt" is not defined in the statute; however, the court in *Brand* defined disrupt in a similar context as "to intercept or impede progress of something." 2 Ohio App.3d 460 at 463. Alternatively, "'[c]ourts have used dictionary definitions to determine the plain and ordinary meaning of a statutory term.'" *Id*, quoting *State v. Jackson*, 2012-Ohio-4219, 2012 WL 4056778, ¶ 34 (Ohio Ct. App. 2012). Dictionaries generally define "disruption" as an action that interrupts, impedes, or stops.  *See, e.g.*, American Heritage Dictionary of the English Language 522 (5th ed. 2011) (including "disruption" under "disrupt," which is defined as "[t]o throw into confusion or disorder" or "[t]o interrupt or impede the progress of"); Webster's Third New International Dictionary 656 (1976) (defining "disruption" as "the state of being disrupted," and defining "disrupt" as "to interrupt to the extent of stopping, preventing normal continuance of, or destroying").

Plaintiff's own video demonstrates probable cause for her arrest. There is no dispute that Plaintiff's intentional interruptions obstructed the meeting. Her continued outbursts repeatedly forced the Clerk to stop reading and, after the letter was finally read, she would not allow the meeting to proceed to the next order of business. (*See* Frenchko Cell Phone Video, at 39:30-44:40). During her deposition, Plaintiff claimed she was merely trying to get back to the meeting agenda and attempted to make a motion; (Pl. Depo., Doc. 49, PageID#1043-1044) however, her video demonstrates she disagreed with the contents of the letter and what she believed to be criticisms of her. (See Frenchko Cell Phone Video, at 39:50-40:10). A reasonable officer witnessing Plaintiff's repeated disruptions when (1) the clerk was trying to read a letter into the record and (2) the presiding commissioner was trying to move on could believe that there was probable cause to arrest Plaintiff for disturbing a lawful meeting. The case law supports probable cause.

In *Brand*, the defendant was at a rally featuring First Lady Rosalyn Carter. 2 Ohio App.3d at 460-61. While Ms. Carter was speaking, the defendant shouted statements supporting the Iranian revolution and condemning the Carter administration. *Id*. at 461. This behavior only went on for approximately one minute. *Id*. The defendant was told to be quiet three times before being arrested. *Id*. The defendant was convicted of disrupting a public meeting. The defendant argued that his brief heckling of a public figure did not substantially impede the conduct of the gathering. *Id*. at 462. The Court of Appeals disagreed: "We find that there was ample probative evidence from which reasonable minds could conclude that the defendant acted with the purpose to disrupt a lawful meeting and that his shouts and screams substantially obstructed the due conduct of the meeting." *Id*.

When compared to the defendant in *Brand*, Plaintiff's conduct is as bad if not worse. Plaintiff's repeated interruptions caused a longer disruption than the one-minute disruption in *Brand*. Plaintiff was asked to stop at least four times compared to the three times that the defendant in *Brand* was asked to stop. Continued interruption was also sufficient to constitute a violation of the statute in *Doyle*. *See* 2002-Ohio-4490, ¶¶ 6-8, 24-29.

*Burton v. City of Detroit* is most instructive. Like Plaintiff, Burton was a commissioner for a public body and was not the chairperson. 2022 U.S. App. LEXIS 35266 at *2. Similar to this case, Burton interrupted and "continued speaking out of order." *Id*. The chairperson announced that Burton was out of order three times. *Id*. at *3. When Burton did not stop, he was arrested for causing a disturbance at a meeting in violation of Mich. Comp. Laws § 750.170. *Id*. at *4. Like Plaintiff, Burton filed suit pursuant to §1983 alleging that he was arrested without probable cause. The Sixth Circuit found that Burton's arrest was supported by probable cause: "[W]hen he continued talking despite [the chairperson's] telling him he was out of order three separate times,

27

as well as after [an officer] informed Burton that Burton would be removed if he continued to speak out of turn..[his conduct] interrupted the peace and quiet of the meeting and violated public order and decorucm." *Id*. at *8. The Sixth Circuit dismissed Burton's First and Fourth Amendment claims. By analogy, when Plaintiff continued talking despite the presiding commissioner's multiple admonishments that she was out of order, she disrupted the meeting and a reasonable officer had probable cause to arrest her.

Lastly, there was an independent determination of probable cause. In this case, a Warren Municipal Court deputy clerk made a post-arrest finding of probable cause.[7] (See Probable Cause Determination attached hereto as Exhibit 5). A post-arrest probable cause determination performs the same function for those arrested without warrants as a pre-arrest probable cause determination does for suspects arrested with warrants. A law enforcement official ordinarily receives qualified immunity if there is a judicial determination of probable cause. *Voyticky v. Vill. Of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005). There is no allegation in this case that Sergeants Wix or Ross misrepresented any facts in their arrest report. The probable cause determination by a neutral and detached deputy clerk is further evidence that there was probable cause for Plaintiff's arrest. It is also further evidence that Sergeants Wix and Ross did not act unreasonably and, therefore, are entitled to qualified immunity.

      iii.       ***Even if There Were No Actual Probable Cause, Defendants are Still Entitled to Qualified Immunity Because a Reasonable Officer Could Believe that Probable Cause Existed.***

In *District of Columbia v. Wesby*, 583 U.S. 48, the Supreme Court held that, even if no actual probable cause to arrest is present, officers are entitled to qualified immunity if they

---

[7] Under both Ohio and federal law, a deputy clerk can make a probable cause determination. *Shadwick v. City of Tampa*  (1972), 407 U.S. 345, 347, 32 L. Ed. 2d 783, 92 S. Ct. 2119; *State v. Fairbanks* (1972), 32 Ohio St.2d 34, 39-40, 289 N.E.2d 352; See also Ohio. Crim. P. 4.

"reasonably but mistakenly conclude that probable cause is present." *Id*. at 591 citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Circuit and District courts refer to this concept as 'arguable' probable cause. *See, e.g., White v. Jackson*, 865 F.3d 1064, 2017 U.S. App. LEXIS 13926, 2017 WL 3254496, at *5 (8th Cir. 2017) (quoting *Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2011)) ('"[A]n officer is entitled to qualified immunity if there is at least arguable probable cause.' . . . There is arguable probable cause 'even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is 'objectively reasonable.'"); *Redd v. City of Enterprise*, 140 F.3d 1378, 1384  (11th Cir. 1998) ("[W]hen an officer has *arguable* probable cause to believe that a person is committing a particular public offense, he is entitled to qualified immunity from suit."); *accord Greene v. Barber*, 310 F.3d 889, 898 n.2 (6th Cir. 2002).

Based on the aforementioned cases decided by the Ohio Courts of Appeals and the Sixth Circuit, a reasonable officer could have concluded that there was probable cause to arrest Plaintiff. We do not expect law enforcement officers to keep abreast of every development in the case law or to recognize every implication of legal precedent for police conduct that courts have not previously considered. *See Saucier,* 533 U.S. at 205 ("It is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts."). The Defendants are entitled to qualified immunity.

Finally, the Defendants did not violate clearly established law. Under Supreme Court precedent, officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time." *Wesby*, 138 S. Ct. at 589. "Clearly established" means that, at the time of the officer's conduct, the law was "sufficiently clear" that every 'reasonable official would

29

understand that what he is doing'" is unlawful. *Id*. In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." *Id*.

The "clearly established" standard requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. *Id*. at 590. The Supreme Court has repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Id*. Further, the Supreme Court stresses that the "specificity" of the rule is "especially important in the Fourth Amendment context." *Id*. Thus, the Court has stressed the need to "identify a case where an officer acting under similar circumstances…was held to have violated the Fourth Amendment." *Id*. The undersigned are not aware of any Supreme Court or Sixth Circuit cases denying qualified immunity when a person who repeatedly interrupts a speaker is arrested for disturbing a public meeting.

### iv.     *Plaintiff Has No Fourth Amendment Claim Against the Remaining Defendants.*

Plaintiff lumps all Defendants in her Fourth Amendment claim despite the lack of any actionable involvement in her arrest. The only Defendants who arrested Plaintiff were Sergeant Wix and Sergeant Ross. None of the other Defendants had any personal involvement in Plaintiff's arrest or prosecution. (*See generally*, Ex. M, Frenchko Cell Phone Video). Thus, there is no viable Fourth Amendment claim against Sheriff Monroe, Commissioner Cantalamessa, Commissioner Fuda, the Trumbull County Board of Commissioners, the Trumbull County Sheriff Office, or Trumbull County, Ohio.

### D.     **Defendants are Entitled to Summary Judgment on Plaintiff's False Arrest and Malicious Prosecution Claims as There Was Probable Cause for Her Arrest.**

Plaintiff is unable to sustain a false arrest or malicious prosecution against any Defendant because there was probable cause for her arrest. Beyond probable cause, there is no evidence that

Sheriff Monroe, Commissioner Fuda, or Commissioner Cantalamessa were involved in any decision to arrest Plaintiff.

Like its federal counterparts, claims for false arrest and malicious prosecution under Ohio law require Plaintiff to prove a lack of probable cause. *See Henderson v. City of Euclid*, 2015-Ohio-15, at ¶ 55 (Ohio Ct. App. 2015); *Trussell v. General Motors Corp.*, 53 Ohio St. 3d 142, (Ohio 1990), syllabus; *Peroli v. Huber*, 2021 U.S. Dist. LEXIS 16889, *11 (N.D. Ohio Jan. 29, 2021). As argued above, there was probable cause for Plaintiff's arrest. Accordingly, her state law claims for false arrest and malicious prosecution fail as a matter of law. Stated differently, Defendants are entitled to statutory immunity because they did not act with malicious purpose, in bad faith or in a wanton or reckless manner. R.C. § 2744.03(A)(6)(b).

Moreover, Plaintiff cannot sustain any false arrest or malicious prosecution claims against Sheriff Monroe, Commissioner Fuda, or Commissioner Cantalamessa. None of these individuals personally arrested Plaintiff. Neither Commissioner Fuda nor Commissioner Cantalamessa have any authority to order an arrest nor did they attempt to order her to be arrested. There is also no evidence that Sheriff Monroe ordered Plaintiff's arrest nor played any role in the decision to arrest her. In all, there is no evidence to support Plaintiff's allegations that Sheriff Monroe, Commissioner Fuda, or Commissioner Cantalamessa were involved in her arrest, defeating any attempt to bring a false arrest or malicious arrest claim against them. Thus, summary judgment is appropriate here as a matter of law.

### E.     Defendants are Entitled to Summary Judgment as There Was No Conspiracy or Plan for Plaintiff's Arrest.

Plaintiff has not and cannot demonstrate any conspiracy for her arrest between Sheriff Monroe, Commissioner Cantalamessa, Commissioner Fuda, Sergeant Ross, or Sergeant Wix, or

any combination of these Defendants. Moreover, the intracorporate conspiracy doctrine bars Plaintiff's conspiracy claims.

To state a claim for conspiracy under §1983 and Ohio law, the plaintiff must show "(1) a single plan existed, (2) the defendants shared in the general conspiratorial objective to deprive plaintiff of her constitutional or federal statutory rights, and (3) the defendant committed an overt act in furtherance of the conspiracy that caused injury to the plaintiff." *Hinners v. O'Shea*, 2022 U.S. Dist. LEXIS 98018, *31-32. In assessing a conspiracy claim, courts have held that "asking police to arrest someone is not enough to constitute a conspiracy between the private and state actors." *Healy v. Planned Parenthood of Greater Ohio*, 2023 U.S. Dist. LEXIS 57851, *9 (citing *Dressler v. Rice*, 739 Fed. Appx. 814, 823, n.6 (6th Cir. 2018)).

The Sixth Circuit extended the intracorporate conspiracy doctrine to civil-rights conspiracies, meaning that employees or agents of the same entity cannot be held liable for a civil conspiracy. *See e.g., Hinners*, 2022 U.S. Dist. LEXIS 98018 at *72-73 (citing *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509 (6th Cir. 1991) (holding that a school's superintendent, executive director, and administrator could not conspire, because they were all "employees or agents of the [school] Board"); *Jackson v. City of Cleveland*, 925 F.3d 793, 817 (6th Cir. 2019)); and *see Novak v. City of Parma*, 2021 U.S. Dist. LEXIS 34396, *47 ("members of the same legal entity cannot conspire with one another if their acts were within the scope of their employment."). Here, Plaintiff cannot demonstrate any of the three necessary factors which are each independently necessary to support a conspiracy claim.

First, an underlying unlawful act is required before a party can prevail on a civil conspiracy claim. *Williams v. Aetna Fin. Co.*, 83 Ohio St. 3d 464, 475 (Ohio 1998). "An underlying tort is necessary to give rise to a cause of action for conspiracy." *Cook v. Kudlacz*, 2012 Ohio 2999, 974

N.E.2d 706, ¶ 90 (7th Dist.), quoting *Ohio Assn. of Pub. School Emps./AFSCME Local 4, AFL-CIO v. Madison Local School Dist. Bd. of Edn*., 190 Ohio App.3d 254, 2010 Ohio 4942, 941 N.E.2d 834, ¶ 62 (11th Dist.). As argued above, Plaintiff's federal and state false arrest, malicious prosecution, and retaliation claims fail. Therefore, there is no underlying tort upon which to base a conspiracy claim.

Second, Plaintiff cannot show a single plan existed for her arrest. There is no evidence Defendants were texting one another during the meeting, or that they otherwise planned for her arrest. (Wix Decl., ¶ 45; Ross Decl., ¶ 46). Plaintiff claims Commissioner Fuda yelled out "Wix" prior to her arrest, which Commissioner Fuda denies, but regardless, calling out an officer's name does not create a conspiracy claim. (Fuda Depo., Doc. 42-1, PageID#388).

Most significantly, all of the individual defendants are employees of the same entity: Trumbull County, Ohio. It matters not that they hail from different departments within the County's governing structure; they are still covered by the doctrine and therefore any claims that they conspired amongst themselves necessarily fails. *See e.g. Jackson v. City of Columbus*, 194 F.3d 737, 753 (6th Cir. 1999) ("[M]embers of the same legal entity cannot conspire with one another as long as their alleged acts were within the scope of their employment." *Dunlop v. City of New York*, No. 06 Civ. 0433, 2008 U.S. Dist. LEXIS 38250 (S.D.N.Y. May 6, 2008) (applying the intracorporate conspiracy doctrine to conspiracy claims involving the New York City Police Commissioner, two Deputy Police Chiefs, the Mayor, and the City of New York.).

In sum, Plaintiff is unable to demonstrate any viable conspiracy claim against Defendants. Throughout this litigation Plaintiff has offered various theories of a conspiracy against these Defendants which are unsupported and contradicted by evidence in the record. Accordingly, dismissal of Plaintiff's conspiracy claim is warranted.

F.     **Defendants are Entitled to Summary Judgment Because Plaintiff Lacks Any Basis for a Battery Claim.**

Plaintiff does not have a claim for battery against Sergeant Ross or Sergeant Wix with respect to Plaintiff's arrest on July 7, 2022, nor does Plaintiff have any claim for battery against Sheriff Monroe for the interaction on March 9, 20223.

Looking first to Plaintiff's battery claim against Sergeant Ross or Sergeant Wix, a claim for battery requires proof of an intentional, unconsented-to touching. *Schwaller v. Maguire*, 2003-Ohio-6917, P14. In the context of arrests by law enforcement, "[i]f an officer uses more force than is necessary to make an arrest and protect himself from injury, he is liable for assault and battery…" *D'Agastino v. City of Warren*, 75 Fed. Appx. 990, 995 (6th Cir. 2003) citing *City of Cincinnati v. Nelson,* No. C-74321, 1975 Ohio App. LEXIS 7443, * 5 (May 5, 1975) (citing 5 O Jur (2d) ARREST §§ 50) (unpublished); *see also Schweder v. Baratko,* 103 Ohio App. 399, 403, 143 N.E.2d 486 (1957) ("Force when used lawfully in making an arrest is in the exercise of a government function, and only in cases where excessive force is used, that is, force going clearly beyond that which is reasonably necessary to make the arrest, can such force be claimed an assault and battery by the person arrested."). The use of force against another for the purpose of effecting the arrest or recapture of the other, or of maintaining the actor's custody of him, is not privileged if the means employed are in excess to those which the actor reasonably believes to be necessary. *Brown v. Ohio State Highway Patrol*, Ohio Ct. Claims Case No. 2017-00721 JD, 2018-Ohio-4511, ¶ 7 citing *Restatement of the Law 2d, Torts 236, Section 132* (1965).

Ohio Courts also recognize that a police officer is justified at common law to use reasonable force in the course and scope of his law enforcement duties. *Id*. at ¶ 8. "Only in cases where excessive force is used, that is, force going clearly beyond that which is reasonably necessary to make an arrest, can such force be *claimed an assault and battery* by the person

34

arrested." *Id.* at ¶ 9 citing *Schweder*, 103 Ohio App. at 403; *Brown v. Dep't of Rehab. & Corr.*, 2014-Ohio-1810, ¶ 13 ("the use of excessive force by one privileged to use force on another may constitute battery."). Against this backdrop, we turn to Plaintiff's battery claim.

First, Plaintiff's arrest was supported by probable cause. But, even if it were not, that does not mean that Plaintiff has some sort of automatic battery claim. False arrest claims and excessive force claims are "distinct, [such that] establishing a lack of probable cause to make an arrest does not establish and excessive force claim, and vice-versa." *Gray v. Shelby Cnty.*, 2023 U.S. App. LEXIS 21581, *19 (6th Cir. Aug. 15, 2023). The Sixth Circuit holds that force is not per se excessive when used to make a false arrest. *Id.* at *20 (additional citations omitted).

There was almost no force used in Plaintiff's arrest. The only application of force was the use of handcuffs. To that end, Sgts. Wix and Ross's actions were entirely reasonable based on Sixth Circuit guidelines. The Sixth Circuit has articulated a three-part test for ascertaining whether "unduly tight or excessively forceful handcuffing" constitutes excessive force. *Morrison v. Bd. of Trustees of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009). At the summary-judgment stage, a plaintiff must create a genuine dispute of material fact that "(1) [she] complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing." *Id.* Conceptually, the handcuffing test is a subset of the general Fourth Amendment excessive-force framework. *See Martin v. Heideman*, 106 F.3d 1308, 1313 (6th Cir. 1997) (explaining that we "ha[ve] chosen to view an 'excessively forceful handcuffing' claim under the general excessive force rubric").

Plaintiff did allege that her handcuffs were too tight. From 49:15 to 49:30 on the video, Plaintiff stated that the handcuffs were too tight. (Frenchko Cell Phone Video, Ex. M, 49:15 to 49:30; Ross Decl., ¶ 42; Wix Declaration, ¶ 41). Sgts. Wix and Ross quickly responded to that

complaint. Less than one minute later, Sgt. Ross added a second set of handcuffs to relieve any shoulder discomfort. (Frenchko Cell Phone Video, Ex. M, 50:00 to 50:40; Wix Decl., ¶ 41; Ross Decl., ¶ 42). After double cuffing Plaintiff, Sgt. Ross asked her: "Is that better?" Plaintiff responded, "Yes." (*Id*.). Plaintiff had no further complaints regarding the handcuffs. (*Id*.). Surveillance video confirms that, after being double-cuffed, Plaintiff's arms were not behind her back, they were by her side. (See 5th Floor Elevator Video attached hereto as Exhibit P and manually filed with the Court).

In sum, Plaintiff made a complaint about her handcuffs. The deputies immediately responded to that complaint to the satisfaction of Plaintiff by using a second set of handcuffs to ease any tension on Plaintiff's shoulders. There were no further complaints. (Frenchko Depo., Doc. 50, PageID #1208). The actions of Sgts. Wix and Ross were reasonable under the Fourth Amendment and state law. They did not use excessive force and did not act with malicious purpose, in bad faith or in a wanton or reckless manner in their arrest of Plaintiff. R.C. § 2744.03(A)(6)(b). Therefore, they are entitled to summary judgment on Plaintiff's battery claim.

Similarly, Plaintiff lacks any viable battery claim against Sheriff Monroe with respect to his actions on March 9, 2023. A battery claim only exists where there is an intentional contact with another that is harmful or offensive. *Stafford v. Clever Investigations, Inc.*, 2007-Ohio-5086, P9 (citing *Love v. City of Port Clinton*, 37 Ohio St. 3d 98, 99). No such circumstances occurred here. Sheriff Monroe merely attempted to move Plaintiff's phone stand, which caused her phone to fall onto the table. Plaintiff claims he grabbed her phone and threw it on the table, which he denies, but even if accepted, such actions do not constitute a battery. (Pl. Depo., Doc. 50, PageID#1154). Sheriff Monroe never made contact with Plaintiff nor caused any physical injuries. (Id.). She merely asserts this event made her fearful, not that she feared physical harm. (Id.).

36

**G.**    **Defendants are Entitled to Summary Judgment Because Plaintiff Lacks Any Basis for an Assault Claim.**

Likewise, Plaintiff lacks any viable assault claim against Sheriff Monroe with respect to his actions on March 9, 2023. An assault is defined as "the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact." *Qualls v. Peregrine Health Servs.*, 2022-Ohio-4644, P31. A cause of action for assault requires the plaintiff to prove that "the defendant acted intending to cause a harmful or offensive contact and, in fact, a harmful contact resulted." *Id.* (citing *McRae v. Icon Entertainment Group, Inc.*, 10th Dist. No. 08AP-820, 2009-Ohio-5119, ¶ 8). Plaintiff is unable to meet this standard against Sheriff Monroe with respect to March 9, 2023.

As previously stated, Sheriff Monroe merely attempted to move Plaintiff's phone stand, which caused her phone to fall onto the table. This interaction does not constitute an actionable assault claim. Sheriff Monroe moved Plaintiff's phone which was on a phone stand. He did not come into contact with her, nor did he attempt to come into contact with Plaintiff. Plaintiff does not claim she feared Sheriff Monroe was going to come into contact with her in that moment, she instead claims that she was generally scared of him being in the room that day. (Pl. Depo., Doc. 50, PageID#1154, 1158-1159). She claims she thought he "had a gun," was reaching for his pockets, and believes he is a psychopath. (Id.). She did not see any firearm on Sheriff Monroe during that meeting, nor does Sheriff Monroe's pockets appear to have any gun within them. (Ex. T, March 9th Meeting Video; Pl. Depo., Doc. 50, PageID#1159). Without any attempt to harm Plaintiff nor any actions that would reasonably place Plaintiff in fear of physical contact to her person, Plaintiff's assault claim necessarily fails. *See Qualls*, 2022-Ohio-4644 at P31. In all, Sheriff Monroe did not intend or actually cause any harmful contact with Plaintiff. The entire

incident took place in approximately two seconds. Plaintiff does not allege any fear of an offensive touching within that moment, but rather a general fear of Sheriff Monroe.

### H.    Defendants are Entitled to Summary Judgment Because There is No Viable Claim for Destruction of Public Records.

Plaintiff has not demonstrated a viable public records request which any Defendant was obligated to honor, and she cannot demonstrate she was aggrieved by any alleged destruction of public records. Both of these elements are necessary to sustain a claim for destruction of public records.

As an initial matter, this Court does not have jurisdiction over Plaintiff's public records claim. Claims brought pursuant to R.C. 149.351(B) must be brought in the court of common pleas within the County where the alleged violation occurred. *See Patriot Water Treatment, LLC v. Ohio Dep't of Natural Res.*, 2013 Ohio App. LEXIS 5638, ¶34 (Ohio Ct. App., 2013). Plaintiff has not done so. (*See* Pl. Cmpl., Doc. 1, PageID#3-26). This alone warrants dismissal of her claim.

Lack of jurisdiction aside, a destruction of public records claim under R.C. 149.351(B) requires the plaintiff to show that (1) she requested the public records, (2) the public office was obligated to honor the request, (3) the office disposed of the public records in violation of Section 149.351(A), and (4) the plaintiff was actually aggrieved by the improper disposal. *Hinners*, 2022 U.S. Dist. LEXIS 98018 at *78 (citing *Rhodes v. City of New Philadelphia*, 129 Ohio St. 3d 304, 2011-Ohio-3279, 951 N.E.2d 782, ¶ 16.).

Plaintiff's Complaint does not describe whether she made a public records request, who she made this request to, and what records she requested. Through discovery, Defendants were provided a single email sent by Plaintiff to Paul Monroe at somonroe@co.trumbull.oh.us, and to the Trumbull County Commissioners at Commissioners@co.trumbull.oh.us on August 8, 2022 (Records Request, Doc. 47-6, PageID#1007). Her email requests "[u]nder the ohio sunshine law,

Please send me all call logs between commissioners, Gedeon, Taylor, Blair Klotz & Monroe or staff & text messages for the same, from June 25- today." (Id.). Plaintiff never followed up on this request after August 8, 2022. Plaintiff's request does not identify any subject matter or topic. (Id.). Instead, she broadly requests the logs and the content of text messages over communications from eight individuals and staff from a one-and-a-half-month period. (Id.). None of the Defendants were asked about this request during their depositions. (*See generally e.g.*, Cantalamessa Depo., Doc. 43-1, PageID#410-526; Fuda Depo., Doc. 42-1, PageID#293-406; Monroe Depo.44-1, PageID#530-665; Wix Depo., Doc. 45-1, PageID#669-781; and Ross Depo., 785-925). Nevertheless, Plaintiff's Complaint alleges Defendants violated R.C. 149.351(B)(1) and (2) by allegedly destroying text messages she contends were exchanged between Defendants. (Pl. Cmpl., Doc. 1, PageID#22).

Since Plaintiff has brought this destruction of public records claim against all Defendants herein, each Defendant is assessed individually. Starting first with Sergeants Ross and Wix, they did not receive either records request. Moreover, this request does not address any records they may have or control. It is unclear why either Sergeant Wix or Sergeant Ross are included in Plaintiff's destruction of public records claim. To the extent that Plaintiff believes her destruction of public records claim includes Sergeant Wix or Sergeant Ross's text messages, Plaintiff has not provided any evidence she made such a public records request for them, which is necessary to sustain a destruction of public records claim. *Hinners*, 2022 U.S. Dist. LEXIS 98018, at *78 (*Rhodes*, 129 Ohio St. 3d 304 at ¶ 16.).

As to the Trumbull County Commissioners, Commissioner Fuda, Commissioner Cantalamessa, and Sheriff Monroe, Plaintiff has not made a request for public records that was obligated to be fulfilled. Plaintiff's request for all text message logs and text messages from

numerous individuals over a one-and-a-half-month period was overly broad, ambiguous, and improper. Ohio Courts have consistently held that requests for all text messages or correspondence over a general period of time is overly broad and thus the requestor is not entitled to such disclosure. *See e.g., State ex rel. Davila v. City of E. Liverpool*, 2011-Ohio-1347, P26 (citing *State ex rel. Glasgow v. Jones* (2008), 119 Ohio St.3d 391); *State ex rel. Bristow v. Baxter*, 2018-Ohio-1973, ¶ 2, 12-16 (holding that requests for all email sent and received by multiple employees, for one-month periods each, was overly broad and improper.); *State ex rel. Glasgow*, 894 N.E.2d at ¶ 4-5, 16-19, (A broad request for categories of records (e-mail messages, text messages, written correspondence) sent and received by a public official during the five and one-half month period she had been in office was overly broad and improper.). Under this well-defined standard, Plaintiff's request for approximately a month and a half of call logs and text messages from various public officials and employees is similarly overly broad and improper.

Moreover, Plaintiff is unable to demonstrate she was aggrieved by any alleged destruction of public records. Pursuant to R.C. 149.351(C)(1), a person is not aggrieved by the destruction of public records if clear and convincing evidence shows that the request for a record was contrived as a pretext to create potential liability under this section. It is unclear why Plaintiff waited until this present litigation to first follow up on her broad request. Plaintiff also, as a commissioner who received this request, did not fulfill this public records request. It also does not appear Plaintiff addressed her public records request with the Clerk, who Plaintiff herself asserts is responsible for fulfilling public records requests for the Commissioners.

Plaintiff also received call and text logs for Commissioner Cantalamessa, Commissioner Fuda, Sheriff Monroe, Sergeant Wix, and Sergeant Ross through the process of this litigation. (*See* e.g., Pl. Ntc. of Production, Doc. 29, PageID#200; Pl. Ntc. of Production, Doc. 30-1, PageID#204).

Accordingly, she cannot claim she is aggrieved by not receiving these logs through a public records request, since she did receive this information through discovery. Receiving these requested logs further demonstrates Plaintiff was not aggrieved by any alleged destruction of public records.

During her time as a commissioner, Plaintiff has filed numerous public records requests. (Ex. G, Meeting Minutes). So many public records requests that staff were having difficulties with their jobs. (Id.). Before assuming her position as a commissioner, Plaintiff believed there were issues with Trumbull County's public records retention policies and procedures. (Pl. Depo. Doc. 50, PageID#1169). Instead of proactively alleviating those perceived issues, Plaintiff lodged countless overly broad, overbearing, and unspecific requests for records. (Ex. G, Meeting Minutes). Plaintiff's decision to lodge an overly broad request to her fellow commissioners and staff, not follow up on her request for over a year, and instead pursue federal litigation demonstrates that she has not been aggrieved by any failure to fulfill her request.

Notably, Plaintiff herself as a commissioner failed to respond to this request as well as other public requests made to her. (Ex. G, Meeting Minutes). Plaintiff has also never turned over her phone or provided phone records, despite receiving similar public records requests for records within her cellphone. (Ex. G, Meeting Minutes; and *see* Pl. Depo., Doc. 50, PageID#1172-1175). She was alerted by the public and the Clerk that her phone records were needed, and nevertheless she did not comply.

In all, this record shows there is no viable destruction of public records claim against any Defendant. Moreover, the record demonstrates Plaintiff is attempting to use her position as a commissioner to exploit the county for perceived public records violations without doing anything internally to fix the problem nor fulfil similar public records requests for her phone records when requested by the public. Accordingly, summary judgment in favor of Defendants is warranted.

41

I.      **Defendants are Entitled to Summary Judgment as There is No Viable Claim for Civil Liability for Criminal Acts as There is No Evidence of Destruction of Records in Plaintiff's Criminal Matter.**

This record is devoid of any factually or legally viable claim for civil liability for criminal acts as there has been no violation of R.C. 2921.12(A)(1).

First, Defendants are immune from all claims[8] based on R.C. 2307.60 because it does not specifically impose liability on either political subdivisions or their employees. R.C. §§ 2744.02(B)(5); R.C. 2744.03(A)(6)(c); *Sollenberger v. Sollenberger*, 173 F.Supp.3d 608, 632-33 (S.D. Ohio 2016) ("Although "Person" is defined in Chapter 2307, neither "Employee" nor "Employee of a Political Subdivision" is included in this definition. Therefore, Chapter 2307's use of the word "Person" is too general to expressly impose liability, and the exception is inapplicable."); see also *Green v. Taylor*, Case No. 1:03-cv-1804, 2006 U.S. Dist. LEXIS 103827, *69 (N.D. Ohio Apr. 11, 2006). The same is true of R.C. § 2921.45. *Palmer v. Foley*, 2nd Dist. No. 21235, 2006-Ohio-4013, ¶ 16 (holding that R.C. § 2921.45 does not remove immunity pursuant to R.C. § 2744.03(A)(6)(c)); *Stanford v. Northmont City Sch. Dist.,* Case No. 3:19-cv-399, 2022 U.S. Dist. LEXIS 176968, at *7 (S.D. Ohio Sept. 28, 2022) (same).

Second, a claim for civil liability for criminal acts requires proof of criminal conduct. *See Hinners*, 2022 U.S. Dist. LEXIS 98018 at *36. Plaintiff cites to R.C. 2921.12(A)(1) which states that it is a criminal offense for any person to "knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following: (1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation; [or] (2) Make, present, or use any record, document, or thing, knowing it to be false and with purpose to mislead a public official

---

[8] This argument applies to Counts XI and XII of Plaintiff's Complaint, Doc. 1, PageID#23-24.

who is or may be engaged in such proceeding or investigation, or with purpose to corrupt the outcome of any such proceeding or investigation." *See* R.C. 2921.12(A). However, no such circumstances occurred here. More specifically, there is no evidence that Defendants knowingly and in the process of an official proceeding or investigation, "[a]lter[ed], destroy[ed], conceal[ed], or remove[d] any record, document, or thing, *with purpose to impair its value or availability as evidence in such proceeding or investigation*" nor that any documents were fabricated, as required under R.C. 2921.12.

Plaintiff was charged with violating R.C. 2917.12 on July 7, 2022. Plaintiff requested an Order to Preserve Evidence in her criminal matter, which was granted on August 5, 2022. After the Order to Preserve was issued, Chief Deputy Jeffery Palmer with the Trumbull County Sheriff's Office communicated with the special prosecutor to assess what documents needed to be preserved under this Order. Chief Deputy Palmer also disrupted a memo regarding the Preservation Order. The special prosecutor followed up with Plaintiff's counsel on August 8, 2022, and Plaintiff's counsel responded on August 24, 2022 attempting to clarify the documents they wanted preserved. Commissioners Cantalamessa and Fuda do not recall receiving this Order to Preserve. Regardless, the Order to Preserve expired when Plaintiff's criminal matter was dismissed on August 29, 2022. Accordingly, the special prosecutor did not subsequently follow up to preserve the documents after the criminal matter was dismissed.

After the criminal matter was dismissed, the Order to Preserve was no longer in effect. Some of the requested documents mentioned in the expired Order to Preserve were preserved, and some were not. For instance, some of the surveillance video within the commissioners building and sheriff's office was preserved, including surveillance footage of the meeting, Plaintiff's walk from the commissioners building to the sheriff's office, and Plaintiff's booking and holding

periods. The text and call logs were preserved by Defendants' phone providers. However, the content of text messages from Sheriff Monroe, the Sergeants, and the Commissioners were not fully preserved. The communications regarding the Order to Preserve demonstrate there was some confusion over whether the text messages were included in the Order. The special prosecutor only received communication back from Plaintiff's counsel further requesting these text messages on August 24, 2022 and the matter was dismissed days later on August 29, 2022, so the text messages were not preserved by the special prosecutor. That being said, some of Commissioner Cantalamessa's text messages from before, during, and after Plaintiff's July 7, 2022 arrest were preserved through phone imaging completed by a company, Profile Imaging, in an unrelated case.

The next communication from Plaintiff regarding these text messages did not occur until over eight months later, on March 9, 2023. Plaintiff's counsel broadly requested "any and all records" that related in any way to Plaintiff's arrest. However, by that time Sheriff Monroe, Sergeant Ross, and Sergeant Wix no longer had their text messages from July 7, 2022. Commissioner Fuda did not have any texts which related to this request, and Commissioner Cantalamessa's texts from July 7, 2022 were preserved by Profile. The plain reading of the March 9, 2023 letter does not clearly request all text messages from these Defendants in connection with July 7, 2022, nor does it request text messages from before or after July 7, 2022. Moreover, by the time Plaintiff's counsel sent the March 9, 2023 letter, there was no ongoing criminal investigation or prosecution against Plaintiff. Without any ongoing investigation or prosecution, there can be no claim for an alleged destruction of evidence relating to a criminal matter.

In all, this record demonstrates that no evidence was destroyed prior to or during Plaintiff's criminal proceedings. Plaintiff further is unable to demonstrate that any alleged destruction was

44

done for the purpose of impairing its value or availability. At best, the record reflects text messages were deleted after Plaintiff's criminal prosecution, not for the purpose of impeding or impairing any criminal prosecution, and that Plaintiff's later communications in March 9, 2023 were months to late to properly notify Defendants to preserve their text messages from July 7, 2022.  Plaintiff's Complaint and communications regarding the Order to Preserve reflect much of the information Plaintiff sought was automatically deleted through standard practices and not to impair any availability of records.  Accordingly, Plaintiff has no basis to pursue a claim for civil liability for criminal acts, as there has been no criminal destruction of records from Plaintiff's criminal case pursuant to R.C. 2921.12. Thus, summary judgment in favor of Defendants is appropriate.

**J.**     **Defendants are Entitled to Summary Judgment as There is No Viable Claim for Civil Liability for Criminal Acts as Plaintiff's Civil Rights Were Not Interfered With.**

Plaintiff's Complaint broadly alleges a claim for civil liability for criminal acts against Defendants in this matter. A claim for civil liability for criminal acts requires proof of criminal conduct. *See Hinners v. O'Shea*, 2022 U.S. Dist. LEXIS 98018, *36. Here, Plaintiff asserts Defendants violated R.C. 2921.45 by allegedly "establish[ing] a pattern and practice of interfering with Frenchko's civil rights to not suffer wrongful arrest, seizure of her person, seizure of her property, and her freedom to speak with retaliation." Under R.C. 2921.45, "[n]o public servant, under color of the public servant's office, employment, or authority, shall knowingly deprive, or conspire or attempt to deprive any person of a constitutional or statutory right." Under Ohio law, a person acts knowingly when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. R.C. 2901.22(B). Here, Plaintiff's rights were not deprived, nor is there any evidence of a knowing deprivation of her rights.

Plaintiff's Complaint merely relies on conclusory allegations that her civil rights were violated. Plaintiff does not outline how the Defendants each supposedly engaged in conduct in

violation each of the Ohio statutes referenced within her Complaint. *See e.g., Foster v. Health Recovery Servs.*, 493 F. Supp.3d 622, 642 (S.D. Ohio 2020) (finding the plaintiff "failed to state §2307.60 claim"). Plaintiff makes no attempt at establishing the requisite mens rea for any crime allegedly committed by any Defendant beyond her conclusory allegations of harm, *Ruble v. Escola*, 898 F. Supp. 2d 956, 981 (N.D. Ohio 2012) ("presumption" of immunity). Additionally, R.C. 2744 creates a presumption that Defendants are immune from liability, in both their individual and official capacities. *See Id.*; *see also Burgess v. Fischer*, 735 F.3d 462, 479 (6th Cir. 2013); R.C. 2744.03(A)(6). Because there is no genuine dispute as to any material fact and Defendants are entitled to judgment as a matter of law, summary judgment should be entered.

### K.    Defendants are Entitled to Summary Judgment as Plaintiff Lacks Any Fourth Amendment Seizure of Property Claim on This Record.

Plaintiff is unable to succeed on her Fourth Amendment seizure of property claim against Defendants Sheriff Monroe, Trumbull County, Ohio, Trumbull County Sheriff's Office, or the Trumbull County Commissioners as a matter of law. An unlawful seizure of property under the Fourth Amendment only occurs when there is a meaningful interference with an individual's possessory interests in that property. *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 906 (6th Cir. 2019).

Here, there was no meaningful interference with Plaintiff's phone. Sheriff Monroe moved Plaintiff's phone stand away from himself. This caused the phone to fall from the phone stand to the table. Plaintiff's ability to live stream video did not stop nor does she allege her phone was in any way damaged by Sheriff Monroe's actions. (*See* Ex. T, March 9 Meeting Video; and Pl. Depo. Doc. 50, PageID#1155).

Moreover, it's entirely unclear why Trumbull County, Ohio, Trumbull County Sheriff's Office, or the Trumbull County Commissioners are included in this claim. The Sheriff's Office

did not cause Plaintiff's phone to fall from its stand. There is no allegation let alone evidence of the Trumbull County Commissioners having any involvement in Plaintiff's phone falling from its stand. There is similarly no basis nor allegations connecting Trumbull County, Ohio to Plaintiff's Fourth Amendment Seizure of Property claim. Accordingly, Plaintiff has not stated a viable Fourth Amendment claim for an alleged seizure of her property, warranting judgment on the pleadings for the Trumbull County Defendants.

L.       **Defendants are Entitled to Summary Judgment as Plaintiff is Unable to Demonstrate a Viable Claim for Trespass to Chattel or Conversion Against Sheriff Monroe.**

Plaintiff's property-related claims for trespass to chattel and conversion against Sheriff Monroe arising out of March 9, 2023 incident all fail to state any viable cause of action as a matter of law. Plaintiff cannot sustain a claim for conversion, because she does not allege Sheriff Monroe converted Plaintiff's property nor does she allege her phone was damaged *See e.g., Besancon v. Cedar Lane Farms, Corp.*, 2017-Ohio-347, ¶ 25 (Ct. App.). A claim for conversion necessarily requires "an exercise of dominion or control wrongfully exerted over property in denial of or under a claim inconsistent with the rights of another. *Dice v. White Family Cos.*, 173 Ohio App. 3d 472, 477 (citing *Joyce v. Gen. Motors Corp.* (1990), 49 Ohio St.3d 93, 96). To survive summary judgment, the plaintiff must prove "(1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *Id.* Where the conversion claim involves the retention of property, the plaintiff must prove "(1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property, and (2) that the possessor refused to deliver the property to its rightful owner." *Id.*

Here, Plaintiff cannot meet any of these standards. Plaintiff's video of March 9, 2023 demonstrates Sheriff Monroe moved her phone stand which resulted in her phone falling on the

table. (Ex. T, March 9th Meeting Video). Sheriff Monroe did not grab and throw Plaintiff's phone, but even if he did, Sheriff Monroe did not convert the use of Plaintiff's phone, he did not damage her phone in any way, and Plaintiff was able to record using her phone before, during, and since the interaction. (Pl. Depo., Doc. 50, PageID#1154-1158). Plaintiff did not need to demand the return of her phone, because Sheriff Monroe never exercised control over her phone. (*See* Id.). In sum, the undisputed video of the interaction and Plaintiff's deposition testimony shows there is no conversion claim on this record.

Similarly, Plaintiff does not have a claim for trespass to chattel as her allegations do not meet the relevant legal standards. A trespass to chattel claim only arises where one intentionally dispossesses another of their personal property. *Mercer v. Halmbacher*, 2015-Ohio-4167, ¶ 20, 44 N.E.3d 1011, 1017 (Ct. App.). Ohio courts typically hold a trespass to chattels occurs if a person "(a) dispossesses the other of the chattel, or (b) the chattel is impaired as to its condition, quality, or value, or (c) the possessor is deprived of the use of the chattel for a substantial time, or (d) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor has a legally protected interest." *Id.* A "dispossession may be committed by intentionally: (a) taking a chattel from the possession of another without the other's consent, or (b) obtaining possession of a chattel from another by fraud or duress, or (c) barring the possessor's access to a chattel, or (d) destroying a chattel while it is in another's possession, or (e) taking the chattel into the custody of the law." *Id.* No such circumstances exist here.

Rather, the record before us is far from demonstrating a trespass to chattel claim. Plaintiff's own testimony reveals that any action by Sheriff Monroe did not result in any impairment, dispossession, deprivation, or bodily harm. (Pl. Depo., Doc. 50, PageID#1120, 1154-1158). At most, her phone fell from its stand and there may have been a momentary lapse in her recording,

but her live stream did not stop and she was able to pick her phone up from the table and turn the camera to face herself. (Id.). Plaintiff still uses the same phone to live stream the weekly meetings and there have been no changes in her ability to use her phone. (Id.).

In all, the record demonstrates Plaintiff's phone fell from her phone stand to the table. Throughout this time, she was able to live stream video to her Facebook account. The functions of her phone were not changed or impaired. She did not suffer any damage to her person or property. Accordingly, summary judgment on Plaintiff's trespass to chattel and conversion claims should be granted to Sheriff Monroe.

### M. Immunity Bars Plaintiff's Claims for Relief Against the Political Subdivision Defendants, Warranting Summary Judgment.

Trumbull County, Ohio, the Trumbull County Sheriff Office, and the Trumbull County Board of Commissioners are entitled to summary judgment. With respect to Plaintiff's federal claims, there were no underlying constitutional violations, and even if there were, there is no evidence that any policies, practices, or customs were the moving force behind any alleged constitutional violation. *Robinson v. Lucas*, 753 F.3d 606, 622 (6th Cir., 2014); and *see Monell v.Dept. of Soc. Servs.*, 436 U.S. 758, 690-91(1978). With respect to Plaintiff's state law claims, aside from the public records claim, these Defendants are entitled to statutory immunity pursuant to R.C. 2744.02. Trumbull County, Ohio is a political subdivision entitled to a general grant of immunity. R.C. 2744.02(A)(1). Accordingly, Trumbull County, Ohio can only be liable if an exception to immunity in R.C. 2744.02(B)(1)-(5) applies. None do. Thus, these claims fail as a matter of law.

### N. Punitive Damages Are Not Warranted or Available.

As a final matter, Plaintiff's Complaint includes an inappropriate demand for punitive damages. As discussed above, there are no violations which would warrant punitive damages.

*Smiley v. Cuyahoga Metro. Hous. Auth.*, 2008 U.S. Dist. LEXIS 108007, *17. Moreover, political subdivisions are immune from punitive damages. *See* R.C. 2744.05.

### III.    CONCLUSION

In all, the record in this matter demonstrates there was probable cause to arrest Plaintiff on July 7, 2022. Moreover, Defendants are entitled to qualified immunity. There is no evidence of any conspiracy to arrest Plaintiff. There is no basis for Plaintiff's destruction of public records or destruction of evidence claims. Plaintiff also does not have any viable property or seizure related claims arising from the March 9, 2023 meeting. Accordingly, as there are no materials facts in dispute which would entitle Plaintiff to relief, Defendants respectfully seek summary judgment in their favor.

Respectfully Submitted,

s/ Daniel T. Downey
Daniel T. Downey (0063753)
Helen K. Sudhoff (0101259)
Jennifer M. Meyer (0077853)
FISHEL DOWNEY ALBRECHT & RIEPENHOFF LLP
7775 Walton Parkway, Suite 200
New Albany, OH  43054
(614) 221-1216 – Telephone
(614) 221-8769 – Facsimile
ddowney@fisheldowney.com
hsudhoff@fisheldowney.com
jmeyer@fisheldowney.com
*Counsel for Defendants Sheriff Paul Monroe,*
*Trumbull County, Trumbull County Board of*
*Commissioners, Trumbull County Sheriff's Office,*
*Mauro Cantalamessa, and Frank Fuda*

/s/ Andrew N. Yosowitz (per consent 10-24-23)
Andrew N. Yosowitz (0075306)
Matthew S. Teetor (0087009)
Teetor Westfall, LLC
200 E. Campus View Blvd. Suite 200

Columbus, OH  43235
(614) 412-4000 – Telephone
(614) 412-9012 – Facsimile
ayosowitz@teetorlaw.com
mteetor@teetorlaw.com
*Counsel for Defendants Harold Wix*
*and Robert Ross*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing **DEFENDANTS JOINT MOTION FOR SUMMARY JUDGEMENT** was served, via the Court's CM/ECF system, upon all counsel this 24th day of October, 2023.

s/ Daniel T. Downey
Daniel T. Downey (0063753)
**FISHEL DOWNEY ALBRECHT & RIEPENHOFF LLP**
*Counsel for Defendants Sheriff Paul Monroe,
Trumbull County, Trumbull County Board of
Commissioners, Trumbull County Sheriff's Office,
Mauro Cantalamessa, and Frank Fuda*