**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

NIKI FRENCHKO,                          :

                 Plaintiff,          :          Case No. 4:23-cv-00781

*vs.*                                   :          Judge J. Philip Calabrese

PAUL MONROE, *et al.*,                  :

                 Defendants.        :

<u>**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S PARTIAL MOTION
FOR SUMMARY JUDGMENT AND MOTION FOR SANCTIONS (DOC. 47)**</u>

        Defendants submit this Response to Plaintiff Niki Frenchko's Partial Motion for Summary Judgment.

                 Respectfully Submitted,

                 s/ Daniel T. Downey
                 Daniel T. Downey (0063753)
                 Helen K. Sudhoff (0101259)
                 Jennifer M. Meyer (0077853)
                 **FISHEL DOWNEY ALBRECHT & RIEPENHOFF LLP**
                 7775 Walton Parkway, Suite 200
                 New Albany, OH  43054
                 (614) 221-1216 – Telephone
                 (614) 221-8769 – Facsimile
                 ddowney@fisheldowney.com
                 hsudhoff@fisheldowney.com
                 jmeyer@fisheldowney.com
                 *Counsel for Defendants Sheriff Paul Monroe,*
                 *Trumbull County, Trumbull County Board of*
                 *Commissioners, Trumbull County Sheriff's Office,*
                 *Mauro Cantalamessa, and Frank Fuda*


                 /s/ Andrew N. Yosowitz
                 Andrew N. Yosowitz (0075306)
                 Matthew S. Teetor (0087009)
                 Teetor Westfall, LLC
                 200 E. Campus View Blvd. Suite 200

Columbus, OH  43235
(614) 412-4000 – Telephone
(614) 412-9012 – Facsimile
ayosowitz@teetorlaw.com
mteetor@teetorlaw.com
*Counsel for Defendants Harold Wix and Robert Ross*

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................... iv

MEMORANDUM CONTRA ................................................................................................... 1

I.      RELEVANT PROCEDURAL POSTURE ...................................................................... 1

        A.      CLAIMS AT ISSUE IN PLAINTIFF'S MOTION FOR SUMMARY
                JUDGMENT .......................................................................................................... 1

        B.      INCORPORATION OF FACTS AND ARGUMENTS FROM
                DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. 51) ............. 1

II.     PLAINTIFF'S MISSTATEMENT OF FACTS AND NON-MATERIAL FACTS .......... 2

        A.      "DEFENDANTS" ARE NOT A COLLECTIVE ENTITY AND CANNOT BE
                CONSTRUED AS A COLLECTIVE ENTITY UNDER THE LAW ................... 2

        B.      CONDUCT AND EVENTS AT COMMISSIONERS' MEETINGS PRIOR
                TO JULY 7, 2022 ARE NOT MATERIAL FACTS IN THIS CASE ................... 3

        C.      ROBERT'S RULES OF ORDER ARE NOT MATERIAL TO THIS CASE ....... 5

        D.      SHERIFF MONROE HAD NO PERSONAL INVOLVEMENT IN THE
                DECISION TO ARREST OR CHARGE PLAINTIFF ......................................... 6

        E.      NEITHER COMMISSIONER ORDERED PLAINTIFF'S ARREST ................... 8

        F.      PLAINTIFF MISINTERPRETS WHAT PURPOSEFUL CONDUCT IS
                UNDER THE OHIO REVISED CODE ............................................................... 8

        G.      SGTS. WIX AND ROSS DID NOT ARREST FRENCHKO BECAUSE OF
                HER VIEWPOINTS .............................................................................................. 9

        H.      DEFENDANTS' TEXT MESSAGES ................................................................ 11

                1.      Sgts. Ross and Wix had no Text Communications with any of the Other
                        Defendants for the 2-Month Time Period Requested by Plaintiff ............ 11

                2.      Sgts. Wix and Ross Were Not Notified to Save Their Texts .................... 12

                3.      Sheriff Monroe Was Not Notified to Save All His Texts for a Two
                        Month Period. ......................................................................................... 12

                4.      Mauro Cantalamessa Provided the Content of His Text Messages
                        Which Do Not Reveal Any Conspiracy Between Defendants .................. 14

                5.      Frank Fuda's Text Messages are Not at Issue. ......................................... 14

6.     Defendants Text Message Logs Do Not Reveal Any Widespread Communication Between Defendants........................................................ 14

III.     LAW AND ARGUMENT ....................................................................... 15

A.     PLAINTIFF'S FACIAL CHALLENGE FAILS AS A MATTER OF LAW....... 15

1.     Plaintiff's Facial Challenge to R.C. 2917.12(A)(2) is a Straw Man Argument ............................................................................. 15

2.     R.C. § 2917.12(A)(1) is Constitutional..................................... 16

3.     Defendants Are Entitled to Qualified Immunity on Plaintiff's Facial Challenge Claim.......................................................... 18

B.     DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM...................... 21

1.     Sheriff Monroe, Commissioner Fuda and Commissioner Cantalamessa Took no Adverse Action against Plaintiff ................................. 21

2.     There Is No Evidence That Sgts. Wix or Ross Retaliated Against Frenchko .............................................................................. 22

C.     PLAINTIFF'S FOURTH AMENDMENT CLAIM FAILS AS A MATTER OF LAW ....................................................................................... 24

1.     Subjective Motivations are Irrelevant to the Probable Cause Analysis.... 24

2.     Probable Cause Disposes of Plaintiff's Fourth Amendment Claim.......... 25

3.     Even if There Were No Actual Probable Cause, Defendants are Still Entitled to Qualified Immunity Because a Reasonable Officer Could Believe that Probable Cause Existed. ....................................... 28

4.     Plaintiff Has No Fourth Amendment Claim Against the Remaining Defendants. ........................................................................... 30

D.     PLAINTIFF'S RECORDS CLAIM UNDER R.C. § 149.351 FAILS AS A MATTER OF LAW....................................................................... 31

1.     Plaintiff Only Made Two Public Records Requests Relevant to This Matter. ................................................................................. 31

2.     Plaintiff's Other Announcements and Communications Are Not Public Records Requests. ................................................................. 34

E.     PLAINTIFF IS NOT ENTITLED TO SPOLIATION SANCTIONS ................. 37

     1.     Plaintiff is not Prejudiced by the Lost Text Messages ............................. 37

     2.     There Is No Evidence That Defendants Acted With The Intent To Deprive Plaintiff Of The Information's Use In The Litigation ................ 40

     3.     Even if the Court Finds that Plaintiff was Prejudiced, any Sanction Should be Proportional to the Actual Prejudice ........................................ 44

IV.     CONCLUSION ...................................................................................................... 45

CERTIFICATE OF SERVICE ..................................................................................... 46

## **TABLE OF AUTHORITIES**

**Cases**

*Adkins v. Wolever*, 554 F.3d 650, 652-53 (6th Cir. 2009) ............................................................ 37

*Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999) .................................................................. 10

*Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987) .............. 28

*Applebaum v. Target Corp.*, 831 F.3d 740, 745 (6th Cir. 2016)..................................................... 41

*Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S. Ct. 2074, 179 L. Ed. 2d 149 (2011) .................. 18

*Atwater v. Lago Vista*, 532 U.S. 318, 354, 121 S. Ct. 1536, 149 L. Ed. 2d 549 (2001).............. 24

*Barrera v. City of Mount Pleasant*, 12 F. 4th 617, 624 (6th Cir. 2021) ........................................ 25

*Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2011) ........................................................ 29

*Burton v. City of Detroit*, No. 22-1222, 2022 U.S. App. LEXIS 32566
  (6th Cir. Nov. 23, 2022).................................................................................................. 6, 27, 30

*Carroll v. Carman*, 574 U.S. 13, 17, 135 S. Ct. 348, 190 L. Ed. 2d 311 (2014) (per curiam)..... 18

*Citizens in Charge, Inc. v. Husted*, 810 F.3d 437 (6th Cir. 2016) .......................................... 19, 20

*City of Columbus v. Doyle*, 149 Ohio App.3d 164, 2002-Ohio-4490,
  776 N.E.2d 537 ...................................................................................................... 9, 16, 25, 27

*Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 104 (2d Cir. 2003)................................ 20

*Culhane v. Wal-Mart Supercenter*, 364 F. Supp. 3d 768, 773 (E.D. Mich. 2019) ...................... 40

*Devenpeck v. Alford*, 543 U.S. 146 (2004) ................................................................................ 25

*District of Columbia v. Wesby*, 583 U.S. 48 ........................................................................ 25, 28

*Fox v. DeSoto*, 489 F.3d 227 at 236 (6th Cir. 2007)................................................................... 19

*Franklin v. Shelby Cnty. Bd. of Educ.*, No. 2:20-cv-02812-JPM-tmp, 2021 U.S. Dist. LEXIS
  224827, 2021 WL 5449005, at *29 (W.D. Tenn. 2021)............................................................ 41

*Fridley v. Horrighs*, 291 F.3d 867, 873 (6th Cir. 2002) ............................................................. 11

*Greene v. Barber*, 310 F.3d 889, 898 n.2 (6th Cir. 2002).......................................................... 29

*Hanna v. Drobnick*, 514 F.2d 393, 397 (6th Cir. 1975).............................................................. 20

*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) .................. 18

*Haywood v. Hugh*, 811 F. Appx 952, 960 (6th Cir. 2020)................................................................ 8

*Hinners v. O'Shea*, 2022 U.S. Dist. LEXIS 98018 (N.D. Ohio May 31, 2022)............... 16, 21, 33

*Howse v. Hodous*, 953 F.3d 402, 409 (6th Cir. 2020) .................................................... 24

*Illinois v. Gates*, 462 U.S. 213, 232, 103 S. Ct. 2317, 76 L. Ed. 527 (1983) .............................. 24

*Jones v. City of Elyria, Ohio,* 947 F.3d 905, 913 (6th Cir. 2020)...................................................... 3

*Kaley v. United States*, 571 U.S. 320, 338 (2014) ........................................................................ 24

*Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419, 1995 Ohio 61,
650 N.E.2d 863 (Ohio 1995).................................................................................................. 39

*Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2474, 192 L. Ed. 2d 416 (2015)............................... 19

*Learly v. Daeschner*, 228 F.3d 729, 737 (6th Cir. 2000)........................................................ 10, 21

*Maryland v. Pringle*, 540 U.S. 366, 371, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003) .................. 24

*McDaniel v. Transcender, LLC*, 119 F. App'x 774, 782 (6th Cir. 2005) .................................... 37

*Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979) ............... 4, 19

*Mitchell v. Forsyth*, 472 U.S. 511, at 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985) ................ 18

*Moody v. CSX Transportation, Inc.*, 271 F. Supp. 3d 410, 431 (W.D.N.Y. 2017)...................... 40

*Nieves v. Bartlett*, 139 S. Ct. 1715, 1727, 204 L. Ed. 2d 1 (2018) ............................ 10, 22, 23, 38

*Pearson v. Callahan, 555* U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).................... 18

*Pierson v. Ray*, 386 U.S. 547 (1967) ........................................................................................... 19

*Plumhoff v. Rickard*, 572 U.S. 765, 780 (2014)........................................................................... 20

*Redd v. City of Enterprise*, 140 F.3d 1378, 1384  (11th Cir. 1998)............................................. 29

*Rhodes v. New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782.......... 31, 33

*Risbridger v. Connelly*, 275 F.3d 565, 573-74 (6th Cir. 2002).................................................... 20

*Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)........................... 18, 29

*Shadwick v. City of Tampa*  (1972), 407 U.S. 345, 347, 32 L. Ed. 2d 783, 92 S. Ct. 2119.......... 28

*State ex rel. Bristow v. Baxter*, 2018-Ohio-1973, ¶ 2, 12-16...................................................... 33

*State ex rel. Davila v. City of E. Liverpool*, 2011-Ohio-1347, P26 ............................................... 33

*State ex rel. Glasgow*, 894 N.E.2d at ¶ 4-5, 16-19 .................................................................. 33

*State v. Brand*, 2 Ohio App.3d 460, 442 N.E.2d 805 (Ohio Ct. App. 1981) .............. 16, 18, 25, 26

*State v. Ervin*, 40 S.W.3d 508, 2000 Tenn. Crim. App. LEXIS 267 (Tenn. Ct. Crim. App. 2000) ................................................................................................................................. 17

*State v. Fairbanks* (1972), 32 Ohio St.2d 34, 39-40, 289 N.E.2d 352 ........................................ 28

*State v. Getsy*, 84 Ohio St.3d 180, 203, 1998 Ohio 533, 702 N.E.2d 866 (Ohio 1998) .............. 11

*State v. Hensel*, 901 N.W.2d 166 (Minn. 2017) ........................................................................ 20

*State v. Jackson*, 2012-Ohio-4219, 2012 WL 4056778, ¶ 34 (Ohio Ct. App. 2012) .................... 26

*State v. Markovich*, 77 S.W.3d 274, 2002 Tex. Crim. App. LEXIS 113 (Tx. Ct. Crim. App. 2002) ................................................................................................................................. 17

*State v. Patterson*, 196 Wn. App. 451, 389 P.3d 612 (Wash. Ct. App. 2016) ............................ 16

*Swanson v. Powers*, 937 F.2d 965, 968-69 (4th Cir. 1991) ........................................................ 20

*Thomas v. Shipka*, 818 F.2d 496 (6th Cir. 1987) ....................................................................... 20

*Voyticky v. Vill. Of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005) ............................................ 28

*Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) ........................................................... 7

*Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991) ......................................................... 19

*White v. Jackson*, 865 F.3d 1064, 2017 U.S. App. LEXIS 13926, 2017 WL 3254496 (8th Cir. 2017) ..................................................................................................................... 28

*White v. Pauly*, 137 S.Ct. 548, 550, 196 L. Ed. 2d 463 (2017) .................................................. 19

*Whren v. United States*, 517 U.S. 806, 810-13 (1996) ................................................................ 25

*Wolfel v. Morris*, 972 F.2d 712, 719-20 (6th Cir. 1992) ............................................................ 20

*Wood v. Eubanks*, 25 F. 4th 414 (6th Cir. 2022) ....................................................................... 30

*Yoe v. Crescent Sock Co.*, Case No. 1:15-cv-3-SKL, 2017 U.S. Dist. LEXIS 187900, 2017 WL 5479932 (E.D. Tenn. 2017) ............................................................................. 37, 40

**Statutes**

Fed. R. Civ. P. 37(e)(2) .............................................................................................................. 44

R.C. § 149.351 ................................................................................................................ 31

R.C. § 2901.22(A) ...................................................................................................... 8, 25

R.C. § 2917.12(A) ......................................................................................................... 15

R.C. 149.351(C)(1) ....................................................................................................... 34

R.C. 2917.12(A)(1) ....................................................................................................... 25

RCW 9A.84.030(1)(b) .................................................................................................. 17

Tex. Penal Code § 42.05 .............................................................................................. 17

**Rules**

Fed. R. Civ. P. 37(e) .................................................................................................... 37

Fed. R. Civ. P. 56(a) ...................................................................................................... 1

## MEMORANDUM CONTRA

Frenchko's partial motion for summary judgment paints a colorful picture of widespread government corruption with all Defendants conspiring to take her down. But when Frenchko's allegations of wrongdoing are peeled back, the record reflects that such allegations are unsubstantiated, irrelevant, misconstrued, or overblown. Accordingly, Frenchko is not entitled to summary judgment on the subset of claims she has moved on.

## I. RELEVANT PROCEDURAL POSTURE

### A. CLAIMS AT ISSUE IN PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Frenchko moves for *partial* summary judgment. *See* Fed. R. Civ. P. 56(a) (permitting a party to move for summary judgment on all or part of his/her claims). Frenchko alleges fourteen claims in her Complaint. (*See* Pl. Cmpl., Doc. 1, generally). She moves for summary judgment only on five of those claims: Claims 1-4 and claim 10. (Pl. Pt. MSJ, Doc. 47, PageID#933; Pl. Cmpl., Doc. 1, PageID#14-18, 22). Frenchko also moves for sanctions for alleged spoliation of evidence. (*Id.*). Accordingly, Defendants limit this Response only to the claims that Frenchko has moved for summary judgment on.

### B. INCORPORATION OF FACTS AND ARGUMENTS FROM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. 51)

For efficiency purposes, Defendants hereby incorporate by reference the facts and legal arguments presented in their Joint Motion for Summary Judgment (Doc. 51). Rather than repeating undisputed facts, Defendants focus on misstatements of fact and non-material facts submitted by Frenchko.

## II.     PLAINTIFF'S MISSTATEMENT OF FACTS AND NON-MATERIAL FACTS

### A.     "DEFENDANTS" ARE NOT A COLLECTIVE ENTITY AND CANNOT BE CONSTRUED AS A COLLECTIVE ENTITY UNDER THE LAW

The law does not permit Frenchko to ascribe the acts of all Individual Defendants to each individual defendant. Yet, that is exactly what Frenchko attempts to do in her statement of facts. For example, the very first section of Frenchko's "Background Facts" section is entitled "Defendants dislike Frenchko and her viewpoints." (Pl. Pt. MSJ, Doc. 47, PageID#933). Frenchko goes on to allege, without citation, that "Defendants do not appreciate her criticisms, and they accuse her of lying in plenty of public meetings." (*Id.*). There is no evidence that Sgt. Wix ever accused Frenchko of lying in any public meeting. He never even worked security at a Trumbull County Commissioners' meeting prior to July 7, 2022. (Wix Decl., Doc. 51-12, ¶ 10, PageID#51-12). It is undisputed that Sgts. Wix and Ross had no animus towards Frenchko before her arrest on July 7, 2022. (Wix Decl., Doc. 51-12, ¶ 6-7, PageID#1360; Ross Decl., Doc. 51-11, ¶¶ 5,7, Page ID #1343-44). Regarding Sgts. Wix and Ross, here is what Frenchko testified to:

> Q.     Okay. Prior to July 7th, 2022, did you know Sergeant Wix?
>
> A.     No, I don't think I knew him.
>
> Q.     Okay. And you didn't have any reason to believe that Sergeant Wix harbored any animosity towards you, correct?
>
> A.     I don't know him.
>
> Q.     Did you know Bobby Ross prior to July 7th, 2022?
>
> A.     No, again, I don't think so.
>
> Q.     And so no reason to believe that he harbored any animosity towards you prior to July 7th, correct?
>
> A.     No.

(Frenchko Depo., Vol. II, Doc. 50, PageID#1221).

In another example, Frenchko writes: "Defendants then immediately told her she [Frenchko] was not permitted to talk about the chief law enforcement officer in the County, they demanded an apology, and they arrested her when she refused to apologize." (Pl. Pt. MSJ, Doc. 47, PageID#941). Sheriff Monroe was not even at this meeting. (Frenchko Cell Phone Video, generally). Neither Wix, Ross or Cantalamessa ever asked for any apology. (Frenchko Depo., Vol. II, Doc. 50, PageID#1212; Frenchko Cell Phone video, 46:00 to 46:55). Commissioner Fuda asked Frenchko if she was going to apologize, and if not, the meeting would move on. (Id.). Neither Commissioner Fuda nor Commissioner Cantalamessa demanded an apology, contrary to Frenchko's assertions. (Id.).

The point is this: Frenchko cannot lump all Defendants together as some sort of single entity. In *Jones v. City of Elyria, Ohio*, the Sixth Circuit noted "the Supreme Court's instruction that public officials be held accountable for their own actions, but not the actions of others." *Jones,* 947 F.3d 905, 913 (6th Cir. 2020). Addressing qualified immunity as to three defendant police officers, the Sixth Circuit explained: "[W]e do not lump together each of the relevant government actors. Rather, we assess each actor's liability on an individual basis." *Id*. Whenever Frenchko ascribes actions to Defendants collectively, it is improper.

## B.     CONDUCT AND EVENTS AT COMMISSIONERS' MEETINGS PRIOR TO JULY 7, 2022 ARE NOT MATERIAL FACTS IN THIS CASE

It is not disputed that Frenchko disrupted the Commissioners' meeting on July 7, 2022. It was Frenchko's intention to disrupt the meeting:

> Q.     Okay. And do you believe it to be appropriate to disrupt her [the Clerk's] ability to read that letter uninterrupted?
>
> Objection. Go ahead and answer, Niki.
>
> A.     Absolutely.

(Frenchko Depo., Vol. I, Doc. 49, PageID#1042-43). In her Motion, Frenchko justifies her disruption for two non-material reasons: (1) the Commissioners' meetings were always disruptive and (2) Commissioner Fuda disrupted the meeting first by violating Robert's Rules of Order. Neither justification is material to the analysis of Frenchko's arrest on July 7, 2022. We address the first justification below.

Recall that the decision to arrest Frenchko was made solely by Sgts. Wix and Ross. (Ross Decl., Doc. 51-11, ¶ 46, PageID#1347; Wix Decl., Doc. 51-12, ¶ 45, PageID#1364). Nobody told them to arrest Frenchko or assisted them in arresting Frenchko. Why does this matter? Because probable cause is based on the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979).

Back to Frenchko's first justification for disruption. Frenchko argues that Commissioners' meetings "are like the Wild West." (Pl. Pt. MSJ, Doc. 47, PageID#934). "As a normal course of business, Defendants' meetings were chaotic, and all the commissioners regularly and repeatedly interrupted each other and said unkind things to one another." (*Id.*). Because chaos was par for the course, argues Frenchko, she should not have been arrested for her repeated disruptions on July 7, 2022.

The flaw in Frenchko's argument is that Sgts. Wix and Ross did not know the chaotic history of the Commissioners' meetings. Sgt. Wix was a last-minute replacement for the July 7, 2022 meeting and had never worked at a Commissioners' meeting before. (Wix Decl., Doc. 51-12, ¶¶ 10-11, PageID#1361). Frenchko testified that, up until the week prior to July 7, 2022, no

4

deputies had worked at the Commissioners' meetings for nine months to a year.[1] (Frenchko Depo., Vol. II, Doc. 50, PageID#1221). Therefore, no deputies would know the routine conduct of previous Commissioner meetings. Stated differently, the conduct from previous meetings was not within the knowledge of Sgts. Wix and Ross.

Moreover, Frenchko's disruptions on July 7, 2022 were far greater than the general arguments displayed during Commissioners' Meetings. (Frenchko Cell Phone Video, at 36:43-44:40). Frenchko repeatedly stopped the Clerk's reading of the letter. (See id.). She only once seemed to imply her interruptions related to the agenda of the meeting. (Id. at 39:55-40:15). Frenchko offers no similar circumstances where another individual repeatedly prohibited the meeting from proceeding despite repeated orders to cease the interruptive behavior. In sum, these facts are not material to the determination of probable cause on July 7, 2022.[2]

### C.  <u>ROBERT'S RULES OF ORDER ARE NOT MATERIAL TO THIS CASE</u>

Frenchko's second justification for her July 7, 2022 disruption is that Commissioner Fuda violated Robert's Rules of Order and, therefore, she was entitled to disturb the meeting: "If the Chair himself is violating the rules of order for his own theater, he is to blame for the resulting disruptions." (Pl. Pt. MSJ, Doc. 47, PageID#938). Robert's Rules of Order and any alleged violation of those rules by Commissioner Fuda or Commissioner Frenchko have no bearing on whether there was probable cause to arrest Frenchko for a violation of state law.

---

[1] To be fair, Sgt. Ross says that he attended "several" meetings but does not know how many. (Ross Decl., Doc. 51-11, ¶ 9, PageID # 1344). Even so, there is no evidence in the record as to which meetings Sgt. Ross attended or what happened at those meetings. For Frenchko's argument to have merit, there would need to be evidence that Sgt. Ross routinely witnessed a series of disruptions similar to Frenchko's disruptions on July 7, 2022. There is no such evidence.

[2] Even if Sgts. Ross and Wix did know that the Commissioners meetings were the "wild west," that knowledge is still not material to the objective determination of probable cause. That is, the fact that Frenchko and the other Commissioners allegedly engaged in disruptive conduct before July 7, 2022 does not mean that there was no probable cause on July 7, 2022.

As an initial matter, Sgts. Wix and Ross do not know Robert's Rules of Order. (Wix Depo., Doc. 45-1, PageID#700; Ross Depo., Doc. 46-1, PageID#818). Sgts. Wix and Ross were not there to enforce Robert's Rules of Order. They were there to enforce the law. Sgt. Ross said it best:

> Q.      Do you know whether or not Robert's Rules or any rules of decorum actually dictate what a chair can and cannot do?
>
> A.      I don't know. I'm not familiar with Robert's Rules.
>
> Q.      Okay. Then how do you know when someone is breaking them?
>
> A.      From – it appeared, and *I believe that she was breaking the law, not Robert's Rules*. She was breaking the law, not Robert's Rules. I don't know about Robert's Rules, but it was preventing the meeting from going on, and – with the constant interruption, so –

(Ross Depo., Doc. 46-1, PageID#838) (emphasis added). Second, and most importantly, the Sixth Circuit has squarely rejected Frenchko's argument that the validity of an arrest for disrupting a public meeting depends on following Robert's Rules:

> [Plaintiff's] only argument against probable cause is that the Officials did not follow Robert's Rules of Order when they arrested and removed him, because the Rules state that board members may only be removed from a meeting by majority vote. However, we have never recognized that parliamentary meeting rules supersede validly enacted state law. *Regardless of whether the Rules were followed or not, [Plaintiff] disturbed the meeting and therefore violated state law, providing the Officials with probable cause to arrest him.*

*Burton v. City of Detroit*, No. 22-1222, 2022 U.S. App. LEXIS 32566, at *9 (6th Cir. Nov. 23, 2022) (emphasis added). As a result, Frenchko's citation to facts alleging that Robert's Rules were not followed are not material facts for summary judgment.

## D.      SHERIFF MONROE HAD NO PERSONAL INVOLVEMENT IN THE DECISION TO ARREST OR CHARGE PLAINTIFF

There is a difference between agreeing with someone else's decision to file charges and taking an active role in the actual filing of charges. To even contemplate a malicious prosecution claim against an individual, the individual must aid the decision to prosecute in more than a passive or neutral way. *Sykes v. Anderson*, 625 F.3d 294, 309 (6th Cir. 2010). Frenchko misstates testimony

to make it appear that Sheriff Monroe "approved" the charges when it is clear from the record that he did not. (See Monroe Depo., Doc. 44-1, PageID#589-91.)

Sgts. Wix and Ross made the decision to charge Frenchko, completed the complaint and filed the complaint in Warren Municipal Court. (Ross Decl., Doc. 51-11, ¶¶ 45, 48, PageID#1347-48; Wix Decl., Doc. 51-12, ¶¶ 44, 47, PageID#1364). Frenchko cites page 61 of Sheriff Monroe's deposition as evidence that he "approved" the prosecution of Frenchko. In fact, Sheriff Monroe said no such thing:

Q.      Okay. Did you talk to Wix or Ross before charges were filed in municipal court?

A.      I'm sure I did.

Q.      Okay. What did you discuss with them?

A.      What happened, what was she charged with, and they knew the procedure for going down, you know, to talk with the city prosecutor.

Q.      So did they inform you of the facts?

A.      Yes.

Q.      Did they inform you of the statute that they were going to charge her under?

A.      Yes.

Q.      *Did you give them the okay to do that?*

A.      *I don't okay any charges.*

Q.      Okay. And did you tell them to not do that?

A.      I did not.

(Monroe Depo., Doc. 44-1, PageID#589-90) (Emphasis added). Sheriff Monroe did not approve the charges. He did not do anything vis-à-vis the charges. To establish a malicious prosecution claim, a plaintiff must demonstrate that the defendant "made, influenced, or participated in the decision to prosecute." *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015). Sheriff Monroe

did not make, influence or participate in the decision to prosecute Frenchko. Agreeing with someone else's decision to file a criminal charge is not the same as making or participating in the decision to charge as she readily admits she interrupted the Clerk's reading of the letter.

### E.    NEITHER COMMISSIONER ORDERED PLAINTIFF'S ARREST

Frenchko also argues that Commissioner Cantalamessa and Commissioner Fuda participated in her arrest. Frenchko argues that Commissioner Fuda called out Wix's name. So what?  Calling out Wix's name does not equate to participating in an arrest. *Haywood v. Hugh*, 811 F. Appx 952, 960 (6th Cir. 2020) (citing cases). Commissioner Fuda simply stated Wix's last name. There is no evidence that he directed or ordered Sgt. Wix to do anything, nor would he have had the authority to do so. Similarly, Commissioner Cantalamessa informed Frenchko she could be arrested for disrupting a meeting, but only after the officers approached her. He too did not participate in her arrest nor order the same. Accordingly, Frenchko is incorrect in concluding that Commissioner Fuda or Commissioner Cantalamessa participated in, ordered, or otherwise were involved in the decision to effectuate her arrest.

### F.    PLAINTIFF MISINTERPRETS WHAT PURPOSEFUL CONDUCT IS UNDER THE OHIO REVISED CODE

Frenchko argues that Sgt. Ross admitted he did not determine "it was Frenchko's actual purpose to disrupt the meeting." (Pl. Pt. MSJ, Doc. 47, PageID # 943). Frenchko misunderstands the definition of "purpose" under Ohio law. Under Ohio law, a person acts purposely when it is the person's specific intention to cause a certain result, *or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.* R.C. § 2901.22(A) (Emphasis added). To prove a violation of the statute, it is not necessary to prove that the suspect actually intended to disrupt the meeting; it is sufficient to prove that the suspect

intended the conduct in which he/she engaged and those actions disrupted the meeting. *City of Columbus v. Doyle*, 149 Ohio App.3d 164, 2002-Ohio-4490, 776 N.E.2d, at ¶¶ 27-28. Nobody disputes that Frenchko intended the conduct (interruptions, speaking over the clerk, arguing with the presiding commissioner) in which she engaged. Frenchko did not interrupt the meeting negligently or accidentally, she did so on purpose:

Q.     And you don't deny that you interrupted the clerk's reading of the letter, correct?

A.     *That I interrupted her reading of the – correct*, and I was interrupted and yelled at and insulted during that meeting and numerous other meetings but there was never any consequence for anyone else unless their speech was critical of the operations of the county, especially the sheriff.

(Frenchko Depo., Vol. II, Doc. 50, PageID#1216). Thus, Frenchko's reliance on testimony that Sgt. Ross did not know what Frenchko's subjective purpose was for interrupting the meeting is misplaced.

## G.     SGTS. WIX AND ROSS DID NOT ARREST FRENCHKO BECAUSE OF HER VIEWPOINTS

In Section K of their Background Facts section, Frenchko points out that Sgts. Wix and Ross did not know about the conduct and decorum at commissioner meetings prior to arresting Frenchko on July 7, 2022. (Pl. Pt. MSJ, Doc. 47, PageID#944-45). No argument there. As stated *supra*, Sgts. Wix and Ross had either no previous involvement (Wix) or very little involvement (Ross) with the Trumbull County Commissioners. (Ross Decl., Doc. 51-11, ¶¶ 5, 7, 8-9, PageID#1343-44; Wix Decl., Doc. 51-12, ¶¶ 6, 7, 9-10, PageID#1360-61). Frenchko argues that Sgts. Wix and Ross should have reviewed the Commissioners' conduct in prior meetings before arresting and charging Frenchko. As discussed below, Sgts. Wix and Ross were not required to do any such investigation. But, there is a side-effect to Frenchko's 'lack of knowledge' argument. Frenchko's argument guts her First Amendment retaliation claim against Sgts. Wix and Ross.

Leaving aside the effect of probable cause, a First Amendment retaliation claim requires Frenchko to prove that (1) she engaged in a constitutionally protected activity, (2) each individual defendant's adverse action caused them to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) the adverse action was motivated, at least in part, as a response to the exercise of the plaintiff's constitutional rights. *Learly v. Daeschner*, 228 F.3d 729, 737 (6th Cir. 2000). In this case, Frenchko's theory of retaliation against Sgts. Wix and Ross is that she was arrested when otherwise similarly situated individuals were not arrested. See *Nieves v. Bartlett*, 139 S. Ct. 1715, 1727, 204 L. Ed. 2d 1 (2018); *see also* Pl. Pt. MSJ, Doc. 47, PageID#944-49). But Frenchko concedes that Sgts. Wix and Ross were not involved in any of these prior incidents. In other words, there is no evidence that Sgts. Wix and Ross (1) encountered situations similar to Frenchko's actions on July 7, 2022 and then (2) failed to make arrests. To the extent that any such similar situations occurred with other deputies, that knowledge cannot be imputed to Sgts. Wix and Ross to prove retaliation against Wix and Ross. *Hall v. Navarre*, Nos. 21-12970, 22-11797, 2023 U.S. Dist. LEXIS 117967, at *43 (E.D. Mich. July 10, 2023 ("[R]etaliatory animus should not be determined based on officers' collective psyche.").

Lastly, Frenchko's argument that Wix and Ross should have researched the behavior of previous meetings has no basis in law. The Sixth Circuit has stated many times that "[o]nce probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999). The criminal defense that Frenchko argues is a selective prosecution defense—she was prosecuted when nobody else was. Under Ohio law, a selective prosecution claim is not a defense on the merits to the criminal charge itself, but a defendant may raise it as an independent assertion

10

that the prosecutor has brought the charge for reasons forbidden by the Constitution. *State v. Getsy*, 84 Ohio St.3d 180, 203, 1998 Ohio 533, 702 N.E.2d 866 (Ohio 1998). Sgts. Wix and Ross are not under any obligation to find evidence to support a suspect's defenses: "Even if the circumstances suggest that a suspect may have an affirmative defense, if a reasonable officer would not 'conclusively know' that the suspect is protected by the defense, then he is free to arrest the suspect provided there is probable cause to do so." *Fridley v. Horrighs*, 291 F.3d 867, 873 (6th Cir. 2002).

H.     **DEFENDANTS' TEXT MESSAGES**

1.     **Sgts. Ross and Wix had no Text Communications with any of the Other Defendants for the 2-Month Time Period Requested by Plaintiff**

Frenchko makes a mountain out of the proverbial mole hill regarding Sgts. Ross and Wix's lost text messages. As argued *infra*, Sgts. Ross and Wix's text messages have little to no relevance to the claims in this case. Regardless, even if we do not have the texts themselves, we have a lot of information about Sgts. Ross and Wix's texts. Between June 1, 2022 and August 1, 2022—the time period sought by Frenchko—we know when Sgts. Ross and Wix texted and who they texted.

Here are the cell phone numbers for the Defendants in this case:

Sgt. Ross – 330-240-4931
Sgt. Wix – 330–883-6975
Frank Fuda - 330-307-1717
Mauro Cantalamessa - 330-766-2497
Sheriff Monroe 330-609-9037

Sgt. Ross's text records between June 1, 2022 and August 1, 2022 are attached hereto as Exhibit 1. There are no texts, none, between Frank Fuda, Mauro Cantalamessa, and Sheriff Monroe during that time period. (Exhibit 1). There are 12 texts between Sgt. Ross and Sgt. Wix, but all of those texts occurred between June 8-10, 2022—a month before Frenchko's arrest and a month before Wix ever knew he was going to be at the July 7, 2022 meeting. (*Id*.).

Sgt. Wix's text records are similar. His text records between June 1, 2022 and August 1, 2022 are attached hereto as Exhibit 2. There are no texts between Sgt. Wix, Frank Fuda, Mauro Cantalamessa and Sheriff. (*Id*.). There are the same 12 texts between Sgt. Wix and Sgt. Ross between June 8-10, 2022—long before the July 7, 2022 meeting. (*Id*.).

This is a case in which Frenchko alleges that the Defendants conspired against her and, part of that conspiracy, argues Frenchko, is that the Defendants destroyed their text messages to hide their nefarious intentions. If there was a conspiracy (there wasn't), it was not organized or furthered by text messages. Other than Sgts. Wix and Ross texting amongst themselves a month before the July 7, 2022 meeting—a meeting that Sgt. Wix did not even know he was going to be at— and the two texts between Sgt. Wix and Sheriff Monroe in May, there are no text messages between Sgts. Wix and Ross and any of the other Defendants.

### 2. Sgts. Wix and Ross Were Not Notified to Save Their Texts

Sgts. Wix and Ross were never notified to save their text messages. Frenchko states: "Defendants received plenty of notice to preserve text messages." (Pl. Pt. MSJ, Doc. 47, PageID # 950). Again, Frenchko lumps all Defendants together instead of engaging in an individualized inquiry. Of all of the purported preservation letters or public records requests (See e.g. Docs. 47-5, 47-6, 47-7, 47-9), none were sent directly to Sgts. Wix or Ross. Not so fast, says Frenchko. There was a court order regarding preservation in the criminal case. That's true, but the prosecutor never spoke with Sgts. Wix and Ross about anything much less preserving their text messages. (Wix Decl., Doc. 51-11, ¶ 49, PageID # 1348; Ross Decl., Doc. 51-12, ¶ 48, PageID # 1364).

### 3. Sheriff Monroe Was Not Notified to Save All His Texts for a Two Month Period.

Frenchko and her counsel made two public records requests in this matter: (1) one on August 8, 2022 requesting "Under the ohio sunshine law, Please send me all call logs between

commissioners, Gedeon, Taylor, Blair Klotz & Monroe or staff & text messages for the same, from June 25- today" and (2) a second request on March 9, 2023, for "Sheriff Monroe, the Sheriff's Department and its agents, the Commissioners, everyone in the room today, and every human being, public official, employee, and agent in the County maintains any and all records that relate in any manner to both Commissioner's Frenchko's previous arrest and today's events during this meeting. This includes all records, whether they exist on their personal devices or County devices. This includes, but is not limited to, emails, text messages, phone logs, social media messages, phone records, and any other tangible, physical, or electronic communication. This demand includes all phones, laptops, tablets, pagers, smartphones, desktops, letters, or even a scribble on a cocktail napkin. Any destruction of records will also result in additional claims against anyone who destroys a record under the Public Records Act and/or the claim of spoliation." (March 9 Email, Doc. 47-9, PageID#1021).

Sheriff Monroe's text logs between May 1, 2022 and August 1, 2022 are attached hereto as Exhibit 3. Sheriff Monroe's text logs reflect he did not have any text communications with Gedeon, Blair, Taylor, or Klotz as requested in the August 8, 2022 email. (Exhibit 3). Cantalamessa' text messages include the only conversations had between Sheriff Monroe and Commissioner Cantalamessa, which occurred on July 25, 2022 and August 2, 2022 after Frenchko's July 7, 2022 arrest. (See Cantalamessa Texts, Doc. 47-10, PageID#1028). The March 9, 2023 email does not request Sheriff Monroe's text message logs over a two month period. Sheriff Monroe's text logs further demonstrate that he did not exchange text messages with Cantalamessa, Fuda, or Sgt. Ross from May 1, 2022 to August 1, 2022 outside of the few messages with Cantalamessa far after Frenchko's arrest which have been produced. The only text messages between Sheriff Monroe and Sgt. Wix occurred on May 19, 2022. A total of two messages were

13

exchanged. There are no further text communications between Sheriff Monroe and the other Defendants.

###### 4. Mauro Cantalamessa Provided the Content of His Text Messages Which Do Not Reveal Any Conspiracy Between Defendants.

Commissioner Cantalamessa did produce his text messages in this matter. (See Cantalamessa Texts, Doc. 47-10, PageID#1022-1028). Frenchko has filed a portion of the text messages she received from Commissioner Cantalamessa. (See id.). Commissioner Cantalamessa's phone was imagined in a separate lawsuit on August 3, 2022, and this imaging captured his text messages from July 3, 2022 to August 3, 2022. Contrary to Frenchko's assertions, Commissioner Cantalamessa's messages were not restored from deletion during the August 3, 2022 imagining of his phone. More importantly, the content of his text messages do not demonstrate any conspiracy between Defendants to arrest Frenchko. There are no records of him texting with any other Defendant in this matter leading up to Frenchko's arrest. (See Ross Text Logs, Ex. 1; Wix Text Logs, Ex. 2; Monroe Text Logs, Exhibit 3).

###### 5. Frank Fuda's Text Messages are Not at Issue.

Frenchko's partial Motion for Summary Judgment does not reference any text messages made by Commissioner Fuda which are at issue. Commissioner Fuda does not typically use the text message function on his phone. (Fuda Depo., Doc. 42-1, PageID#391). Frenchko does not dispute this. Nevertheless, Commissioner Fuda produced his text logs which do not demonstrate any texts exchanged with other Defendants during the period requested.

###### 6. Defendants Text Message Logs Do Not Reveal Any Widespread Communication Between Defendants.

In sum, a majority of the text messages that Frenchko claims are missing never existed. The text logs of the Defendants reveal that Defendants were not texting one another in the days leading up to Frenchko's arrest. The only text messages that are missing are those of Sheriff

Monroe, Sergeant Wix, and Sergeat Ross with individuals unrelated to this case and which Frenchko has not alleged relate to her arrest.

## III.   LAW AND ARGUMENT

### A.    PLAINTIFF'S FACIAL CHALLENGE FAILS AS A MATTER OF LAW

#### 1.    Plaintiff's Facial Challenge to R.C. 2917.12(A)(2) is a Straw Man Argument

Frenchko is arguing facial unconstitutionality of a subsection that Defendants (1) are not seeking to enforce and (2) do not argue was the basis for her arrest.  R.C. § 2917.12(A) consists of two separate subsections:

> (A)  No person, with purpose to prevent or disrupt a lawful meeting, procession, or gathering, shall do either of the following:
>
> (1)  Do any act which obstructs or interferes with the due conduct of such meeting, procession, or gathering;
>
> (2)  Make any utterance, gesture, or display which outrages the sensibilities of the group.

Frenchko argues that R.C. 2917.12(A)(2) is facially unconstitutional.[3] (Pl. Pt. MSJ, Doc. 47, PageID#962). Frenchko's entire argument is based on the "outrages the sensibilities" language of subsection (A)(2). (*Id.* at PageID#964) (focusing on the language of R.C. § 2917.12(A)(2); see also *Id.* at PageID#965 ("Because the Statute grants the government the unfettered discretion to punish speech that *offends* the group…This statute is overly broad) (emphasis added); Pl. Cmpl., Doc. 1, ¶¶ 61-65, PageID#9-10 (emphasizing only subsection (A)(2) of the statute as unconstitutional).

---

[3] On the surface it may appear that Frenchko is arguing that the entire statute is unconstitutional, but a close reading of her argument makes clear that Frenchko is only focusing on the language in subsection (A)(2).

In this case, Defendants argue that there was probable cause and/or arguable probable cause to arrest Frenchko for a violation of R.C. § 2917.12(A)(1), not R.C. § 2917.12(A)(2). (See Defs. Mot. Summary Judgment, Doc. 51, PageID#1271-78). Defendants are not attempting to enforce R.C. § 2917.12(A)(2). In other words, nobody in this case is arguing that there was probable cause to arrest Frenchko under R.C. § 2917.12(A)(2). Accordingly, Frenchko's request to declare subsection (A)(2) unconstitutional is really a request for an advisory opinion from this Court on a subsection not at issue in this case.

### 2.    R.C. § 2917.12(A)(1) is Constitutional

The constitutionality of R.C. § 2917.12(A)(1) and similar local ordinances has been challenged in both state courts and federal courts. It has been upheld every time. *See e.g., State v. Brand*, 2 Ohio App.3d 460, 442 N.E.2d 805 (Ohio Ct. App. 1981) (rejecting facial challenge to R.C. § 2917.12); *City of Columbus v. Doyle*, 149 Ohio App.3d 164, 2002-Ohio-4490, 776 N.E.2d 537, ¶ 15 ("2317.12 is clear and unequivocal; it gives fair notice of what is forbidden. The plain meaning is that it prohibits any person from acting with a purpose to prevent or disrupt a lawful gathering and from succeeding in that effort by actually obstructing or interfering with its due conduct. This court finds no imprecision in the statutory language that would prevent a person of ordinary intelligence from knowing what is and what is not proscribed.").

In *Hinners v. O'Shea*, 2022 U.S. Dist. LEXIS 98018 (N.D. Ohio May 31, 2022), this Court held that a local ordinance identical to R.C. § 2917.12(A)(1) was not facially unconstitutional. *Id.* at *69. This Court did hold that the part of the local ordinance identical to R.C. § 2917.12(A)(2) was unconstitutional. *Id.* at *67.

Outside of Ohio, state courts have upheld statutes similar to R.C. § 2917.12(A)(1). For example, in *State v. Patterson*, 196 Wn. App. 451, 389 P.3d 612 (Wash. Ct. App. 2016), the court rejected a constitutional challenge to a statute with the following language:

(1) A person is guilty of disorderly conduct if the person:

(b) intentionally disrupts any lawful assembly or meeting of persons without lawful authority.

*Id*. at ¶ 11 citing RCW 9A.84.030(1)(b). In rejecting the overbreadth challenge, the Court held that "[a] person generally has a free speech right to make his or her views known, but the rubric of free speech does not include the intent to substantially interfere with a meeting." *Id*. at ¶ 19.

Similarly, in *State v. Markovich*, 77 S.W.3d 274, 2002 Tex. Crim. App. LEXIS 113 (Tx. Ct. Crim. App. 2002), the Texas Court of Criminal Appeals rejected overbreadth and vagueness challenges to the following statute:

A person commits an offense if, with intent to prevent or disrupt a lawful meeting, procession, or gathering, he obstructs or interferes with the meeting, procession, or gathering by physical action or verbal utterance.

*Id*. citing Tex. Penal Code § 42.05. Rejecting the vagueness challenge, the Court held that "Section 42.05 reaches only the disorderly physical or verbal conduct of individuals who are acting with the specific intent to prevent or disrupt a meeting. A person of ordinary intelligence knows the type of conduct that is likely to cause an impairment to the ordinary conduct of a meeting." *Id*. at 279. The Court also held that the statute does not give unfettered discretion to police officers: "Although an officer must initially make a determination as to whether the statute has been violated before he makes an arrest, the officer's assessment of the defendant's conduct is not the defining element of the offense." *Id*. at 280.

In *State v. Ervin*, 40 S.W.3d 508, 2000 Tenn. Crim. App. LEXIS 267 (Tenn. Ct. Crim. App. 2000), a Tennessee court of appeals upheld the constitutionality of Tennessee's meeting disruption statute. The court held that Tennessee's statute, like Ohio's, is content-neutral: "It is content-neutral in that it does not criminalize any particular type of speech, rather it prohibits only speech or actions which disrupt lawful meetings or processions. The nature of the interference is

gauged only by reference to the manner in which the speaker delivers his or her message, and not to the substantive content of the speech itself. *Id*. at 517. The statute is not overbroad because it is interpreted to only prohibit speech or expressive conduct that "substantially" obstructs or interferes with a lawful meeting. *Id*. at 519. Ohio's statute is interpreted in the same way. See *State v. Brand*, supra at Paragraph 2 of the Syllabus.

### 3. Defendants Are Entitled to Qualified Immunity on Plaintiff's Facial Challenge Claim

Qualified immunity gives officials "breathing room" to make reasonable, but mistaken judgments. *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). The Supreme Court directs that "police officers may not be held liable for damages unless the officers were 'plainly incompetent' or 'knowingly violate[d] clearly established law." *Carroll v. Carman*, 574 U.S. 13, 17 (2014) (per curiam). "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, at 526 (1985). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan, 555* U.S. 223, 231, (2009) (internal citations omitted).

Qualified immunity under federal law is applied using a two-part test. First, courts must determine whether the alleged acts violate a constitutional right. Second, the court must determine whether at the time of the actions, the constitutional right is "clearly established." *Saucier v. Katz*, 533 U.S. 194 (2001). The determination must be based on what a reasonable officer would believe or understand under the circumstances given what was known to the officer at the time. *White v.*

*Pauly*, 137 S.Ct. 548, 550 (2017); *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2474 (2015); *Fox v. DeSoto*, 489 F.3d 227 at 236 (6th Cir. 2007). The standard is objective and must not be applied using hindsight unavailable to the officers at the time the action was taken. *Id.* Once a defendant has shown that he was acting within his discretionary authority, the plaintiff bears the burden of proving that he is not entitled to qualified immunity. *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991). Frenchko does not meet that burden in this case.

At the time Frenchko was arrested, no court had declared any section of R.C. § 2917.12 facially unconstitutional. When public officials implement validly enacted state laws that no court has invalidated, their conduct typically satisfies the core inquiry—the "objective reasonableness of an official's conduct—that the immunity doctrine was designed to test." *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 441 (6th Cir. 2016). The Supreme Court tells us that public officials should generally receive qualified immunity when enforcing properly enacted laws. *Michigan v. DeFillippo*, 443 U.S. 31 (1979). The Court noted that "[t]he enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." *Id.* at 38. The Court was more explicit in *Pierson v. Ray*, 386 U.S. 547 (1967): "A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does." *Id.* at 555. The Supreme Court has *never* denied qualified immunity to a public official who enforced a properly enacted statute that no court had invalidated. *Citizens in Charge*, 810 F.3d at 441. "Any other approach would place risky pressures on public officials to second-guess legislative decisions." *Id.* at 442.

The Sixth Circuit has adopted similar reasoning in granting qualified immunity to public officials who enforced validly enacted laws. *See Risbridger v. Connelly*, 275 F.3d 565, 573-74 (6th Cir. 2002); *Hanna v. Drobnick*, 514 F.2d 393, 397 (6th Cir. 1975), *repudiated on other grounds by Thomas v. Shipka*, 818 F.2d 496 (6th Cir. 1987); *cf. Wolfel v. Morris*, 972 F.2d 712, 719-20 (6th Cir. 1992). Other circuits have done the same, treating the fact that an officer enforced a presumptively constitutional law as creating "a heavy presumption in favor of qualified immunity." *Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 104 (2d Cir. 2003) *Swanson v. Powers*, 937 F.2d 965, 968-69 (4th Cir. 1991).

*Citizens in Charge, Inc.* proves the point. In *Citizens in Charge, Inc.*, the Sixth Circuit granted qualified immunity to the Ohio Secretary of State who enforced a statute that was later held unconstitutional. The Secretary of State was entitled to qualified immunity "where the plaintiffs' arguments about the law's unconstitutionality may be winning ones but where the Secretary's decision to *enforce* the law was not objectively unreasonable." 810 F.3d at 445. Second, to be "clearly established" for the purpose of determining qualified immunity, existing precedent—either a controlling authority or a "robust consensus of cases of persuasive authority"—must have placed the constitutional question "beyond debate." *Plumhoff v. Rickard*, 572 U.S. 765, 780 (2014). It is not clearly established that R.C. § 2917.12 is unconstitutional. Neither the U.S. Supreme Court, the Sixth Circuit nor the Ohio Supreme Court have ever held that R.C. § 2917.12 is facially unconstitutional. On the contrary, as argued above, R.C. § 2917.12(A)(1), the section at issue in this case, has consistently been held constitutional.

Frenchko does not cite a single case holding that *any* section of R.C. § 2917.12 was unconstitutional at the time of the events in this case. Instead, Frenchko relies on a Minnesota Supreme Court case, *State v. Hensel*, 901 N.W.2d 166 (Minn. 2017), to make her facial challenge.

20

Stating the obvious, *State v. Hensel* is not an Ohio case. Next, even if this Court agrees with the holding of *State v. Hensel*, Defendants have shown above that other state courts have upheld the constitutionality of meeting disruption statutes. The point is this: that there is no robust consensus of cases holding that statutes like R.C. § 2917.12(A)(1) are unconstitutional. As a result, at the time of Frenchko's arrest, it was not clearly established that R.C. 2917.12 was unconstitutional. Therefore, Defendants are entitled to qualified immunity. Moreover, Sheriff Monroe, Commissioner Fuda, and Commissioner Cantalamessa did not arrest Frenchko nor play any role in the enforcement of R.C. 2917.12, and even if they somehow did, these individuals would similarly be entitled to qualified immunity.

### B. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM

#### 1. Sheriff Monroe, Commissioner Fuda and Commissioner Cantalamessa Took no Adverse Action against Plaintiff

To establish a First Amendment retaliation claim, the plaintiff must prove that (1) they engaged in a constitutionally protected activity; (2) the defendant's adverse action caused them to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) the adverse action was motivated, at least in part, as a response to the exercise of the plaintiffs' constitutional rights. *Hinners*, 2022 U.S. Dist. LEXIS 98018 at *28 citing *Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir. 2000).

The adverse action at issue in this case is Frenchko's arrest on July 7, 2022. Defendants Monroe, Fuda and Cantalamessa took no adverse action against Frenchko. Sheriff Monroe was not at the July 7, 2022 meeting. (*See generally*, Def. MSJ, Doc. 51, Ex. M, Frenchko Cell Phone Video). There is no evidence he ordered her arrest. (*See e.g.*, Ross Depo., Doc. 46-1, PageID#904; Wix Depo., Doc. 45-1, PageID#764). Sheriff Monroe simply wrote Frenchko a letter responding to a letter she read which included allegations and misstatements against him and his office.

21

(Sheriff's Letter, Doc. 47-1, PageID#982). He did not have her arrested nor did he compel any apology from her. (*See* Id.).

As for Commissioners Fuda and Cantalamessa, they did not arrest Frenchko or order her arrest either. The decision to remove and arrest Frenchko was made by Sgts. Wix and Ross. (Wix Decl., Doc. 51-12, ¶¶ 30, 45; Ross Decl., Doc. 51-11, ¶¶ 30, 46). Frenchko was permitted to voice her objections to Sheriff Monroe's letter. (Def. MSJ, Doc. 51, Ex. M, Frenchko Cell Phone Video, at 44:40-47:00). Neither Commissioner compelled her to speak. (Id.). They expressly recognized that she was not going to apologize and attempted to continue the meeting. (Id.). Neither Commissioner required any apology from Frenchko, nor did they play any role in her arrest. (Id.).

## 2. There Is No Evidence That Sgts. Wix or Ross Retaliated Against Frenchko

In *Nieves v. Bartlett*, 139 S. Ct. 1715, 204 L. Ed. 2d 1, the Supreme Court held that a plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest. *Id*. at 1724. There is one exception. The no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he or she was arrested when otherwise similarly situated individuals engaged in the same sort of protected speech had not been. *Id*. at 1727. That is what Frenchko argues here. (Pl. Pt. MSJ, Doc. 47, PageID#966). Frenchko broadly states: "*Everyone knows* that the Commissioners' meetings were always chaotic. The Commissioners always argued with each other, interrupted each other, and criticized one another." *Id*. (Emphasis added). Not everyone knows what the Commissioners' meetings were like. Sgts. Wix and Ross did not know. Sgts. Wix and Ross had either no previous involvement (Wix) or very little involvement (Ross) with the Trumbull County Commissioners. (Ross Decl., Doc. 51-11, ¶¶ 5, 7, 8-9, PageID#1343-44; Wix Decl., Doc. 51-12, ¶¶ 6, 7, 9-10, PageID#1360-61). There is no

22

evidence in the record that Sgts. Wix and Ross knew about any of the "similarly situated" incidents Frenchko relies on.

Next, the 'similarly situated' analysis is the beginning of a retaliation inquiry, not the end. The Supreme Court tells us that, if there is objective 'similarly situated' evidence, the plaintiff then must provide evidence of retaliation in the same manner as claims where the plaintiff has met the threshold showing of the absence of probable cause. *Nieves* at 1727. To make that showing, "[t]he plaintiff must show that the retaliation was a substantial or motivating factor behind the [arrest], and, if that showing is made, the defendant can prevail only by showing that the [arrest] would have been initiated without respect to retaliation." *Id*. at 1725.

Here, Frenchko does not provide any evidence against Sgts. Wix and Ross that they were motivated by retaliation. Stated differently, Frenchko makes no attempt at an individual retaliation analysis. In fact, Sgts. Wix and Ross's names do not even appear in Frenchko's retaliation argument. (See Pl. Pt. MSJ, Doc. 47, PageID#965-67). Sgts. Wix and Ross have testified that they (1) had no animus toward Niki Frenchko, (2) did not know about any dispute between Sheriff Monroe and Frenchko and (3) arrested Frenchko for her interruptive and disruptive conduct, not the content of her interruptions. (Ross. Decl., Doc. 51-11, ¶¶ 7, 13, 47, PageID#1344, 1347; Wix Decl., Doc. 51-12, ¶¶ 7, 13, 46, PageID#1360-61, 1364). To defeat Sgts. Wix and Ross's qualified immunity, Frenchko is required to put forth affirmative evidence against Sgts. Wix and Ross to prove that they, individually, retaliated against her. Because Frenchko does not and cannot do so, Sgts. Wix and Ross are entitled to qualified immunity on Frenchko's First Amendment retaliation claim.

23

### C.     PLAINTIFF'S FOURTH AMENDMENT CLAIM FAILS AS A MATTER OF LAW

The existence of probable cause and/or arguable probable cause defeats Frenchko's Fourth Amendment claims for malicious arrest,[4] malicious prosecution, and unlawful seizure. *Howse v. Hodous*, 953 F.3d 402, 409 (6th Cir. 2020) (Fourth Amendment claims for false arrest and malicious prosecution rise and fall on whether there was probable cause). Moreover, Defendants are entitled to qualified immunity.

A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence. *Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001). To determine whether an officer had probable cause for an arrest a court "examine[s] the events leading up to the arrest, and then decide[s] 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). Because probable cause "deals with probabilities and depends on the totality of the circumstances," 540 U.S., at 371, it is "a fluid concept" that is "not readily, or even usefully, reduced to a neat set of legal rules," *Illinois v. Gates*, 462 U.S. 213, 232 (1983). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id*. at 243-244, n. 13. Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014).

#### 1.     Subjective Motivations are Irrelevant to the Probable Cause Analysis.

Frenchko alleges that her arrest was motivated by Defendants' animosity towards her and, therefore, was not based on probable cause. But plenty of cases "make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable

---

[4] There is no federal cause of action for malicious arrest outside of a Fourth Amendment claim for unlawful seizure.

cause." *Barrera v. City of Mount Pleasant*, 12 F. 4th 617, 624 (6th Cir. 2021) citing *Devenpeck v. Alford*, 543 U.S. 146 (2004); *Whren v. United States*, 517 U.S. 806, 810-13 (1996). Indeed, the officer's subjective state of mind for making an arrest need not even be the criminal offense as to which the known facts provide probable cause.[5] *Devenpeck*, supra. The Fourth Amendment permits certain actions to be taken in certain circumstances, whatever the intent. *Id*. Subjective intentions play no role in the objective probable cause analysis.

### 2.  Probable Cause Disposes of Plaintiff's Fourth Amendment Claim.

Here, there was probable cause for Frenchko's arrest. R.C. 2917.12(A)(1) states that "[n]o person, with purpose to prevent or disrupt a lawful meeting, procession, or  gathering, shall . . . [d]o any act which obstructs or interferes with the due conduct of such meeting, procession, or gathering[.]" Under Ohio law, a person acts purposely when it is the person's specific intention to cause a certain result, *or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.* R.C. § 2901.22(A) (Emphasis added). To prove a violation of the statute, it is not necessary to prove that the suspect actually intended to disrupt the meeting; it is sufficient to prove that the suspect intended the conduct in which he/she engaged and those actions disrupted the meeting. *Doyle*, 2002-Ohio-4490 at ¶¶ 27-28. The word "disrupt" is not defined in the statute; however, the court in *Brand* defined disrupt in a similar context as "to intercept or impede progress of something." 2 Ohio App.3d 460 at 463. Alternatively, "'[c]ourts have used dictionary definitions to determine the plain and ordinary meaning of a statutory term.'"

---

[5] Frenchko alleges that she was arrested under R.C. § 2917.12(A)(2) for outraging the sensibilities of a group. (Pl. Cmpl., Doc. 1, ¶ 1, PageID#3). Defendants contend that Frenchko was arrested under R.C. § 2917.12(A)(1) for obstructing and interfering with the meeting. Under *Devenpeck*, it does not matter which subsection of the statute the parties *think* applies. If the facts support probable cause for any offense/subsection in the entire Ohio Revised Code, the arrest is lawful. *Devenpeck*, 543 U.S. 153-55; *Wesby*, 583 U.S. at 54, fn. 2.

*Id*, quoting *State v. Jackson*, 2012-Ohio-4219, 2012 WL 4056778, ¶ 34 (Ohio Ct. App. 2012). Dictionaries generally define "disruption" as an action that interrupts, impedes, or stops. *See, e.g.*, American Heritage Dictionary of the English Language 522 (5th ed. 2011) (including "disruption" under "disrupt," which is defined as "[t]o throw into confusion or disorder" or "[t]o interrupt or impede the progress of"); Webster's Third New International Dictionary 656 (1976) (defining "disruption" as "the state of being disrupted," and defining "disrupt" as "to interrupt to the extent of stopping, preventing normal continuance of, or destroying").

Frenchko's own video demonstrates probable cause for her arrest. There is no dispute that Frenchko's intentional interruptions obstructed the meeting. Her continued outbursts repeatedly forced the Clerk to stop reading and, after the letter was finally read, she would not allow the meeting to proceed to the next order of business. (*See* Frenchko Cell Phone Video, at 39:30-44:40). During her deposition, Frenchko claimed she was merely trying to get back to the meeting agenda and attempted to make a motion; (Pl. Depo., Doc. 49, PageID#1043-1044) however, her video demonstrates she disagreed with the contents of the letter and what she believed to be criticisms of her. (See Frenchko Cell Phone Video, at 39:50-40:10). A reasonable officer witnessing Frenchko's repeated disruptions when (1) the clerk was trying to read a letter into the record and (2) the presiding commissioner was trying to move on could believe that there was probable cause to arrest Frenchko for disturbing a lawful meeting. The case law supports probable cause.

In *Brand*, the defendant was at a rally featuring the late First Lady Rosalyn Carter. 2 Ohio App.3d at 460-61. While Ms. Carter was speaking, the defendant shouted statements supporting the Iranian revolution and condemning the Carter administration. *Id*. at 461. This behavior only went on for approximately one minute. *Id*. The defendant was told to be quiet three times before being arrested. *Id*. The defendant was convicted of disrupting a public meeting. The defendant

26

argued that his brief heckling of a public figure did not substantially impede the conduct of the gathering. *Id*. at 462. The Court of Appeals disagreed: "We find that there was ample probative evidence from which reasonable minds could conclude that the defendant acted with the purpose to disrupt a lawful meeting and that his shouts and screams substantially obstructed the due conduct of the meeting." *Id*.

When compared to the defendant in *Brand*, Frenchko's conduct is as bad if not worse. Frenchko's repeated interruptions caused a longer disruption than the one-minute disruption in *Brand*. Frenchko was asked to stop at least four times compared to the three times that the defendant in *Brand* was asked to stop. Continued interruption was also sufficient to constitute a violation of the statute in *Doyle*. *See* 2002-Ohio-4490, ¶¶ 6-8, 24-29.

In a very similar case, *Burton v. City of Detroit*, the Sixth Circuit held that there was probable cause to arrest a commissioner that was interrupting a meeting. Like Frenchko, Burton was a commissioner for a public body. Burton was not the chairperson. 2022 U.S. App. LEXIS 35266 at *2. Similar to this case, Burton interrupted and "continued speaking out of order." *Id*. The chairperson announced that Burton was out of order three times. *Id*. at *3. When Burton did not stop, he was arrested for causing a disturbance at a meeting in violation of Mich. Comp. Laws § 750.170. *Id*. at *4. Like Frenchko, Burton filed suit pursuant to §1983 alleging that he was arrested without probable cause. The Sixth Circuit found that Burton's arrest was supported by probable cause: "[W]hen he continued talking despite [the chairperson's] telling him he was out of order three separate times, as well as after [an officer] informed Burton that Burton would be removed if he continued to speak out of turn..[his conduct] interrupted the peace and quiet of the meeting and violated public order and decorucm." *Id*. at *8. The Sixth Circuit dismissed Burton's First and Fourth Amendment claims. By analogy, when Frenchko continued talking despite the

27

presiding commissioner's multiple admonishments that she was out of order, she disrupted the meeting and a reasonable officer had probable cause to arrest her.

Lastly, there was an independent determination of probable cause. In this case, a Warren Municipal Court deputy clerk made a post-arrest finding of probable cause.[6] (See Probable Cause Determination, Doc. 51-18, PageID#1386). A post-arrest probable cause determination performs the same function for those arrested without warrants as a pre-arrest probable cause determination does for suspects arrested with warrants. A law enforcement official ordinarily receives qualified immunity if there is a judicial determination of probable cause. *Voyticky v. Vill. Of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005). There is no allegation in this case that Sergeants Wix or Ross misrepresented any facts in their arrest report. The probable cause determination by a neutral and detached deputy clerk is further evidence that there was probable cause for Frenchko's arrest. It is also further evidence that Sergeants Wix and Ross did not act unreasonably and, therefore, are entitled to qualified immunity.

### 3.   Even if There Were No Actual Probable Cause, Defendants are Still Entitled to Qualified Immunity Because a Reasonable Officer Could Believe that Probable Cause Existed.

In *District of Columbia v. Wesby*, 583 U.S. 48, the Supreme Court held that, even if no actual probable cause to arrest is present, officers are entitled to qualified immunity if they "reasonably but mistakenly conclude that probable cause is present." *Id*. at 591 citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Circuit and District courts refer to this concept as 'arguable' probable cause. *See, e.g., White v. Jackson*, 865 F.3d 1064, 2017 U.S. App. LEXIS 13926, 2017 WL 3254496, at *5 (8th Cir. 2017) (quoting *Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir.

---

[6] Under both Ohio and federal law, a deputy clerk can make a probable cause determination. *Shadwick v. City of Tampa* (1972), 407 U.S. 345, 347, 32 L. Ed. 2d 783, 92 S. Ct. 2119; *State v. Fairbanks* (1972), 32 Ohio St.2d 34, 39-40, 289 N.E.2d 352; See also Ohio. Crim. P. 4.

2011)) ("'[A]n officer is entitled to qualified immunity if there is at least arguable probable cause.'
. . . There is arguable probable cause 'even where an officer mistakenly arrests a suspect believing
it is based in probable cause if the mistake is 'objectively reasonable.'"); *Redd v. City of Enterprise*,
140 F.3d 1378, 1384 (11th Cir. 1998) ("[W]hen an officer has *arguable* probable cause to believe
that a person is committing a particular public offense, he is entitled to qualified immunity from
suit."); *accord Greene v. Barber*, 310 F.3d 889, 898 n.2 (6th Cir. 2002).

Based on the aforementioned cases decided by the Ohio Courts of Appeals and the Sixth
Circuit, a reasonable officer could have concluded that there was probable cause to arrest
Frenchko. We do not expect law enforcement officers to keep abreast of every development in the
case law or to recognize every implication of legal precedent for police conduct that courts have
not previously considered. *See Saucier,* 533 U.S. at 205 ("It is sometimes difficult for an officer
to determine how the relevant legal doctrine . . . will apply to the factual situation the officer
confronts."). The Defendants are entitled to qualified immunity.

Finally, the Defendants did not violate clearly established law. Under Supreme Court
precedent, officers are entitled to qualified immunity under § 1983 unless (1) they violated a
federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly
established at the time." *Wesby*, 138 S. Ct. at 589. "Clearly established" means that, at the time of
the officer's conduct, the law was "sufficiently clear" that every 'reasonable official would
understand that what he is doing'" is unlawful. *Id*. In other words, existing law must have placed
the constitutionality of the officer's conduct "beyond debate." *Id*.

The "clearly established" standard requires that the legal principle clearly prohibit the
officer's conduct in the particular circumstances before him. *Id*. at 590. The Supreme Court has
repeatedly stressed that courts must not "define clearly established law at a high level of generality,

since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Id*. Further, the Supreme Court stresses that the "specificity" of the rule is "especially important in the Fourth Amendment context." *Id*. Thus, the Court has stressed the need to "identify a case where an officer acting under similar circumstances…was held to have violated the Fourth Amendment." *Id*. The undersigned are not aware of any Supreme Court or Sixth Circuit cases denying qualified immunity when a person who repeatedly interrupts a speaker is arrested for disturbing a public meeting.

Frenchko's reliance on *Wood v. Eubanks*, 25 F. 4th 414 (6th Cir. 2022) is misplaced. For one thing, *Wood* involved alleged disorderly conduct at a county fair, not disruption at a county commissioners' meeting. The laws regarding disorderly conduct and disturbing a lawful meeting prohibit different conduct. The Sixth Circuit's decision in *Burton v. City of Detroit*, decided after *Wood*, makes clear that repeated interruptions at a public meeting by a public official can constitute probable cause for arrest.

> ### 4. Plaintiff Has No Fourth Amendment Claim Against the Remaining Defendants.

Frenchko lumps all Defendants in her Fourth Amendment claim despite the lack of any actionable involvement in her arrest. The only Defendants who arrested Frenchko were Sergeant Wix and Sergeant Ross. None of the other Defendants had any personal involvement in Frenchko's arrest or prosecution. (*See generally*, Def. MSJ, Doc. 51, Ex. M, Frenchko Cell Phone Video). Thus, there is no viable Fourth Amendment claim against Sheriff Monroe, Commissioner Cantalamessa, Commissioner Fuda, the Trumbull County Board of Commissioners, the Trumbull County Sheriff Office, or Trumbull County, Ohio.

### D.     PLAINTIFF'S  RECORDS  CLAIM  UNDER  R.C.  § 149.351  FAILS  AS  A MATTER OF LAW

Frenchko makes two separate claims relating to public records. One claim is based on a state statute, R.C. § 149.351. The other is based on the Federal Rules of Civil Procedure. The claims have different elements and will be addressed separately.

In order to recover damages under the civil forfeiture statute, R.C. § 149.351, the following must be met: (1) the requesting party must request public records; (2) the public office must be obligated to honor the request; (3) the office must have disposed of the records in violation of R.C. 149.351(A); and (4) the requesting party must be aggrieved by the improper disposition. *Rhodes v. New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782, at ¶ 16. The public records request must be a valid public records request: "Appellant's forfeiture claim is contingent on an enforceable records request." *State ex rel. Todd v. City of Canfield*, 2014-Ohio-569, 2014 Ohio App. LEXIS 551, ¶ 22 (Ohio Ct. App. 2014).

### 1.     Plaintiff Only Made Two Public Records Requests Relevant to This Matter.

Frenchko's Complaint does not describe whether she made a public records request, who she made this request to, and what records she requested. Through discovery, Defendants were provided a single email sent by Frenchko to Paul Monroe at somonroe@co.trumbull.oh.us, and to the Trumbull County Commissioners at Commissioners@co.trumbull.oh.us on August 8, 2022 (Records Request, Doc. 47-6, PageID#1007). Her email requests "[u]nder the ohio sunshine law, Please send me all call logs between commissioners, Gedeon, Taylor, Blair Klotz & Monroe or staff & text messages for the same, from June 25- today." (Id.). Frenchko never followed up on this request after August 8, 2022. Frenchko's request does not identify any subject matter or topic. (Id.). Instead, she broadly requests the logs and the content of text messages over communications from eight individuals and staff from a one-and-a-half-month period. (Id.). None of the Defendants

were asked about this request during their depositions. (*See generally e.g.*, Cantalamessa Depo., Doc. 43-1, PageID#410-526; Fuda Depo., Doc. 42-1, PageID#293-406; Monroe Depo.44-1, PageID#530-665; Wix Depo., Doc. 45-1, PageID#669-781; and Ross Depo., 785-925). Nevertheless, Frenchko's Complaint alleges Defendants violated R.C. 149.351(B)(1) and (2) by allegedly destroying text messages she contends were exchanged between Defendants. (Pl. Cmpl., Doc. 1, PageID#22).

The next request from Frenchko did not come until March 9, 2023 and it is arguably more unclear than her first request. The March 9, 2023 email requests "Sheriff Monroe, the Sheriff's Department and its agents, the Commissioners, everyone in the room today, and every human being, public official, employee, and agent in the County maintains any and all records that relate in any manner to both Commissioner's Frenchko's previous arrest and today's events during this meeting. This includes all records, whether they exist on their personal devices or County devices. This includes, but is not limited to, emails, text messages, phone logs, social media messages, phone records, and any other tangible, physical, or electronic communication. This demand includes all phones, laptops, tablets, pagers, smartphones, desktops, letters, or even a scribble on a cocktail napkin." (March 9 Email, Doc. 47-9, PageID#1021). This request does not provide any date ranges of any requested text messages, nor does the request define the contours of the requested information.

Since Frenchko has brought this destruction of public records claim against all Defendants herein, each Defendant is assessed individually. Starting first with Sergeants Ross and Wix, they did not receive either records request. Moreover, this request does not address any records they may have or control. It is unclear why either Sergeant Wix or Sergeant Ross are included in Frenchko's destruction of public records claim. To the extent that Frenchko believes her

destruction of public records claim includes Sergeant Wix or Sergeant Ross's text messages, Frenchko has not provided any evidence she made such a public records request for them, which is necessary to sustain a destruction of public records claim. *Hinners*, 2022 U.S. Dist. LEXIS 98018, at *78 (*Rhodes*, 129 Ohio St. 3d 304 at ¶ 16.).

As to the Trumbull County Commissioners, Commissioner Fuda, Commissioner Cantalamessa, and Sheriff Monroe, Frenchko has not made a request for public records that was obligated to be fulfilled. Sheriff Monroe did not have any text exchanges with any of the requested individuals from June 25, 2022 to August 8, 2022. Commissioner Fuda did not have any text exchanges responsive to this request. Commissioner Cantalamessa has produced his text messages responsive to this request that were imagined by Profile Imagining.

Nevertheless, Frenchko's request for all text message logs and text messages from numerous individuals over a one-and-a-half-month period was overly broad, ambiguous, and improper. Ohio Courts have consistently held that requests for all text messages or correspondence over a general period of time is overly broad and thus the requestor is not entitled to such disclosure. *See e.g., State ex rel. Davila v. City of E. Liverpool*, 2011-Ohio-1347, P26 (citing *State ex rel. Glasgow v. Jones* (2008), 119 Ohio St.3d 391); *State ex rel. Bristow v. Baxter*, 2018-Ohio-1973, ¶ 2, 12-16 (holding that requests for all email sent and received by multiple employees, for one-month periods each, was overly broad and improper.); *State ex rel. Glasgow*, 894 N.E.2d at ¶ 4-5, 16-19, (A broad request for categories of records (e-mail messages, text messages, written correspondence) sent and received by a public official during the five and one-half month period she had been in office was overly broad and improper.). Frenchko's second request on March 9, 2023 is even less clear as it does not define any time frame or relevant content. Under this well-

defined standard, Frenchko's request for approximately a month and a half of call logs and text messages from various public officials and employees is similarly overly broad and improper.

Lastly, Frenchko is unable to demonstrate she was aggrieved by any alleged destruction of public records. Pursuant to R.C. 149.351(C)(1), a person is not aggrieved by the destruction of public records if clear and convincing evidence shows that the request for a record was contrived as a pretext to create potential liability under this section. It is unclear why Frenchko waited until this present litigation to first follow up on her broad request. It also does not appear Frenchko addressed her public records request with the Clerk, who Frenchko herself asserts is responsible for fulfilling public records requests for the Commissioners. (See Meeting Minutes, Doc. 51-7, PageID#1331; Frenchko Depo. II, Doc. 50, PageID#1171-1174).

### 2. Plaintiff's Other Announcements and Communications Are Not Public Records Requests.

Frenchko points to twelve dates where she contends that she communicated her request for the content of Defendants' text messages to support her destruction of evidence claim. (Pl. Pt. MSJ., Doc. 47, PageID#973). However, it is important to look at what those communications requested, the matter the records were requested for, who the communications were provided to, and when the letters were provided. Looking at Frenchko's communications, only her August 8, 2022 and March 9, 2023 include requests for public records.

On July 7, 2022, Frenchko contends that she and her counsel announced "her punishment was political and unconstitutional[.]" Frenchko has not demonstrated any Defendant was aware of this announcement. Frenchko also has not established how her announcement amounted to a request for public records. In sum, the July 7, 2022 announcement was not a public records request and thus cannot form the basis for a destruction of public records claim.

On July 25, 2022, Frenchko's counsel wrote a letter addressed to Dennis, Mauro, and Frank. (July 25, 2022 Ltr, Doc. 51-5, PageID#1323). This letter was not sent to Sheriff Monroe, Sgt. Wix, or Sgt. Ross. (See id). The letter states that "Pursuant to Federal Rule of Civil Procedure, I am requesting the preservation of any and all documents and information pertaining to the Commissioner's Meeting held on July 7, 2022 when Niki Frenchko was arrested" and states that the request encompasses "Memos, Text messages, Phone call logs, Any messages from any social media platforms, [and] Texts or calls from private cell phones". (Id.). The letter further requests "that Sherriff Monroe send me the policy and procedure that correlates with the arrest of Ms. Frenchko at the Commissioners meeting on July 7, 2022. Also, the names of the 2 officers that arrested Ms. Frenchko also." (Id.). This letter was not sent to Wix or Ross, nor directed at any text messages from Sheriff Monroe, Wix, or Ross. (Id.). Commissioner Cantalamessa did provide the content of his text messages to Frenchko from July 7, 2022, and there are no text messages of Commissioner Fuda responsive to this request. (See Cantalamessa Texts, Doc. 47-10, PageID#1022). Moreover, the July 25, 2022 was not a public records request, rather, it was a request for these records to be preserved in the event of a subsequent civil action. In sum, the information requested in the July 25, 2022 was preserved, to the extent that such records existed, but as this communication is not a public records request it cannot serve the basis for Frenchko's destruction of public records claim.

On August 4, 2022, an order to preserve was issued in Frenchko's criminal matter. This order to preserve was included in a letter from Assistant Prosecuting Attorney, Raymond Srp., to the Trumbull County Commissioners and Sheriff Palmer on August 5, 2022, which only Sheriff Monroe recalled receiving. (*See* Aug 5 2022 Ltr, Doc. 51-8, PageID#1336). Subsequent communications demonstrate Sheriff Monroe was uncertain of the extent of the order to preserve,

35

specifically as it applied to text messages, and was following up. (See Srp Email, Doc. 47-7, PageID#1009-1010). On August 10, 2022, the Trumbull County Prosecutor informed Sheriff Monroe he needed to preserve his text messages under the order to preserve in Frenchko's criminal matter. Frenchko's counsel responded on August 24, 2022 stating that the order to preserve covered personal text messages, however, before any text messages were obtained by the prosecution, Frenchko's criminal matter was dismissed on August 29, 2022. (Dismissal, Doc. 51-19, PageID#1387). Frenchko is incorrect in stating "Defendants voluntarily dismiss their charges for insufficient evidence without prejudice, which is capable of refiling" since the record reflects that the charges were dismissed by the State of Ohio. (Id.). After the criminal matter was dismissed, the prosecution did not follow up to preserve any text messages or other evidence under the order to preserve, as it was no longer in effect. In other words, the requirement to preserve the evidence requested in the August 4, 2022 order ended when Frenchko's criminal matter was dismissed. Moreover, an order to preserve evidence entered in a criminal matter does not amount to a public records request.

On August 26, 2022, Frenchko's counsel "announced Frenchko's intent to file suit," however, Frenchko has not demonstrated any Defendant was aware of this announcement. Frenchko also has not demonstrated that this announcement included any request for public records. In sum, the August 26, 2022 announcement was not a public records request and thus cannot form the basis for a destruction of public records claim.

Frenchko then filed her Complaint on April 17, 2023, which claimed that Defendant Cantalamessa already destroyed text messages from approximately a year prior, and that she believed the other Defendants had too. Frenchko's Complaint is not a request for public records, and thus cannot form the basis for her destruction of public records claim.

36

### E.     PLAINTIFF IS NOT ENTITLED TO SPOLIATION SANCTIONS

"Spoliation" is the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for the destruction. *McDaniel v. Transcender, LLC*, 119 F. App'x 774, 782 (6th Cir. 2005). Courts in this circuit apply federal law to determine whether spoliation sanctions should be issued. *Adkins v. Wolever*, 554 F.3d 650, 652-53 (6th Cir. 2009).

To address questions about electronic discovery, federal courts turn to Federal Rule of Civil Procedure 37(e):

> **FAILURE TO PRESERVE ELECTRONICALLY STORED INFORMATION**. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

### 1.     Plaintiff is not Prejudiced by the Lost Text Messages

"The prejudice prong of the spoliation analysis relates to the issue of the relevance of the l[o]st data." *Yoe v. Crescent Sock Co.,* No. 1:15-cv-3-SKL, 2017 U.S. Dist. LEXIS 187900, at *11 (E.D. Tenn. Nov. 14, 2017). Frenchko's primary claim is that she was arrested without probable cause on July 7, 2022. The arrest and everything that led up to the arrest was captured on video and audio. (See Frenchko Cell Phone Video, Commissioner Hearing Room Video, July 7, 2022 meeting audio all manually filed). When events are captured on video, "[t]o the extent

that videos in the record show facts so clearly that a reasonable jury could view those facts in only one way, those facts should be viewed in the light depicted by the videos." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). Nobody disputes the facts depicted by the video and audio in this case.

The text message logs confirm that there were no text messages in the time period leading up to Frenchko's arrest amongst any of the Defendants except a few texts between Sgts. Wix and Ross, and Sgt. Wix and Sheriff Monroe, which occurred approximately a month prior to Frenchko's arrest. Even if there were text messages to be produced, those text messages and the text messages with other non-parties have no relevance to whether Frenchko's arrest was lawful or not. The only information that a text might reveal is the subjective feelings of the texter. But the subjective feelings of Sgts. Wix and Ross (or any other Defendant) do not have any relevance to whether the objective facts could lead a reasonable officer to conclude there was probable cause: "Thus, when reviewing an arrest, we ask whether the circumstances, viewed objectively, justify [the challenged] action, and if so, conclude that action was reasonable *whatever* the subjective intent motivating the relevant officials." *Nieves*, 139 S. Ct. at 1725 (internal quotations omitted) (emphasis in original). A particular officer's state of mind is simply irrelevant, and it provides no basis for invalidating an arrest. *Id*. Thus, the lost text messages have no relevance to the analysis of probable cause in this case.

The text messages have no relevance to Frenchko's malicious prosecution claim. As with her arrest, the malicious prosecution claim rises or falls with the existence or non-existence of probable cause for her arrest.

Similarly, the text messages have no relevance to Frenchko's claims of battery, assault, trespass to chattels, or conversion. As stated above, Frenchko's July 7, 2022 arrest was captured

on video as was the March 9, 2023 meeting in which Frenchko alleges battery, assault, unlawful seizure, trespass to chattels, and conversion. The analysis of those state law torts begins and ends with the objective videos.

What about Frenchko's claims of conspiracy? "A claim for civil conspiracy requires proof of 'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damage.'" *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419, 1995 Ohio 61, 650 N.E.2d 863 (Ohio 1995). One would expect that, if there were an actual conspiracy, there would be text communications amongst the alleged conspirators. Here, the undisputed text records show that there were no text communications amongst the Defendants at any point in time near Frenchko's arrest. (Exhibits 1, 2 and 3 attached hereto; and *see* Cantalamessa Texts, Doc. 47-10). The point is this: Frenchko's conspiracy claim is not prejudiced by the missing text messages because there are no text messages between the Defendants leading up to her arrest.

The only claim in which text messages may have some relevance is Frenchko's First Amendment retaliation claim. Within that claim, the only Defendants whose text messages might matter are Sgts. Wix and Ross. Recall that a First Amendment claim requires adverse action. Sgts. Wix and Ross arrested (read: adverse action) Frenchko on July 7, 2022. As argued above, none of the other Defendants participated in the arrest. Therefore, the other Defendants cannot be liable for retaliation because they did not take adverse action against Frenchko.

Sgts. Wix and Ross have testified that they held no animus toward Niki Frenchko. They did not even know her. (Ross Decl., Doc. 51-11, ¶ 7, PageID # 1344; Wix Decl., Doc. 51-12, ¶ 7, PageID#1360). Frenchko has testified that she had no reason to believe that Wix and Ross had any animus towards her. (Frenchko Depo., Doc. 50, PageID # 1221). Sgts. Wix and Ross were cross-

examined on the identities of the people they texted with on or about July 7, 2022. We know that they did not text with any of the other Defendants. (See Text Records attached as Exhibits 1, 2, and 3). So who did they text with? They texted with family members and other deputies not involved in this case. (Wix Depo., Doc. 45-1, PageID#753-54, 759; Ross Depo., Doc. 46-1, PageID#875, 884-91). It is possible that Sgt. Wix's and Sgt. Ross's lost text messages might contain some evidence of animus? Sure. But given that there is no other evidence in the record that Sgts. Wix and Ross had any animus toward Frenchko or motive to have animus towards Frenchko, Frenchko's assertion that these lost text messages prejudice her claim are speculative at best.

In sum, Frank Fuda does not text so there are no missing text messages attributable to him. Mauro Cantalamessa's text messages have been preserved, so there are no missing text messages attributable to him. The Defendants did not text each other. The only missing texts are those of Sgt. Wix, Sgt. Ross and Sheriff Monroe and, as argued above, those texts are not relevant to the resolution of the claims made by Frenchko in this case. Accordingly, Frenchko is not entitled to spoliation sanctions.

### 2. There Is No Evidence That Defendants Acted With The Intent To Deprive Plaintiff Of The Information's Use In The Litigation

Under subsection (e)(2), before certain sanctions are imposed, the court 'must find that the party that caused the loss acted with the intent to deprive another party of the information's use in the litigation.' *Yoe v. Crescent Sock Co.*, Case No. 1:15-cv-3-SKL, 2017 U.S. Dist. LEXIS 187900, 2017 WL 5479932, at *21 (E.D. Tenn. 2017). "Rule 37(e)(2)'s 'intent standard is stringent and does not parallel other discovery standards.'" *Culhane v. Wal-Mart Supercenter*, 364 F. Supp. 3d 768, 773 (E.D. Mich. 2019) (quoting *Moody v. CSX Transportation, Inc.*, 271 F. Supp. 3d 410, 431 (W.D.N.Y. 2017). "A party seeking sanctions under Rule 37(e)(2) must show that the spoliating party had 'intent' to deprive [the moving party] of the information's use." *Franklin v.*

*Shelby Cnty. Bd. of Educ.*, No. 2:20-cv-02812-JPM-tmp, 2021 U.S. Dist. LEXIS 224827, 2021 WL 5449005, at *29 (W.D. Tenn. 2021) "A showing of negligence or even gross negligence will not do the trick." *Applebaum v. Target Corp.*, 831 F.3d 740, 745 (6th Cir. 2016) (citing Fed. R. Civ. P. 37(e), 2015 Advisory Comm. Note). There is no evidence of intent in this case.

First, Sgts. Ross and Wix have never been sued before. (Ross Decl., Doc. 51-11, ¶ 50, PageID#1348; Wix Decl., Doc. 51-12, ¶ 49, PageID#1364). They did not know that they needed to preserve their text messages. (*Id*.). Frenchko's counsel never sent a litigation hold letter to them. They testified that they did not know they were going to get sued:

> Q. Are you aware whether or not at any time after the arrest that either Commissioner Frenchko or her counsel had threatened litigation against the County?
>
> A. No.

(Wix Depo., Doc. 45-1, PageID#756). To the extent that Frenchko's counsel's communication with the prosecutor could be considered evidence of future civil litigation, the prosecutor never spoke with Sgts. Wix and Ross. (Wix Decl., Doc. 51-11, ¶ 49, PageID#1348; Ross Decl., Doc. 51-12, ¶ 48, PageID#1364).

Second, there is no evidence that Sgt. Wix or Ross intended to deprive Frenchko of their text messages because of this litigation. Sgt. Wix does not even know how or why the text messages are no longer on his phone:

> Q. What does that mean?
>
> A. When you requested 'em I didn't have them.
>
> Q. Why not?
>
> A. I'm assuming they fell off. I get a lot of messages. I don't know if they rewrite, overwrite, but I know they weren't deleted.
>
> Q. Your testimony today is that your phone automatically deletes them?

A.      That I have no idea. I can't say that. I just know they weren't there.

Q.      But you didn't take pictures of any text messages that day?

A.      I did not.

Q.      But you were aware that there was a preservation letter?

A.      At the time?

Q.      Yeah. After July 7th, 2022, were you aware that there was request for documents and preservation of text messages?

A.       Not that I recall, no.

(Wix Depo., Doc. 45-1, PageID#760). Sgt. Wix was not even aware of how to use or change the text settings on his phone. (*Id*. at 761-62). Sgt. Ross had a habit of deleting text messages when new deputies would join his work text group:

Q.      Do you have your text messages from that day?

A.      No.

Q.      Why not?

A.      Well, typically – I'm in several group chats with several friends, fellow employees, deputies, and if -- say there's a transport unit of five of us and then somebody new comes in, that group chat is no good anymore, so we'll start a new group chat with that person in it, and now these messages are just taking up space on my phone. So to create space on my phone, I periodically purge my messages and delete them.

Q.      Okay. So you manually delete your text messages periodically?

A.      Correct.

Q.      Okay. And how frequently do you do that?

A.      I don't know. Whenever I -- could be once a month. Whenever I just decide to go through it and do it.

Q.      And you do it regardless of whether or not it's communications between deputies?

A.      Correct.

Q.      Related to work business?

A.      Correct.

(Ross Depo., Doc. 46-1, PageID#875-76). At bottom, there is no evidence that Sgts. Wix and Ross had the intent to deprive Frenchko of their text messages.

Similarly, there is no evidence Commissioner Fuda, Commissioner Cantalamessa, or Sheriff Monroe attempted to deprive Frenchko of their text messages. Commissioner Fuda does not text, and Frenchko does not dispute this. Frenchko was provided Commissioner Cantalamessa's text messages so she cannot argue she was deprived of this information. There is similarly no showing that Sheriff Monroe deleted text messages in an attempt to deprive Frenchko of his messages. Sheriff Monroe had a single text exchange with Sgt. Wix on May 19, 2022. There are no other text messages between Sheriff Monroe and any other Defendant prior to Frenchko's arrest. Moreover, the May 19, 2022 exchange occurred before Frenchko read the letter from the inmate's mother at the June 1, 2022 meeting.

Frenchko attempts to rely on her July 25, 2022 letter; however, this letter did not request any text messages from Sheriff Monroe, Sgt. Wix, or Sgt. Ross. Frenchko did receive Cantalamessa's text messages from July 7, 2022 as requested in the letter, and Commissioner Fuda did not have any texts responsive to this request. Accordingly, the July 25, 2022 letter requesting records be preserved for a subsequent federal civil action was complied with. Frenchko similarly cannot rely on the order to preserve in her criminal matter, because any duty to preserve evidence expired when Frenchko's criminal matter was dismissed in August 2022.

In sum, Frenchko cannot establish that any Defendant attempted to deprive her of their text messages, and thus sanctions under Fed. R. Civ. P. 37(e)(2) are not warranted.[7]

_____

[7] Defendants do not dispute that text messages can be public records and there may be an obligation to preserve the text messages under Ohio's public records law. But that has no relevance to spoliation sanctions under Rule 37. The Staff Notes to Rule 37 state in pertinent part: "The fact

### 3. Even if the Court Finds that Plaintiff was Prejudiced, any Sanction Should be Proportional to the Actual Prejudice.

Frenchko requests a laundry list of draconian sanctions against all Defendants including the denial of summary judgment and the forfeiture of qualified immunity. Even if there was some prejudice, such sanctions are not warranted. Under Rule 37, the remedy should fit the wrong, and the severe measures authorized by this subdivision should not be used when the information lost was relatively unimportant or lesser measures such as those specified in subdivision (e)(1) would be sufficient to redress the loss. As stated above, this is primarily a Fourth Amendment unlawful seizure case. The information lost is not relevant to Frenchko's primary claim. The information lost is not relevant to Frenchko's facial challenge claim, battery claims, malicious prosecution claims, trespass claims, conspiracy claims or conversion claim. At best, the information lost may be relevant to one claim and, even in that claim, there is no evidence that the text messages would have revealed any significant evidence to support that claim.

Moreover, Frenchko's requests for inferences are largely contradicted by Defendants text message logs. Defendants' text logs do not demonstrate any Defendants texting one another leading up to or following Frenchko's arrest. Accordingly, the text message logs demonstrate there is no viable inferences relating to Defendants texting one another before and after Frenchko's arrest, further demonstrating her requested inferences are not proportional to her allegations of harm.

---

that a party had an independent obligation to preserve information does not necessarily mean that it had such a duty with respect to the litigation, and the fact that the party failed to observe some other preservation obligation does not itself prove that its efforts to preserve were not reasonable with respect to a particular case."

## IV. __CONCLUSION__

For the forgoing reasons, Defendants respectfully request this Court deny Frenchko's partial Motion for Summary Judgment as well as her request for Sanctions.

Respectfully Submitted,

s/ Daniel T. Downey
Daniel T. Downey (0063753)
Helen K. Sudhoff (0101259)
Jennifer M. Meyer (0077853)
**FISHEL DOWNEY ALBRECHT & RIEPENHOFF LLP**
7775 Walton Parkway, Suite 200
New Albany, OH 43054
(614) 221-1216 – Telephone
(614) 221-8769 – Facsimile
ddowney@fisheldowney.com
hsudhoff@fisheldowney.com
jmeyer@fisheldowney.com
*Counsel for Defendants Sheriff Paul Monroe, Trumbull County, Trumbull County Board of Commissioners, Trumbull County Sheriff's Office, Mauro Cantalamessa, and Frank Fuda*


/s/ Andrew N. Yosowitz
Andrew N. Yosowitz (0075306)
Matthew S. Teetor (0087009)
Teetor Westfall, LLC
200 E. Campus View Blvd. Suite 200
Columbus, OH 43235
(614) 412-4000 – Telephone
(614) 412-9012 – Facsimile
ayosowitz@teetorlaw.com
mteetor@teetorlaw.com
*Counsel for Defendants Harold Wix and Robert Ross*

45

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT AND MOTION FOR SANCTIONS (DOC. 47)** was served, via the Court's CM/ECF system, upon all counsel this 22nd day of November, 2023.

s/ Daniel T. Downey
Daniel T. Downey (0063753)
**FISHEL DOWNEY ALBRECHT & RIEPENHOFF LLP**
*Counsel for Defendants Sheriff Paul Monroe, Trumbull County, Trumbull County Board of Commissioners, Trumbull County Sheriff's Office, Mauro Cantalamessa, and Frank Fuda*