**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NIKI FRENCHKO, | : | |
| Plaintiff, | : | Case No. 4:23-cv-00781 |
| *vs.* | : | Judge J. Philip Calabrese |
| PAUL MONROE, *et al.*, | : | |
| Defendants. | : | |

**DEFENDANTS' JOINT REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT (DOC. 51)[1]**

Defendants submit the following Joint Reply in Support of their Motion for Summary Judgment.

Respectfully Submitted,

/s/ Andrew N. Yosowitz
Andrew N. Yosowitz (0075306)
Matthew S. Teetor (0087009)
Teetor Westfall, LLC
200 E. Campus View Blvd. Suite 200
Columbus, OH  43235
(614) 412-4000 – Telephone
(614) 412-9012 – Facsimile
ayosowitz@teetorlaw.com
mteetor@teetorlaw.com
*Counsel for Defendants Harold Wix and Robert Ross*

---

[1] The Case Management and Scheduling Order did not contain a deadline for reply briefs. (See Case Management Plan and Scheduling Order, Doc. 26, PageID#191). Pursuant to the Case Management Plan (PageID#192), the Undersigned contacted the Court to confirm that they could file a reply brief. The Undersigned were directed to refer to the Court's Civil Standing Order. Section 9.C. of the Court's Civil Standing Order contemplates the filing of reply briefs.

s/ Daniel T. Downey
Daniel T. Downey (0063753)
Helen K. Sudhoff (0101259)
**FISHEL DOWNEY ALBRECHT & RIEPENHOFF LLP**
7775 Walton Parkway, Suite 200
New Albany, OH  43054
(614) 221-1216 – Telephone
(614) 221-8769 – Facsimile
ddowney@fisheldowney.com
hsudhoff@fisheldowney.com
*Counsel for Defendants Sheriff Paul Monroe,*
*Trumbull County, Trumbull County Board of*
*Commissioners, Trumbull County Sheriff's Office,*
*Mauro Cantalamessa, and Frank Fuda*

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ....................................................................................................... 3

TABLE OF AUTHORITIES ................................................................................................. 5

I.     DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S FOURTH AMENDMENT CLAIMS ............................................................................. 2

     A.     DEFENDANTS WIX AND ROSS ARE ENTITLED TO QUALIFIED IMMUNITY ................................................................................................ 2

          1.     There was Probable Cause to Arrest and Charge Plaintiff with Disturbing a Lawful Meeting ....................................................... 2

          2.     Plaintiff's Arguments Lack Merit ............................................... 5

          3.     Sgts. Wix and Ross Did Not Violate Clearly Established Law .................. 7

          4.     Defendants Fuda, Cantalamessa and Monroe are Entitled to Qualified Immunity .................................................................. 7

II.    DEFENDANTS DID NOT CONSPIRE TO ARREST PLAINTIFF. .............................. 10

III.   DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S FACIAL CHALLENGE TO R.C. § 2917.12 ............................................. 11

IV.   DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S FIRST AMENDMENT CLAIM ................................................................ 12

V.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S STATE LAW CLAIMS ............................................................................ 15

     A.     PLAINTIFF'S PUBLC RECORDS CLAIM FAILS ........................................... 15

     B.     PLAINTIFF'S ASSAULT AND BATTERY CLAIMS LACK MERIT .............. 18

          1.     Sgts. Wix and Ross Are Not Liable for Battery ....................... 18

     C.     PLAINTIFF'S CLAIMS ARISING FROM MARCH 9, 2023 LACK MERIT.... 19

          1.     Sheriff Monroe is not Liable for Assault, Battery, or Any Constitutional Violation Arising from March 9, 2023. ........................... 19

          2.     There is no *Monell* Liability Attributable to Trumbull County, Ohio or the Trumbull County Sheriff's Department. ............................... 21

          3.     Sheriff Monroe did not Commit a Trespass to Chattels or Conversion.... 21

     D.     PLAINTIFF CANNOT USE R.C. § 2307.60 or R.C. § 2921.45 AS A BASIS FOR LIABILITY ................................................................................ 22

3

CERTIFICATE OF SERVICE ........................................................................................................ 25

# TABLE OF AUTHORITIES

Page

## Cases

*Aldini v. Kroger Co. of Mich.*, 628 F. App'x 347, 352 (6th Cir. 2015) ......................................... 15

*Alexander v. Carter for Byrd*, 733 F. App'x 256, 267 (6th Cir. 2018)........................................... 8

*Alley v. Bettencourt*, 134 Ohio App. 3d 303, 313, 730 N.E.2d 1067 (Ohio Ct. App. 1999) ......... 18

*Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L.Ed. 2d 1149 (2011) ................... 7

*Barrera v. City of Mount Pleasant*, 12 F.4th 617, 620 (6th Cir. 2021) ................................. 2, 4, 7, 8

*Bartlett v. Washington*, 793 F. App'x 403, 408-09 (6th Cir. 2019) ................................................ 15

*Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ......................................11, 22

*Burton v. City of Detroit* Case No. 12-1222, 2022 U.S. App. LEXIS 32566 at *2
    (Sixth Cir. Nov. 23, 2022) ................................................................................... 4, 6, 7

*Butler v. Jordan*, 92 Ohio St. 3d 354, 357, 2001 Ohio 204, 750 N.E.2d 554, 558 (Ohio 2001) .. 23

*Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 906 (6th Cir. 2019) .................................................. 19

*Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 441 (6th Cir. 2016) ...........................................11

*City of Columbus v. Doyle*, 149 Ohio App.3d 164, 2002-Ohio-4490, 776 N.E.2d 537,
    (Ohio Ct. App. 2002) .......................................................................................... 3, 4, 7, 12

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797, 105 S. Ct. 3439,
    87 L. Ed. 2d 567 (1985) ................................................................................................ 20

*Devenpeck v. Alford*, 543 U.S. 146 (2004) .................................................................................. 8

*Gerber v. Veltri*, 203 F. Supp. 3d 846, 852 (N.D. Ohio 2016) ..................................................... 20

*Harper v. City of Cleveland*, 781 F. App'x 389, 396 (6th Cir. 2019)........................................... 14

*Hartman v. Moore*, 547 U.S. 250, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006) ..................... 12, 20

*Hinners v. O'Shea*, 2022 U.S. Dist. LEXIS 98018 (N.D. Ohio May 31, 2022) ..................... 12, 17

*Ison v. Madison Local School Dist.* and *Wood v. Eubanks* 25 F.4th 414, 423 (6th Cir. 2022) .... 6, 7

*Jones v. City of Elyria*, 947 F.3d 905, 913 (6th Cir. 2020)......................................................... 1

*Kowall v. Benson*, 18 F.4th 542, 549 (6th Cir. 2021) ................................................................. 15

*Love v. City of Port Clinton* 37 Ohio St.3d 98, 98 (Ohio 1988) ............................................ 18, 20

*Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986) .......................... 7

*McRae v. Icon Entertainment Group, Inc.*, 10th Dist. No. 08AP-820, 2009-Ohio-5119, ¶ 8)...... 20

*Michigan v. DeFillippo*, 443 U.S. 31 (1979) .........................................................................2, 11

*Nieves v. Bartlett*, 139 S. Ct. 1715, 204 L. Ed. 2d 1 (2019)................................................... 12, 13

*Oberer Land Devs. Ltd. v. Sugarcreek Township*, 2022 U.S. App. LEXIS 15290, 2022 WL 1773722, at *6 (6th Cir. June 1, 2022) ..................................................................... 15

*Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 584 (6th Cir. 2011) ............. 15

*Palmer v. Foley*, 2nd Dist. No. 21235, 2006-Ohio-4013, ¶ 16 (Ohio Ct. App. 2006) ................. 23

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S. Ct. 1292, 1299 (1986)...................... 21

*Qualls v. Peregrine Health Servs.*, 2022-Ohio-4644, P31 ......................................................... 20

*Robertson v. Lucas*, 753 F.3d 606, 617 (6th Cir. 2014).............................................................. 8

*S.H.A.R.K. v. Metro Parks Serving Summit Cty.*, 499 F.3d 553, 559 (6th Cir. 2007)................... 20

*Sadler v. Michigan Dept. of Corr.*, No. 09-11375, 2011 U.S. Dist. LEXIS 64426, 2011 WL 2462028, at *9 (E.D. Mich. Apr. 21, 2011)............................................................... 10

*Sampson v. Village of Mackinaw City*, 685 F. App'x 407, 418 (6th Cir. 2017) .......................... 15

*Stafford v. Clever Investigations, Inc.*, 2007-Ohio-5086, P9 ................................................... 20

*State v. Brand*, 2 Ohio App.3d 460, 442 N.E.2d 805 (Ohio Ct. App. 1981).........................4, 7, 11

*Tarver v. Calex Corp.*, 125 Ohio App. 3d 468, 483-84, 708 N.E.2d 1041 (1998)...................... 20

*United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) ..................................................... 5

*Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) ....................................................... 10

*Whren v. United States*, 517 U.S. 806, 814, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996)............. 5, 9

*Wood v. Third Fed. Sav. & Loan Ass'n*, 2023 U.S. App. LEXIS 30951 (6th Cir. Nov. 20, 2023) ............................................................................................11, 22

**Statutes**

R.C. § 2744.03(A)(6)................................................................................................................ 22

R.C. § 2901.22(A)........................................................................................................2, 3, 10, 11

R.C. 2917.12(A)(1) ............................................................................................................... 1

R.C. 2921.45 ....................................................................................................................... 22

**Other Authorities**

Mich. Comp. Laws § 750.170............................................................................................ 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

NIKI FRENCHKO,                                     :

        Plaintiff,                         :         Case No. 4:23-cv-00781

*vs.*                                                   :         Judge J. Philip Calabrese

PAUL MONROE, *et al.*,                            :

        Defendants.                     :

## DEFENDANTS' JOINT REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT (DOC. 51)

Plaintiff's Response to Defendants' Joint Motion for Summary Judgment (Doc. 51) emotes but does not convince. One glaring deficiency in Plaintiff's Response (and in Plaintiff's Motion for Partial Summary Judgment) is that Plaintiff consistently lumps the defendants together, making allegations against "the Defendants" collectively. Plaintiff's Response is antithetical to the qualified immunity analysis: "[W]e do not lump together each of the relevant government actors. Rather we assess each actor's liability on an individual basis." *Jones v. City of Elyria*, 947 F.3d 905, 913 (6th Cir. 2020). That deficiency is not Plaintiff's only problem. Plaintiff does not meet her burden to overcome qualified immunity. In her 48-page brief, Plaintiff devotes just over a page to her argument that Defendants (collectively) are not entitled to qualified immunity. However, the few cases cited by Plaintiff are inapposite and do not meet Plaintiff's burden to show that any Defendant violated clearly established law. For the additional reasons that follow below, and for the reasons set forth in Defendants' Motion for Summary Judgment, Defendants are entitled to summary judgment on all claims.

1

I.   **DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S FOURTH AMENDMENT CLAIMS**

   A.   **DEFENDANTS WIX AND ROSS ARE ENTITLED TO QUALIFIED IMMUNITY**

      1.   **There was Probable Cause to Arrest and Charge Plaintiff with Disturbing a Lawful Meeting**

R.C. 2917.12(A)(1) states that "[n]o person, with purpose to prevent or disrupt a lawful meeting, procession, or gathering, shall . . . [d]o any act which obstructs or interferes with the due conduct of such meeting, procession, or gathering[.]"

An officer has probable cause to arrest a suspect when the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979). An objective, not a subjective, standard applies. *Barrera v. City of Mount Pleasant*, 12 F.4th 617, 620 (6th Cir. 2021). That leaves this question: Was it objectively reasonable for a deputy in Wix and Ross's position to think that Plaintiff's repeated interruptions were a violation of Ohio law? *Id*. at 622.

There is no dispute that Plaintiff is a person and that the July 7, 2022 Commissioners' meeting was a lawful meeting or gathering. There is no dispute that Plaintiff interfered with or obstructed the meeting. In fact, as discussed *infra*, Plaintiff concedes that point. During the meeting Commissioner Fuda directed the Clerk to read a letter into the public record. (Frenchko Cell Phone Video at 36:27). For over 3 minutes, Plaintiff made no objection to the reading of the letter. (Frenchko Cell Phone Video between 36:27 and 39:33). Between 39:33 and 44:40, Plaintiff verbally interrupts the Clerk at least 4 times with her [Plaintiff's] own commentary on the letter. (*Id*. at 39:33 to 44:40). Each interruption causes the Clerk to stop reading the letter into the record.

(*Id*.). After the letter is completed, Plaintiff begins providing her opinions regarding the letter and the Sheriff's Office before veering off into discussion about an unrelated issue with the county's jobs and family services department. (*Id*. at 44:40 to 47:30). The presiding Commissioner, Commissioner Fuda, attempts to move on with the meeting, but Plaintiff just continues to speak. (*Id*.). At that point, Sgts. Wix and Ross remove Plaintiff from the meeting.

There is no dispute Plaintiff acted purposely to disrupt the meeting. Under Ohio law, a person acts purposely when it is the person's specific intention to cause a certain result, *or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.* R.C. § 2901.22(A) (Emphasis added). To prove a violation of the statute, it is not necessary to prove that the suspect actually intended to disrupt the meeting; it is sufficient to prove that the suspect intended the conduct in which he/she engaged and those actions disrupted the meeting. *City of Columbus v. Doyle*, 149 Ohio App.3d 164, 2002-Ohio-4490, 776 N.E.2d 537, ¶¶ 27-28 (Ohio Ct. App. 2002). Plaintiff intended the conduct in which she engaged:

> Q.    Okay. And do you believe it to be appropriate to disrupt her ability to read that letter uninterrupted?
>
> MR. BETRAS: Objection. Go ahead and answer, Niki.
>
> A.    Absolutely.
>
> *       *       *
>
> Q.    And you don't deny that you interrupted the clerk's reading of the letter, correct?
>
> A.    *That I interrupted her reading of the – correct*, and I was interrupted and yelled at and insulted during that meeting and numerous other meetings but there was never any consequence for anyone else unless their speech was critical of the operations of the county, especially the sheriff.

3

(Frenchko Depo., Vol I, Doc. 49, PageID#1042-1043; Frenchko Depo., Vol. II, Doc. 50, PageID#1216) (Emphasis added). A reasonable officer witnessing Plaintiff's repeated disruptions when (1) the clerk was trying to read a letter into the record and (2) the presiding commissioner was trying to move on could believe that there was probable cause to arrest Plaintiff for disturbing a lawful meeting.

Favorable case law goes a long way to showing that a deputy acted reasonably. *Barrera*, 12 F.4th at 621. Here, the case law supports probable cause. *State v. Brand*, 2 Ohio App.3d 460, 442 N.E.2d 805 (Ohio Ct. App. 1981) and *City of Columbus v. Doyle*, *supra*, confirm that repeated interruptions of another speaker during a lawful meeting constitute a violation of R.C. § 2917.12(A)(1). In *Brand*, the defendant interrupted a speech of the late Rosalyn Carter by shouting statements supporting the Iranian revolution for approximately one minute. *Brand*, 442 N.E.2d at 807-08. This one-minute disruption was sufficient to violate the statute because it caused Mrs. Carter to stop talking for about 45 seconds. *Id*. at 809. In *Doyle*, the defendant continued speaking after his three-minute time limit had ended. 2002-Ohio-4490, ¶ 6. The defendant was asked to stop, but refused. *Id*. at ¶ 7. The defendant's conviction for violating a local ordinance substantially similar to R.C. § 2917.12(A)(1) was upheld. *Id*. at ¶¶ 24, 30. Based on *Brand, Doyle* and the plain text of R.C. § 2917.12(A)(1), a reasonable officer could believe that Plaintiff's repeated interruptions at the Commissioners' meeting violated the statute.

If *Brand* and *Doyle* were not enough, the Sixth Circuit's recent opinion in *Burton v. City of Detroit* takes us the rest of the way. *Burton* makes clear that elected or appointed officials can be arrested for disturbing their own meetings. Like Plaintiff, Burton was a commissioner for a public body. Case No. 12-1222, 2022 U.S. App. LEXIS 32566 at *2 (Sixth Cir. Nov. 23, 2022). Like this case, Burton interrupted and "continued speaking out of order." *Id*. When Burton

continued speaking out of order—just like the Plaintiff did in this case—he was arrested for a violation of Mich. Comp. Laws § 750.170[2]. *Id*. at *4. The Sixth Circuit dismissed Burton's § 1983 claims alleging First and Fourth Amendment violations. *Id*. at *7-11. Tellingly, Plaintiff completely ignores *Burton, Brand* and *Doyle* in her Response to Defendants' Joint Motion for Summary Judgment. This point becomes more salient when one accounts for the reality that Plaintiff does not identify any cases failing to uphold probable cause in similar circumstances.

### 2. Plaintiff's Arguments Lack Merit

Plaintiff makes several arguments to try to vitiate probable cause, but none of them have merit. First, Plaintiff argues that her disruption is not unlawful because the Commissioners' meetings were always disruptive: "You cannot disrupt inherent disorder." (Pltf. Resp., Doc. 54, PageID # 1404). Implicit in Plaintiff's argument is a concession that her actions were disruptive. More importantly, Plaintiff's argument that others may have been disruptive in meetings but were not arrested does not (1) excuse Plaintiff's disruption and (2) is not relevant to the Fourth Amendment probable cause inquiry. An arrest is objectively reasonable if there was probable cause at the time of the arrest. If so, that action is reasonable "whatever the subjective intent" motivating the relevant officials. *Whren v. United States*, 517 U.S. 806, 814, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996). It is irrelevant whether the arrest is sufficiently ordinary or routine according to the general practice of the police department or the particular officer making the arrest. *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993). Stated differently, it is irrelevant to the Fourth

---

[2] Like its Ohio counterpart, Mich. Comp. Laws § 750.170 makes it a misdemeanor to make or excite any disturbance or contention at any public meeting where citizens are peaceably and lawfully assembled. Michigan courts have defined a disturbance as any act causing annoyance, disquiet, agitation, or derangement to another, or interrupting his peace. Disturbance includes an interruption of peace and quiet; a violation of public order and decorum.

Amendment analysis whether any or all of the Commissioners were also disruptive in prior meetings.

Plaintiff also argues that Defendant Fuda violated Robert's Rules of Order. The Sixth Circuit has squarely rejected Frenchko's argument that the validity of an arrest for disrupting a public meeting depends on following Robert's Rules:

> [Plaintiff's] only argument against probable cause is that the Officials did not follow Robert's Rules of Order when they arrested and removed him, because the Rules state that board members may only be removed from a meeting by majority vote. However, we have never recognized that parliamentary meeting rules supersede validly enacted state law. *Regardless of whether the Rules were followed or not, [Plaintiff] disturbed the meeting and therefore violated state law, providing the Officials with probable cause to arrest him.*

*Burton v. City of Detroit*, No. 22-1222, 2022 U.S. App. LEXIS 32566, at *9 (6th Cir. Nov. 23, 2022) (emphasis added).

Finally, Plaintiff's reliance on *Ison v. Madison Local School Dist.* and *Wood v. Eubanks* is misplaced. Neither case deals with R.C. § 2917.12 or a meeting disruption statute. *Ison* is a facial challenge to a school board's public participation policy. 3 F.4th 887, 891 (6th Cir. 2021). *Ison* does not involve an arrest or conduct that disrupts a public meeting. *Wood v. Eubanks* concerns a disorderly conduct arrest at a county fair following the repeated use of profanity and insults towards police officers. 25 F.4th 414, 423 (6th Cir. 2022). The Sixth Circuit held that there was no probable cause for arrest under the disorderly conduct statute because the circumstances did not create a situation where violence was likely to result. *Id*. at 425. The disorderly conduct statute and disturbing a lawful meeting statute regulate different conduct in different situations. *Wood* does not involve conduct at a public meeting. Nobody is arguing that Plaintiff's conduct at the Commissioners' meeting constituted 'fighting words' under the disorderly conduct statute. Accordingly, the holding in *Wood* is not applicable to this case.

### 3. Sgts. Wix and Ross Did Not Violate Clearly Established Law

The second prong of the qualified immunity tests asks whether or not officers violated clearly established law. *Barrera*, 12 F.4th at 621. This question asks whether, at the time of the officer's conduct, the law was "sufficient clear that every reasonable official would [understand] that what he is doing" violates the law—so clear that the invalidity of the officer's actions was "beyond debate." *Id*. citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L.Ed. 2d 1149 (2011). This rigorous standard covers "all but the plainly incompetent" officer. *Id*. citing *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986). As a result, even if Sgts. Wix and Ross lacked actual probable cause to arrest Plaintiff, they are entitled to qualified immunity if they reasonably but mistakenly concluded that probable cause was present. *Id*.

In this case, Plaintiff has not cited "a single precedent—much less a controlling case or robust consensus of cases finding a Fourth Amendment violation 'under similar circumstances.'" *Id*. at 624-25. In the recent case of *Burton v. City of Detroit*, the Sixth Circuit upheld an arrest under similar circumstances. That case alone shows that Sgts. Wix and Ross did not violate clearly established law. *State v. Brand* and *City of Columbus v. Doyle* also undercut the idea that Sgts. Wix and Ross made an unreasonable mistake or violated clearly established law during this encounter. Lastly, neither *Ison* nor *Wood* "[found] a Fourth Amendment violation 'under similar circumstances'" to the one here, let alone put the issue "beyond debate." *Id*. at 625. Accordingly, Sgts. Wix and Ross are entitled to qualified immunity.

### 4. Defendants Fuda, Cantalamessa and Monroe are Entitled to Qualified Immunity

Defendants Fuda, Cantalamessa and Monroe are entitled to qualified immunity for all of the same reasons as Sgts. Wix and Ross. However, they are also entitled to qualified immunity because they did not participate in the arrest or charging of Plaintiff. Without citation to any case

law, let alone, clearly established case law, Plaintiff argues that Defendants Fuda and Cantalamessa caused Plaintiff's arrest because they stated that Plaintiff was disrupting the meeting shortly before the arrest. Plaintiff's arrest theory against Defendants Fuda and Cantalamessa is insufficient as a matter of law. To be liable for an arrest, an individual is required to have personally participated in the arrest. *Robertson v. Lucas*, 753 F.3d 606, 617 (6th Cir. 2014) (dismissing false-arrest claims against DEA agent who only worked surveillance and was not involved in arrest); *Alexander v. Carter for Byrd*, 733 F. App'x 256, 267 (6th Cir. 2018) (dismissing false-arrest claims against sheriff deputy who did not participate in arrest except for presence on the scene and consultation with arresting officer regarding charges). Because they did not participate in the arrest, Defendants Fuda, Cantalamessa and Monroe cannot be liable for unlawful seizure under the Fourth Amendment.

Notably, Plaintiff incorrectly claims that "Defendant Cantalamessa was receiving text messages from a department head planning to remove Frenchko from the meeting right before she was arrested" when Commissioner Cantalamessa's text messages demonstrate that Diane Drawl merely texted him "You can have her removed for being disruptive in a public meeting" and that Commissioner Cantalamessa did not respond to this message before Plaintiff's arrest. (Pl. Opp., Doc. 54, PageID#1420). Moreover, Commissioner Cantalamessa did not arrest Plaintiff, nor did he order her to be arrested. (*See generally*, Def. MSJ, Doc. 51, Ex. M, Frenchko Cell Phone Video). Plaintiff is correct that Commissioner Cantalamessa exchanged text messages following Plaintiff's arrest, but Commissioner Cantalamessa's subjective feelings regarding Plaintiff's arrest or Plaintiff herself does not play any role in the Fourth Amendment analysis. (Pl. Opp., Doc. 54, PageID#1420); and *see Barrera v. City of Mount Pleasant*, 12 F. 4th 617, 624 (6th Cir. 2021) (citing *Devenpeck v. Alford*, 543 U.S. 146 (2004); *Whren v. United States*, 517 U.S. 806, 810-13

(1996)). Moreover, any subjective feelings of Commissioner Cantalamessa do not negate his entitlement to qualified immunity.

Similarly, Sheriff Monroe cannot be liable for malicious prosecution under the Fourth Amendment when he did not participate in the decision to charge Plaintiff. Sgts. Wix and Ross made the decision to charge Frenchko, completed the complaint and filed the complaint in Warren Municipal Court. (Ross Decl., Doc. 51-11, ¶¶ 45, 48, PageID # 1347-48; Wix Decl., Doc. 51-12, ¶¶ 44, 47, PageID # 1364). Frenchko cites page 61 of Sheriff Monroe's deposition as evidence that he "approved" the prosecution of Frenchko. In fact, Sheriff Monroe said no such thing:

> Q.   Okay. Did you talk to Wix or Ross before charges were filed in municipal court?
>
> A.   I'm sure I did.
>
> Q.   Okay. What did you discuss with them?
>
> A.   What happened, what was she charged with, and they knew the procedure for going down, you know, to talk with the city prosecutor.
>
> Q.   So did they inform you of the facts?
>
> A.   Yes.
>
> Q.   Did they inform you of the statute that they were going to charge her under?
>
> A.   Yes.
>
> Q.   *Did you give them the okay to do that?*
>
> A.   *I don't okay any charges.*
>
> Q.   Okay. And did you tell them to not do that?
>
> A.   I did not.

(Monroe Depo., Doc. 44-1, PageID # 589-90) (Emphasis added). Sheriff Monroe did not approve the charges. He did not do anything vis-à-vis the charges. To establish a malicious prosecution claim, a plaintiff must demonstrate that the defendant "made, influenced, or participated in the

decision to prosecute." *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015). Sheriff Monroe did not make, influence or participate in the decision to prosecute Frenchko. Agreeing with someone else's decision to file a criminal charge is not the same as making or participating in the decision to charge.

## II.      DEFENDANTS DID NOT CONSPIRE TO ARREST PLAINTIFF.

Plaintiff continues to proclaim that Defendants conspired to arrest her yet offers no support for this conclusion. If there were a conspiracy, one would expect there to be evidence of a meeting of the minds between the conspirators to further their goal. There is no such evidence in this case. Defendants' call logs and text message logs do not reflect any widespread communication between Defendants. There are no texts, at any time prior to Plaintiff's arrest, between the law enforcement defendants and the commissioner defendants. There are no texts between the law enforcement defendants within 4 weeks of the July 7, 2022 meeting—a meeting that Sgt. Wix did not even know he was going to until the day of. Plaintiff asks this Court to ignore the call and text message logs and jump to the conclusion that "Defendants planned, conspired, and created a policy to punish Frenchko's criticisms" yet this conclusion is not supported by the factual record. Moreover, Plaintiff does have the content of Commissioner Cantalamessa's text messages leading up to, during, and following Plaintiff's arrest, and none of these text messages demonstrate any conspiracy for her arrest. As Plaintiff offers nothing more than conclusory allegations of a conspiracy which are contradicted by the factual record before this Court, summary judgment is still warranted.  *See Sadler v. Michigan Dept. of Corr.*, No. 09-11375, 2011 U.S. Dist. LEXIS 64426, 2011 WL 2462028, at *9 (E.D. Mich. Apr. 21, 2011) (dismissing conspiracy claim because plaintiff's allegations are at best tenuous and thus conclusory and insufficient to establish a meeting of the minds).

Plaintiff also does not offer any response to Defendants' argument that the intracorporate conspiracy doctrine bars Plaintiff's claims for conspiracy in this case, effectively abandoning any such arguments to the contrary. *See e.g., Wood v. Third Fed. Sav. & Loan Ass'n*, 2023 U.S. App. LEXIS 30951, at *6 (6th Cir. Nov. 20, 2023) (citing *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013)).

## III.   DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S FACIAL CHALLENGE TO R.C. § 2917.12

Plaintiff spends many pages arguing that R.C. § 2917.12(A)(2) is overbroad and unconstitutional. For one thing, R.C. § 2917.12(A)(2) is not at issue in this case. Defendants do not seek the enforcement of R.C. § 2917.12(A)(2) or argue that Plaintiff's arrest was justified under R.C. § 2917.12(A)(2). That argument aside, Plaintiff misunderstands the qualified immunity analysis for a facial challenge claim.

When public officials implement validly enacted state laws that no court has invalidated, their conduct typically satisfies the core inquiry—the "objective reasonableness of an official's conduct—that the immunity doctrine was designed to test." *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 441 (6th Cir. 2016). The Supreme Court tells us that public officials should generally receive qualified immunity when enforcing properly enacted laws. *Michigan v. DeFillippo*, 443 U.S. 31 (1979). The Court noted that "[t]he enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." *Id*. at 38.

In this case, Ohio courts have consistently upheld the constitutionality of R.C. § 2917.12. *See e.g., State v. Brand*, 2 Ohio App.3d 460, 442 N.E.2d 805 (Ohio Ct. App. 1981) (rejecting facial challenge to R.C. § 2917.12); *City of Columbus v. Doyle*, 149 Ohio App.3d 164, 2002-Ohio-4490,

776 N.E.2d 537, ¶ 15 ("2317.12 is clear and unequivocal; it gives fair notice of what is forbidden. The plain meaning is that it prohibits any person from acting with a purpose to prevent or disrupt a lawful gathering and from succeeding in that effort by actually obstructing or interfering with its due conduct. This court finds no imprecision in the statutory language that would prevent a person of ordinary intelligence from knowing what is and what is not proscribed."). In *Hinners v. O'Shea*, 2022 U.S. Dist. LEXIS 98018 (N.D. Ohio May 31, 2022), this Court held that a local ordinance similar to R.C. § 2917.12(A)(1) was not facially unconstitutional. *Id*. at *69. The point is this: R.C. § 2917.12(A)(1) is not clearly established as unconstitutional. Neither the U.S. Supreme Court, the Sixth Circuit, this Court or any Ohio court has ever held that (1) R.C. § 2917.12 as a whole or (2) R.C. § 2917.12(A)(1) is facially unconstitutional. As a result, Defendants are entitled to qualified immunity because it was not clearly established that R.C. § 2917.12 was unconstitutional.

## IV.  DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S FIRST AMENDMENT CLAIM

The Supreme Court addressed the importance of probable cause to retaliatory arrest cases in *Nieves v. Bartlett*, 139 S. Ct. 1715, 204 L. Ed. 2d 1 (2019). *Nieves* dealt with an allegedly retaliatory arrest at an extreme sporting event in Alaska. *Id.* at 1720. The Court held that the existence of probable cause to arrest Bartlett necessarily defeated his retaliatory arrest claim. *Id.* at 1724. It reiterated the general rule it announced in *Hartman v. Moore*, 547 U.S. 250, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006), that in retaliatory prosecution cases a plaintiff must plead and prove the absence of probable cause for the underlying criminal charge. *Id.* However, the Supreme Court carved out a narrow exception to the general rule that the existence of probable cause will defeat a retaliatory arrest claim. Under this exception, plaintiff need not plead lack of probable cause "where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id.* at 1727.

Plaintiff cannot take advantage of the *Nieves* exception because she has failed to "present[] objective evidence that [s]he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." 139 S. Ct. at 1727. Plaintiff does not offer evidence of other similarly situated individuals who repeatedly interrupted the meeting in the same manner she did. Rather, the evidence Plaintiff offers appears to show conduct and situations different from hers. For example, Plaintiff cites a video of a person questioning Plaintiff about COVID testing after Plaintiff, apparently, returned from a trip. (See "Salsa Dancing Video" manually filed in Doc. 52, # 16). It is unclear what the context of the situation was. The person speaks for about 30 seconds and then sits down. (*Id*.). Afterwards, Commissioner Fuda continues with a discussion about COVID masking. (*Id*.). In any event, to the extent that this individual was disruptive, the disruption only lasted about 30 seconds, and Commissioner Frenchko can be heard laughing. (*Id*.). Plaintiff also relies on a video from the June 10, 2022 meeting in which an employee from the highway department speaks during the public comment portion of the meeting. (Notice of Manual Filing, Doc. 55, # 1). It is true that Commissioner Fuda interrupts the speaker, but the interruption does not disrupt the meeting. (*Id*.). Commissioner Fuda and the highway department employee end up having a 10-minute, sometimes heated but civilized, discussion about the issues that brought the employee in to speak. (*Id*.). Also, there does not appear to be any deputy present at this meeting. (*Id*. when the camera pans and shows the gallery of the meeting room).

The inference Plaintiff asks this Court to draw is that because no one else has been arrested for similar conduct, her arrest must have been motivated by her speech. But the plain language of *Nieves* requires comparative evidence, because it required "objective evidence" of "otherwise similarly situated individuals" who engaged in the "same" criminal conduct but were not arrested. *Id.* The evidence Plaintiff provides here comes up short.

Even if there was evidence of otherwise similarly situated individuals engaging in the same conduct, that evidence alone does not make a retaliation claim. The Supreme Court tells us that, if there is objective 'similarly situated' evidence, the plaintiff then must provide evidence of retaliation in the same manner as claims where the plaintiff has met the threshold showing of the absence of probable cause. *Nieves* at 1727. To make that showing, "[t]he plaintiff must show that the retaliation was a substantial or motivating factor behind the [arrest], and, if that showing is made, the defendant can prevail only by showing that the [arrest] would have been initiated without respect to retaliation." *Id*. at 1725.

Here, Frenchko does not provide any evidence against Sgts. Wix and Ross that they were motivated by retaliation. Stated differently, Frenchko makes no attempt at an individual retaliation analysis. Sgts. Wix and Ross have testified that they (1) had no animus toward Niki Frenchko, (2) did not know about any dispute between Sheriff Monroe and Frenchko and (3) arrested Frenchko for her interruptive and disruptive conduct, not the content of her interruptions. (Ross. Decl., Doc. 51-11, ¶¶ 7, 13, 47, PageID # 1344, 1347; Wix Decl., Doc. 51-12, ¶¶ 7, 13, 46, PageID # 1360-61, 1364). To defeat Sgts. Wix and Ross's qualified immunity, Frenchko is required to put forth affirmative evidence against Sgts. Wix and Ross to prove that they, individually, retaliated against her. Because Frenchko does not and cannot do so, Sgts. Wix and Ross are entitled to qualified immunity on Frenchko's First Amendment retaliation claim.

Similarly, Plaintiff lacks any First Amendment retaliation claim against the remaining Defendants as no other Defendants participated in or otherwise ordered Plaintiff's arrest. Without any adverse action taken by the remaining Defendants, Plaintiff cannot succeed on any retaliation claim against them. *See Harper v. City of Cleveland*, 781 F. App'x 389, 396 (6th Cir. 2019).

Moreover, Defendants would also be entitled to qualified immunity as they did not violate any clearly established law pertaining to Plaintiff's arrest.

**V.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S STATE LAW CLAIMS**

### A.    PLAINTIFF'S PUBLC RECORDS CLAIM FAILS

Just because this Court *can* exercise jurisdiction over state-law claims, does not mean that it should. The Sixth Circuit has repeatedly recognized that a district court should generally decline jurisdiction over state claims if it has resolved the federal claims before trial. *See Kowall v. Benson*, 18 F.4th 542, 549 (6th Cir. 2021); *Bartlett v. Washington*, 793 F. App'x 403, 408-09 (6th Cir. 2019); *Sampson v. Village of Mackinaw City*, 685 F. App'x 407, 418 (6th Cir. 2017). Indeed, there is a "strong presumption" in favor of such a dismissal. *Oberer Land Devs. Ltd. v. Sugarcreek Township*, 2022 U.S. App. LEXIS 15290, 2022 WL 1773722, at *6 (6th Cir. June 1, 2022) (quoting *Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 584 (6th Cir. 2011)). The point being: if this Court dismisses Plaintiff's federal claims, it should not retain jurisdiction over state law claims that are unrelated[3] to the federal claims.

Moreover, even if this Court did exercise supplemental jurisdiction over Plaintiff's public records claim, summary judgment would still be appropriate. Defendants' Motion for Summary Judgment and Plaintiff's Partial Motion for Summary Judgment identify two communications which could be public records requests. First, Plaintiff's August 8, 2022 email requesting "Under the ohio sunshine law, Please send me all call logs between commissioners, Gedeon, Taylor, Blair Klotz & Monroe or staff & text messages for the same, from June 25- today" (Aug 8 email, Doc. 51-6, PageID#1324). Plaintiff *did* receive the call logs and text message logs from Defendants

---

[3] If a state law claim uses the same standard as a federal claim e.g. probable cause, then the Court should also resolve the state law claim. *Aldini v. Kroger Co. of Mich.*, 628 F. App'x 347, 352 (6th Cir. 2015).

through this litigation, so such records cannot form the basis for a destruction of records claim.[4] It is unclear whether this email also requests the content of text messages from these individuals. This message is not directed at any records that Sgt. Wix, Sgt. Ross, or Sheriff Monroe possessed, which Plaintiff does not dispute. This is because Sgt. Wix and Sgt. Ross were not included in this request, and Sheriff Monroe did not have any text messages from the requested period with the stated individuals. (Aug 8 email, Doc. 51-6, PageID#1324; and see Monroe Text Logs, Doc. 56-3, PageID#1821).

As for the Commissioners, Plaintiff does not dispute that she failed to provide this request to the Clerk, whom she has repeatedly stated is responsible for fulfilling public records requests sent to the commissioners. (*See e.g.,* Meeting Minutes, Doc. 51-7, PageID#1331; Frenchko Depo. II, Doc. 50, PageID#1171-1174).). She also did not follow up on this request any time before this litigation, nor did she fulfill this request herself. Plaintiff further does not dispute the body of case law which states that requests for months of records is overly broad and thus not a public records request that was obligated to be fulfilled. (*See* Def. MSJ, Doc. 51, PageID#1286-1287) (internal citations omitted). Plaintiff's only real argument is that she was aggrieved in not having the content of text messages from "commissioners, Gedeon, Taylor, Blair Klotz & Monroe" due to the potential impact on this litigation. Yet Defendants text and call logs reflect there were very few if any responsive text messages to this request, and Plaintiff was provided the content of Commissioner Cantalamessa's text messages before and after her arrest.

---

[4] Plaintiff's Opposition attempts to argue that "Defendants further argue that Frenchko was not harmed because she received "phone logs" from Defendants' phone carriers. This argument is an assault on common sense" yet Defendants provided both text message logs as well as their call logs. Defendants never argued that call logs would include the contents of Defendants phone conversations. That would be nonsensical. Instead, Defendants argued that the text message logs do not demonstrate any records to support Plaintiff's claim of widespread text communications between Defendants, because there are no text message logs to support this inference.

Second, Plaintiff's counsel's March 9, 2023 email is the next communication at issue. Plaintiff's Opposition to Defendants Motion for Summary Judgment argues for the first time that the March 9, 2023 email was not a public records request, and that Plaintiff's counsel made another public records request on March 2, 2023. (*See* Pl. Opp., Doc. 54, PageID#1431).[5] Plaintiff uses her Opposition to Defendants' Motion for Summary Judgment to provide an email from March 2, 2023 for the first time in this litigation. (Pl. Opp., Doc. 54, PageID#1431 (citing Exhibit 4, March 2, 2023 Email)). Plaintiff did not produce this communication when requested in response to Defendants' discovery requests. More significantly, Plaintiff left off the numerous responses and records she was provided in response to her counsel's March 2, 2023 email. (*See* Exhibit 1, Email Threads). Plaintiff's March 2, 2023 public records request was handled by outside counsel due to the conflict of interest with the Trumbull County Prosecutor's office. (*See* id.). Plaintiff was provided the first batch of responsive records just two days after her March 2, 2023 request. (*See* id.). This response was supplemented on May 15, 2023 and then on June 16, 2023. (*See* id.). A final communication was sent on June 21, 2023 indicating that all records responsive to the request were provided, and there was no further communication from Plaintiff regarding her request. (*See* id.). Thus, it is disingenuous for Plaintiff to claim that "Respondents never responded with a record because they destroyed those records to conceal their plans to retaliate against Frenchko's speech" when Plaintiff's March 2, 2023 public records request was fulfilled by outside counsel retained by Defendants and completed without objection by Plaintiff. (*See* Exhibit 1, Email Threads; and *see* Pl. Opp., Doc. 54, PageID#1411). Accordingly, Plaintiff's March 2, 2023 public records request

---

[5] Since Plaintiff contends the March 9, 2023 email was not a public records request, such communication cannot form the basis for her destruction of public records claim, which necessarily requires a public records request. *See e.g., Hinners v. O'Shea*, 2022 U.S. Dist. LEXIS 98018, at *78 (Rhodes, 129 Ohio St. 3d 304 at ¶ 16.).

was fulfilled and thus cannot form the basis of a claim for destruction of public records. In sum, there is no basis for a destruction of public records claim on this record, and there is certainly not a basis to award punitive damages against Defendants either in their official or individual capacities.

The other communications referred to by Plaintiff do not amount to public records requests. Plaintiff continues to conflate the unrelated and now expired order to preserve in her criminal matter as a public records request in an attempt to skirt around the body of case law which requires a valid public records request to have been made in order to form the basis for a destruction of public records claim. However, a claim for destruction of public records requires a valid public records request, and as demonstrated above, Plaintiff received nearly all of the records requested, and her requests for the content of months of text messages, if made at all, were overly broad. Accordingly, Defendants aver summary judgment is still appropriate for this claim.

### B. PLAINTIFF'S ASSAULT AND BATTERY CLAIMS LACK MERIT

#### 1. Sgts. Wix and Ross Are Not Liable for Battery

Plaintiff does not argue, nor could she, that Sgts. Wix and Ross used excessive force during her arrest. Instead, Plaintiff argues that Sgts. Wix and Ross are liable for battery merely because they handcuffed her. Plaintiff's theory is wrong. Under Ohio law, "Officers are privileged to commit battery when making a lawful arrest, but the privilege is negated by the use of excessive force." See also *Alley v. Bettencourt*, 134 Ohio App. 3d 303, 313, 730 N.E.2d 1067 (Ohio Ct. App. 1999). The video of the arrest indisputably confirms that neither Sgt. Wix nor Sgt. Ross used excessive force on Plaintiff while arresting her. Plaintiff relies on *Love v. City of Port Clinton*, but *Love* is no help to Plaintiff. In *Love*, the primary issue was determining the statute of limitations for the claim asserted by the plaintiff. 37 Ohio St.3d 98, 98 (Ohio 1988). In dicta, the Court indicated that a police officer may be liable for battery if he or she does not follow "proper

procedures" in subduing and handcuffing a suspect. *Id*. at 100. In this case, it is undisputed that Sgts. Wix and Ross followed proper handcuffing procedure, and Plaintiff makes no attempt to argue otherwise. Accordingly, Plaintiff's state law battery claim fails as a matter of law.

### C.    PLAINTIFF'S CLAIMS ARISING FROM MARCH 9, 2023 LACK MERIT

#### 1.    Sheriff Monroe is not Liable for Assault, Battery, or Any Constitutional Violation Arising from March 9, 2023.

Plaintiff has asserted causes of action for a violation of her First and Fourth Amendment rights, as well as claims for assault and battery, against Sheriff Monroe, Trumbull County, Ohio, and the Sheriff's Department all arising from the meeting on March 9, 2023 where Sheriff Monroe merely moved Plaintiff's phone stand, which resulted in her phone momentarily falling onto the table. Such action does not amount to a constitutional violation.

A seizure under the Fourth Amendment necessarily requires "some meaningful interference with an individual's possessory interests in that property." *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 906 (6th Cir. 2019). But here, Sheriff Monroe did not interfere with Plaintiff's possessory interest in her phone.

Sheriff Monroe did not take Plaintiff's phone. (March 9th Meeting Video, Doc. 51-20, PageID#1388). Sheriff Monroe did not make contact with Plaintiff's person. (*See* id.). Plaintiff maintained control over her phone throughout the interaction. (*See* id.). Plaintiff's Facebook livestream continued before and after the event. (*See* id.). There was no damage to her phone. (*See* id.). Moreover, this incident did not silence or otherwise deter Plaintiff from voicing her dislike for the Sheriff and his department. (*See* id.). Notably, Plaintiff does not identify any factual evidence to support her Fourth Amendment claim arising from the March 9, 2023 incident. Plaintiff also does not dispute the case law cited by Defendants in their Motion for Summary Judgment with respect to this claim.

19

Plaintiff's First Amendment claim arising out of the March 9, 2023 meeting is similarly baseless. Sheriff Monroe did not attempt to restrict Plaintiff's speech, nor did he actually restrict her speech. *Hartman v. Thompson*, 2018 U.S. Dist. LEXIS 19761, at *20 (W.D. Ky. Feb. 6, 2018) (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797, 105 S. Ct. 3439, 87 L. Ed. 2d 567 (1985); *S.H.A.R.K. v. Metro Parks Serving Summit Cty.*, 499 F.3d 553, 559 (6th Cir. 2007)). He merely moved her phone stand. Plaintiff continued to livestream before, during, and immediately after the incident. She also voiced her complaints regarding Sheriff Monroe to him and to the rest of the meeting participants after the interaction. (March 9th Meeting Video, Doc. 51-20, PageID#1388). Accordingly, the record does not demonstrate any viable First Amendment violation arising from the March 9, 2023 meeting.

For similar reasons, Plaintiff does not have a viable claim for assault or battery against Sheriff Monroe arising out of the March 9, 2023 meeting either. A battery claim only exists where there is an intentional contact with another that is harmful or offensive. *Stafford v. Clever Investigations, Inc.*, 2007-Ohio-5086, P9 (citing *Love v. City of Port Clinton*, 37 Ohio St. 3d 98, 99). Likewise, a cause of action for assault requires the plaintiff to prove that "the defendant acted intending to cause a harmful or offensive contact and, in fact, a harmful contact resulted." *Qualls v. Peregrine Health Servs.*, 2022-Ohio-4644, P31 (citing *McRae v. Icon Entertainment Group, Inc.*, 10th Dist. No. 08AP-820, 2009-Ohio-5119, ¶ 8). Sheriff Monroe did not come into contact with Plaintiff's person, he merely moved her phone stand. He did not attempt to come into contact with Plaintiff's person. His contact with Plaintiff's phone stand was not harmful or offensive; he did not physically harm Plaintiff in any way. *See e.g., Gerber v. Veltri*, 203 F. Supp. 3d 846, 852 (N.D. Ohio 2016) (citing *Tarver v. Calex Corp.*, 125 Ohio App. 3d 468, 483-84, 708 N.E.2d 1041 (1998) ("To prove assault and battery under Ohio law, a plaintiff must establish that the defendant

unlawfully touched him/her with the intent of inflicting injury or at least creating fear of injury.").
Accordingly, Plaintiff's video reflects there is no basis for her assault or battery claims against
Sheriff Monroe, further warranting summary judgment on these claims.

### 2. There is no *Monell* Liability Attributable to Trumbull County, Ohio or the Trumbull County Sheriff's Department.

Plaintiff offers nothing more than conclusory allegations in order to attempt to keep
Trumbull County, Ohio and the Trumbull County Sheriff's Office named in this claim. The lone
case offered by Plaintiff, *Pembaur*, involves a decision by a county prosecutor who was acting as
the county's final decision maker to forcibly enter a place of business. The Supreme Court
specifically noted that "not every decision by municipal officers automatically subjects the
municipality to § 1983 liability. Municipal liability attaches only where the decisionmaker
possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur
v. City of Cincinnati*, 475 U.S. 469, 481, 106 S. Ct. 1292, 1299 (1986). Here, there was no ordered
action nor establishment of any official policy. Rather, the Sheriff made a one time split second
decision to move Plaintiff's phone stand away from him. Such action is far from forming any basis
for a *Monell* claim against the County and Plaintiff offers no case law on point to support her
demand for liability. Accordingly, summary judgment is still warranted for this claim.

### 3. Sheriff Monroe did not Commit a Trespass to Chattels or Conversion.

Sheriff Monroe did not commit a trespass to chattel when he moved Plaintiff's phone stand
which resulted in her phone falling onto the table. Plaintiff is correct that "A trespass to chattel
occurs when one intentionally dispossesses another of their personal property and that "it is also
trespass to chattel to take the "chattel into the custody of the law[,]"" but no such circumstances
occurred here. (*See* Pl. Opp., Doc 54, PageID#1438). Sheriff Monroe did not dispossess Plaintiff
of her phone. (March 9th Meeting Video, Doc. 51-20, PageID#1388). Sheriff Monroe merely

moved her phone stand which resulted in her phone falling onto the table. (*See* id.). Sheriff Monroe

did not take her phone. (*See* id.). Sheriff Monroe did not damage her phone. (*See* id.). Sheriff

Monroe's actions did not stop Plaintiff's Facebook Livestream, as demonstrated in her video. (*See*

id.). Sheriff Monroe certainly did not take Plaintiff's phone "into the custody of the law." (*See* id.).

In all, the March 9, 2023 incident, which was captured on Plaintiff's Facebook Livestream video,

does not demonstrate any circumstances close to a trespass to chattels claim.

Similarly, Plaintiff's Opposition demonstrates she lacks any viable conversion claim

arising from the same interaction and Plaintiff offers no argument in support of her conversion

claim. This is because such claim lacks merit. Regardless, by failing to put forth any argument in

opposition to Defendants' request for summary judgment on this claim, Plaintiff has effectively

abandoned her conversion claim. *Wood*, 2023 U.S. App. LEXIS 30951, at *6 (6th Cir. Nov. 20,

2023) (citing *Brown*, 545 F. App'x 368, 372 (6th Cir. 2013)) ("a plaintiff is deemed to have

abandoned a claim when a plaintiff fails to address it in response to a motion for summary

judgment[.]"). Even if she had not, there is no allegation that Sheriff Monroe converted the use of

Plaintiff's phone. Sheriff Monroe never seized Plaintiff's phone or took control of it. He merely

moved the stand the phone was on. Plaintiff maintained control over her phone, her Facebook

Livestream continued, and Sheriff Monroe did not damage or convert the use of Plaintiff's phone

in any way. Accordingly, even if Plaintiff had not abandoned her conversion claim, summary

judgment would still be warranted.

### D. PLAINTIFF CANNOT USE R.C. § 2307.60 or R.C. § 2921.45 AS A BASIS FOR LIABILITY

Public employees are entitled to statutory immunity unless a specific exception to

immunity applies. Those exceptions are:

(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

22

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or

(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee.

R.C. § 2744.03(A)(6). The Supreme Court of Ohio has explained that the term "expressly" means "in direct or unmistakable terms: in an express manner: explicitly, definitely, directly." *Butler v. Jordan*, 92 Ohio St. 3d 354, 357, 2001 Ohio 204, 750 N.E.2d 554, 558 (Ohio 2001). A public employee is not expressly listed as a person to which R.C. § 2307.60 applies. Because civil liability is not expressly imposed, the exception to employee immunity in R.C. § 2744.03(A)(6)(c) does not apply.

Not so fast, says Plaintiff. Plaintiff argues that "employees are not immune from state torts under R.C. § 2744.03(A)(6)(b) when they act maliciously and in bad faith." (Pltf. Resp., Doc. 54, PageID # 1439). That's true, but R.C. § 2307.60 is not a tort. Assault, battery, malicious prosecution, false arrest are torts. R.C. § 2744.03(A)(6)(b) sets the level of culpability for public employees for those torts. R.C. § 2307.60 is a statutory cause of action. To use a statute as a basis for liability against a public employee, the statute must expressly impose liability on public employees. R.C. § 2307.60 does not and, therefore, it cannot be a basis of liability against any of the Defendants. It is the same result when Plaintiff attempts to invoke R.C. § 2921.45. *Palmer v. Foley*, 2nd Dist. No. 21235, 2006-Ohio-4013, ¶ 16 (Ohio Ct. App. 2006) ("R.C. 2744.03 specifically requires that *civil* liability be expressly imposed by the statute. R.C. 2921.45 imposes criminal liability for knowing deprivations of constitutional or statutory rights. Accordingly, [Defendant's] immunity for tort claims is not removed by any alleged violation of R.C. 2921.45").

23

For the foregoing additional reasons, Defendants respectfully request that this Court GRANT their Motion for Summary Judgment.

Respectfully Submitted,

/s/ Andrew N. Yosowitz
Andrew N. Yosowitz (0075306)
Matthew S. Teetor (0087009)
Teetor Westfall, LLC
200 E. Campus View Blvd. Suite 200
Columbus, OH  43235
(614) 412-4000 – Telephone
(614) 412-9012 – Facsimile
ayosowitz@teetorlaw.com
mteetor@teetorlaw.com
*Counsel for Defendants Harold Wix and Robert Ross*

s/ Daniel T. Downey
Daniel T. Downey (0063753)
Helen K. Sudhoff (0101259)
**FISHEL DOWNEY ALBRECHT & RIEPENHOFF LLP**
7775 Walton Parkway, Suite 200
New Albany, OH  43054
(614) 221-1216 – Telephone
(614) 221-8769 – Facsimile
ddowney@fisheldowney.com
hsudhoff@fisheldowney.com
*Counsel for Defendants Sheriff Paul Monroe, Trumbull County, Trumbull County Board of Commissioners, Trumbull County Sheriff's Office, Mauro Cantalamessa, and Frank Fuda*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing **REPLY IN SUPPORT OF DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT** was served, via the Court's CM/ECF system, upon all counsel this 5th day of December, 2023.

/s/ Andrew N. Yosowitz
Andrew N. Yosowitz (0075306)
Teetor Westfall, LLC
*Counsel for Defendants Harold Wix and Robert Ross*