**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **NIKI FRENCHKO** | : | **Case Number:** 4:23-cv-00781 |
| | : | |
| Plaintiff, | : | **Judge:** J. Phillip Calabrese |
| | : | |
| -vs- | : | |
| | : | |
| **PAUL MONROE, et al** | : | |
| | : | |
| Defendants. | : | |

---

**PLAINTIFF NIKI FRENCHKO'S REPLY IN SUPPORT OF MOTION FOR**
**SUMMARY JUDGMENT AND SANCTIONS**

---

Plaintiff Niki Frenchko states the following for Reply in Support of her Motion for

Summary Judgment and Motion for Sanctions under FRCP 37.

Respectfully Submitted,

*/s/ Matt Miller-Novak*
Matthew Miller-Novak (0091402)
Steven C. Davis, Esq. (0065838)
Barron, Peck, Bennie & Schlemmer
3074 Madison Road
Cincinnati, Ohio 45209
(513) 721-1350
MMN@BPBSLaw.com
SCD@BPBSlaw.com

*/s/ David J. Betras*
David J. Betras (0030575)
6630 Seville Drive
Canfield, Ohio 44406
Telephone: (330) 746-8484
Facsimile: (330) 702-8280
Email: dbetras@bkmlaws.com

Attorneys for Plaintiff

i

# TABLE OF CONTENTS

**INTRODUCTION**...............................................................................................................1

    A. Defendants seized, arrest, and charged Frenchko under R.C. § 2917.12 in its
       entirety...............................................................................................................1

    B. Frenchko has misstated nothing...............................................................................2

       1. Defendant Monroe was actively involved in Frenchko's arrest...................2

       2. Defendant Ross was aware of the Commissioners' habitual interruptions
          before arresting Frenchko..............................................................................3

       3. Defendants Ross and Wix received notice to preserve their text messages
          and their Declarations contradict their Deposition testimony.....................4

    C. All Entity Defendants received every preservation demand and public records
       request, and their staff deleted evidence regardless.................................................5

**LAW AND ARGUMENT**.....................................................................................................8

    A. Frenchko is Entitled to Judgment that R.C. § 2917.12 is Facially Unconstitutional
       Because It is Overbroad, Regulates Viewpoints, and is Vague...............................8

    B. Defendants had notice that "outrages the sensibilities" was an unconstitutional
       standard................................................................................................................10

    C. Defendants violated the First and Fourth Amendment of the United States
       Constitution..........................................................................................................11

    D. Defendants lacked probable cause..........................................................................12

    E. Defendants unlawfully destroyed public records....................................................13

    F. Defendants spoiled evidence in violation of Federal Rule 37.................................15

    G. The self-serving Declarations of Defendants Ross and Wix are not credible........16

**CONCLUSION**.................................................................................................................17

## TABLE OF AUTHORITIES

*Matal v. Tam*, 137 S.Ct. 1744, 1763 (2018)..........................................................................8

*Higgins v. Ky. Sports Radio, LLC*, 951 F.3d 728, 734 (6th Cir. 2020)................................8

*Hicks v. Clermont Cnty. Bd. Of Comm'rs*, No. 1:17-cv-677, 2018 U.S. Distr. LEXIS
206157 (S.D. Ohio Dec. 6, 2018)..........................................................................................8

*Hinners v. O'Shea,* No. 1:19-cv-2868, 2022 U.S. Dist. LEXIS 98018 (N.D. Ohio May 31,
2022)..................................................................................................................................9, 10, 12

*Houston v. Hill*, 482 U.S. 451, 107 S. Ct. 2502 (1987).......................................................9

*Ison v. Madison Local School Dist.*, 3 F.4th 887 (6th Cir. 2021)..........................................9

*Gooding v. Wilson*, 405 U.S. 518, 92 S. Ct. 1103 (1972).......................................................9

*Terminiello v. Chicago*, 337 U.S. 1, 4-5, 69 S. Ct. 894 (1949)............................................9

*Phelps v. Hamilton*, 120 F.3d 1126, 1130 (10th Cir. 1997).................................................10

*Moore v. City of Harrodsburg*, Civil Action No. 5:22-164-DCR, 2023 U.S. Dist. LEXIS
99528, *2 (E.D. Ky. June 2, 2023)..................................................................................11, 12

*Cf. Sheck v. Baileyville Sch. Comm.*, 530 F. Supp. 679, 690 (D. Me. 1982).....................11

*Lozman v. City of Riviera Beach*, 138 S. Ct. 1945 (2018)............................................11, 12

*Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019)..................................................................12

*Wood v. Eubanks*, 25 F.4th 414, 419-421 (6th Cir. 2022)....................................................12

*Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674 (1978)..................................................13

*Kish v. City of Akron*, 2006-Ohio-1244, ¶16, 109 Ohio St. 3d 162, 846 N.E.2d 811 (Ohio
2006).............................................................................................................................13, 14

*Wellin v. City of Hamilton, Ct. of Cl.* No. 2021-00748PQ, 2022-Ohio-2661, ¶17............14

*Beaven v. United States DOJ*, 622 F.3d 540, 553-554 (6th Cir. 2010).............................15

*Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Circ. 2004).............................15

*Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)............................................15

*McClain v. Mason Cnty.,* 618 F. App'x 262, 266 (6th Cir. 2015)........................................17

iii

*Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986)......................................17

## STATUTES

*Ohio Revised Code § 2917.12*.........................................................................1, 2, 8, 9, 10, 11

*Ohio Revised Code § 149.351*................................................................................................13

*Ohio Revised Code § 149.43*.................................................................................................14

## I.     INTRODUCTION

Plaintiff Niki Frenchko ("Frenchko") respectfully requests that this Court grants her Partial Motion for Summary against Defendants Trumbull County, Trumbull County Commissioners, Trumbull County Sheriff's Department, Paul Monroe ("Monroe"), Harold Wix ("Wix"), Robert Ross ("Ross"), Mauro Cantalamessa ("Cantalamessa"), and Frank Fuda ("Fuda") because she is entitled to relief as a matter of law because: (1) R.C. § 2917.12 facially violates the First Amendment of the United States Constitution; (2) Defendants unlawfully arrested Commissioner Frenchko to punish Frenchko's viewpoints, and (3) Defendants unlawfully destroyed public records in violation of Ohio law.  Frenchko also respectfully requests that this Court grants her Motion for Sanctions because Defendants all spoiled evidence in violation of FRCP 37.  (This Reply will refer collectively to the government defendants as "Entity Defendants," all individual defendants as "Individual Defendants," and all defendants collectively as "Defendants").  In addition, Defendants attempt to rely on their own contradictions to inappropriately accuse Frenchko of misrepresenting facts in this Court.

### A. Defendants seized, arrested, and charged Frenchko under R.C. § 2917.12 in its entirely.

Defendants advance a nonsensical argument that Frenchko's case to invalidate R.C. § 2917.12 ("Statute") is a "strawman" because Defendants complain that they only want to argue now that they had probable cause under Subsection (A)(1) of the Statute and not Subsection (A)(2).  It does not matter what Defendants want to argue today.  In July of 2022, the Defendants arrested and charged Frenchko in a criminal complaint that included the **entire** Statute and **both** subsections of the Statute.  In fact, Defendants' Criminal Complaint and summons against Frenchko, which Defendant Ross verified, cited the entire Statute, which implicitly included both its subsections.  (Exhibit 1).  The

1

Warren County Municipal Court docket also listed the entire Statute as the charged offense, which includes both subsections. (Exhibit 2). Defendants' Arrest Report lists the entire Statute, which includes both subsections. (Exhibit 3 at Pg 3). Defendant Wix expressly admitted that he had no idea which subsection he arrested Frenchko under. (PAGEID#45, Wix Depo at 53: 7-10). Moreover, Defendant Wix testified that he considered "offensive" conduct disruptive under the Statute. (Id. at 30: 7-9). Frenchko is challenging the entire Statute because Defendants arrested and charged her under the entire Statute, and they have placed her in fear of future, arbitrary prosecution under both subsections of the Statute. If the Defendants wanted to only argue about Subsection (A)(1) and not (A)(2), Defendants should not have arrested and charged Frenchko under the entire Statute and both of its subsections.

**B. Frenchko has misstated nothing.**

       1. <u>Defendant Monroe was actively involved in Frenchko's arrest.</u>

Defendants' arguments that Sheriff Monroe's involvement in Frenchko's arrest was "passive" are inaccurate. Sheriff Monroe called Wix and Ross both right *before* they arrested Frenchko and *after* they arrested Frenchko. Sheriff Monroe called and texted Channel 27 Reporter, Nadine Grimley, only minutes before Frenchko's arrest, and he communicated with her immediately after Frenchko's arrest (before charges were even filed). (PAGEID#44, Monroe Depo at 72-4). Monroe also called prosecutors *before* Defendants filed charges against Frenchko. (Id. at 78-9). Monroe also reviewed the facts, watched the video, and signed off on filing charges against Frenchko.[1] (Id at 60-62). In fact, Monroe admitted he could have stopped the prosecution before it was filed but did

---

[1] Defendants play semantics to argue that Monroe did not "approve" of charging Frenchko when it is commonsense he ratified it because he is the Sheriff and obviously had the authority to stop the case from being filed.

2

not. (Id.)  Monroe spent his entire day (1) calling, texting, and helping all parties involved in the arrest; (2) bragging to the media, and (3) he eventually purged all his text messages attempting to conceal his involvement in Frenchko's retaliatory arrest.  The only thing Sheriff Monroe was "passive" about was preserving evidence as ordered.

> 2.  <u>Defendant Ross was aware of the Commissioners' habitual interruptions before arresting Frenchko.</u>

Defendants' arguments that Ross was not aware that the Commissioners had a history of interrupting one another are discredited by Ross's own testimony.    In fact, according to Ross, he was "regularly in the Commissioners' meetings."  (PAGEID#46, Ross Depo at 30).  Ross expressly admitted that he had witnessed the commissioners interrupt one another in the past.

> Q. Have you ever witnessed Mauro Cantalamessa interrupt Niki Frenchko while she was talking?
>
> A. I don't know who interrupts who, but sometimes **there's a lot of back and forth**, so I don't know who interrupts who first.  Possible.
>
> ***
>
> Q. Would you disagree that they get into matches where they interrupt one another?
>
> A. I would not disagree with that, no.
>
> *Id*. at 33-4.
>
> ***
>
> Q, All right.  And you said that in previous meetings the commissioners interrupt one another, correct?
>
> A.  Correct.
>
> *Id*. at 60: 22-24.
>
> ***
>
> Q. Okay.  You said in previous meetings that you had witnessed similar things happen, correct, with point of order?
>
> A. I've heard -- yes.

3

*Id.* at 76: 2-5. (emphasis added).

Although Ross attempted to be political about the matter in deposition, he still admitted multiple times that he witnessed prior interruptions between the commissioners during their heated debates. Moreover, Defendant Monroe and the Defendant Sheriff's Department were aware that the Department had previously removed one person from several meetings without charging him. (PAGEID#44, Monroe Depo at 51). Defendant Fuda also proclaimed in the media recently that many people acted inappropriately during meetings, and the Sheriff's Department never arrested those people.[2] The evidence in the record shows that Defendants have historically not applied the Statute to others who were not criticizing the Sheriff.

3. <u>Defendants Ross and Wix received notice to preserve their text messages, and their Declarations contradict their Deposition testimony.</u>

Defendants attempt to argue that Frenchko misrepresented that Defendants Ross and Wix received notice of the August 4, 2022, preservation order. Defendants are wrong, and they are contradicting their own deposition with self-serving declaration testimony to incorrectly accuse Frenchko of misstating facts in this Court. As an initial matter, Defendant Monroe expressly testified that Judge Frost's preservation order was forwarded to the entire Sheriff's Department, which would include both Defendants Wix and Ross. (PAGEID#44, Monroe Depo at 108). In addition, Defendant Wix contradicted his deposition testimony in his Declaration. In Paragraph 50 of his self-serving Declaration, Wix attempts to testify that "I did not know I needed to preserve all my text messages with other deputies." (See D's Response at pg. 12, citing, Doc #: 51-12). However, here is what Wix had to say in his Deposition:

---

[2] https://www.tribtoday.com/news/local-news/2023/10/frenchko-files-for-summary-judgment/

Q. Are you aware that the Defendant requested certain phone records from the County?

A   Yes.

Q. Are you aware that they requested text messages from the County?

A   Yes.

**Q. Were you told to preserve those text messages?**

**A. At the time, yes.**

Q.  Do you know if Deputy Ross was told to preserve those text messages?

A.  I do believe he was.

(PAGEID#45, Wix Depo at 86: 12-23) (emphasis added).

Therefore, Defendant Wix admitted under cross examination that (1) Frenchko requested his text messages, and (2) both he and Ross were told to preserve those text messages.   In addition, Defendant Ross also wants to try to utilize a self-serving Declaration to pretend he is positive he did not send text messages about Frenchko's arrest.   However, when pressed during cross examination, he admitted he could not actually recall whether he did.

Q.  Okay.  So if you text messaged someone at 12:28 p.m. while Commissioner Frenchko was still in the sheriff's building, it would have nothing to do with Commissioner Frenchko?

A. Probably not.

Q. Probably not?

A. Yeah.

Q. Because you don't know --

A. I don't recall, yes.

It takes gall for Defendant Wix and Defendant Ross to rely on self-serving declarations that contradict their deposition testimony to inappropriately accuse others of misstating information to this Court.

5

**C. All Entity Defendants received every preservation demand and public records request, and their staff deleted evidence regardless**.

Defendants seem to habitually ignore that Trumbull County, Trumbull County Commissioners, and the Trumbull County Sheriff's Department are all Defendants here. These parties are all public bodies.  The County Prosecutor received the preservation order, public records requests, and spoliation demands, so every Entity Defendant had notice imputed upon them.  On August 5, 2022, the special prosecutor directly messaged both the Sheriff's Department and the Commissioners and instructed both these *entities*, as well as their "staff" to preserve:

> Personal cell phones and county building phone logs, emails, **personal text messages**, written notes and correspondence, messenger messages on Facebook, Instagram and all other app or social media platforms between and among **commissioners' staff**, commissioners, **sheriffs staff**, the sheriff and Jim Misocky, between May 4 to August 4, 2022. (PAGEID#47, Frenchko's MSJ at Exhibit 5) (emphasis added).

This message is not ambiguous.  All the Entity Defendants were expressly informed that it was their duty to inform all their "staff" to preserve all "personal text messages" and "correspondence" between May 4th to August 4th, 2022.  In addition, on August 10, 2022, County Prosecutor William Danso directly messaged Sheriff Monroe and directed him as follows in **BOLD**:

> **[I]t is important that you take any and all steps necessary to preserve the information and data described in that letter, and that you communicate this duty to your staff as applicable**. (Id.) (emphasis contained in the original).

Frenchko also sent a public records request on August 8th, 2022, demanding text messages from Sheriff Monroe's "staff."  (Id. at Exhibit 6).  On March 9, 2023, Miller-Novak sent a *spoliation* demand directly to County Prosecutor William Danso.[3]

---

[3] Despite the fact that Defendants habitually mischaracterize this email as a public records request, it is not.  It was a spoliation demand.  Miller-Novak sent a public record request separately on March 2, 2023.

> We demand that your client, Sheriff Monroe, the Sheriff's Department and its agents, the Commissioners, everyone in the room today, and **every** human being, **public official**, **employee**, and **agent** in the County maintains any and all records that **relate in any manner** to both Commissioner's Frenchko's **previous arrest** and today's events during this meeting.  This includes all records, whether they exist on their personal devices or County devices . . . (Id. at Exhibit 9) (emphasis added).

This email was not ambiguous.  It was clearly a spoliation demand, and it clearly demanded that every employee preserve every text message during the relevant time period.  Nonetheless, Sheriff Monroe deleted all his messages to the Channel 27 Reporter he sent both right before and after Frenchko's arrest to conceal his involvement in the arrest.  Defendants were also on notice that Miller-Novak had directly sent a public records request to County Prosecutor Danso on March 2, 2023, which was a week before the spoliation email he sent on March 9, 2023.  Defendant County Commissioners even hired outside Counsel, Brodi Conover (from Cincinnati), to respond to these public records requests, so they clearly were aware of this request.  (See Exhibit 4).

Therefore, it is not credible for Defendants to argue that Frenchko is "misstating" facts concerning the preservation notices all Defendants received.  Every single Entity Defendant received multiple notices directly mailed to Prosecutor William Danso, and each Entity Defendant was informed that their "staff" was required to preserve every single text message.

More importantly, multiple members of Defendants' "staff" purged this evidence beyond just the named Individual Defendants.  For example, on July 7, 2022, Defendant Ross text messaged numerous deputies immediately before and after he arrested Frenchko.  Defendant Ross text messaged (1) Louis Pedula, (2) Michael Geer, (3) William Rodney Wells, (4) Joellen Weaver, (5) Tiffany Alberini, (6) Deputy Jennifer Carr, (7) Ken Robbins, and (8) Captain Todd Coonce during the time of Frenchko's arrest.  Every single

one of these "staff" members deleted every single text message communication sent right

before and after the Sheriff's Department arrested Commissioner Frenchko.  Therefore,

it is indisputable that eleven employees of the Sheriff's Department, including Ross, Wix,

and Sheriff Monroe, deleted ninety days' worth of public records they were ordered to

preserve, including every text message they sent the day of the arrest.  There are no issues

of material fact, and Frenchko has proved unequivocally that the Entity Defendants, as

well as their "staff," received notice of all preservation orders and public records requests

sent through their prosecutor's office.  It is indisputable that every one of the County's

"employees" and "agents," who should have preserved records and evidence as required,

failed to do so.

## II.  LAW AND ARGUMENT

### A.  Frenchko is Entitled to Judgment that R.C. § 2917.12 is Facially Unconstitutional Because it is Overboard, Regulates Viewpoints, and is Vague.

R.C. § 2917.12(A) expressly criminalizes the following: "(1) . . . any act which

obstructs or interferes with the due conduct of such meeting, procession, or gathering;"

or "(2) . . . any utterance, gesture, or display which outrages the sensibilities of the group."

The Statute facially punishes viewpoints. "Giving offense is a viewpoint." *Matal v.*

*Tam*, 137 S.Ct. 1744, 1763 (2018).  A state cannot prohibit speech merely because it

offends the sensibilities of others.  *Higgins v. Ky. Sports Radio*, *LLC*, 951 F.3d 728, 734

(6th Cir. 2020). In addition, R.C. § 2917.12 is unconstitutionally vague because its

"outrageous the sensibilities" language is a subjective and deprives speakers of any notice

what conduct may lead to their arrest.  In *Hicks v. Clermont Cnty. Bd. of Comm'rs*, No.

1:17-cv-677, 2018 U.S. Dist. LEXIS 206157 (S.D. Ohio Dec. 6, 2018), the Southern District

of Ohio invalidated the Clermont County Commissioners' rules of participation for

8

vagueness because, like R.C. § 2917.12, the rules restrained "any utterance, gesture, or display which outrages the sensibilities of the Board."[4]  In *Hinners v. O'Shea*, No. 1:19-cv-2868, 2022 U.S. Dist. LEXIS 98018 (N.D. Ohio May 31, 2022), this Court also held that "outrages the sensibilities" was unconstitutionally vague.

R.C. § 2917.12 is also overbroad. In *Houston v. Hill*, 482 U.S. 451, 107 S. Ct. 2502 (1987), the Supreme Court invalidated a statute for overbreadth that criminalized "willfully" "interrupting" police conduct because it criminalized protected objections to police business.  Every subsection of R.C. § 2917.12 is overbroad because the Statute can punish protected viewpoints that cause offended reactions in government listeners.  *See generally*, *Ison v. Madison Local School Dist.*, 3 F.4th 887 (6th Cir. 2021) (holding that regulations against offensive and abusive speech in public meetings is facially viewpoint based); *Gooding v. Wilson*, 405 U.S. 518, 92 S. Ct. 1103 (1972) (striking down a law for overbreadth that restrained "abusive" language, tending to cause a breach of the peace); *see also*, *Terminiello v. Chicago*, 337 U.S. 1, 4-5, 69 S. Ct. 894 (1949) (striking down a statute because it permitted the punishment of a person when his speech stirs anger in others).

Here, Frenchko's statutory claim is no "strawman" as Defendants suggest.  Defendants' criminal Complaint and Summons, as well as the Warren County Municipal Court Docket, both clearly exhibit that Defendants charged Frenchko under the entire Statute, which includes both Subsection (A)(1) and Subsection (A)(2).  (Exhibit 1; Exhibit 2).  Defendant Wix expressly admitted he had no clue which subsection he arrested Frenchko under.  And Defendants' Arrest Report expressly designated the **entire** Statute,

---

[4] Plaintiff's Counsel Miller-Novak represented the plaintiff in *Hicks*.

which would include **both** its subsections. (Exhibit 3). Defendant Monroe approved Frenchko's prosecution because he was outraged by the manner she spoke to the clerk, which involved his subjective outraged sensibilities. (PAGEID#44 at 55). Defendant Wix further admitted that he believes "offensive" conduct is criminal under the Statute. (PAGEID#45 at 30). Therefore, Defendants seized, arrested, and charged Frenchko under the entire Statute, and both its subsections.

As written, the entire Statute could criminalize displaying certain signs that cause harsh reactions in a meeting. For example, if a person were to bring a pro-life sign with violent images into a meeting, and those images caused the rest of the audience to lose its control in a manner that interfered with the meeting, that person would be subject to prosecution under **both** 2917.12(A)(1) and 2917.12(A)(2) because her conduct (even though protected) would constitute "any" "act" that "disrupted" or "interfered" with the meeting in violation of Subsection (A)(1), and she would have also made a "display" that "outraged" the "sensibilities of the group" in violation of Subsection (A)(2).

Defendants have placed Frenchko in fear of future arbitrary prosecution of speech, which they find offensive under the entire Statute generally. See *Phelps v. Hamilton*, 120 F.3d 1126, 1130 (10th Cir. 1997) (holding that anti-homosexual-funeral picketers had standing to challenge an entire statute they were not charged under because the state placed them in reasonable fear of future prosecution of that statute). R.C. § 2917.12 is unconstitutionally overbroad, viewpoint based, and vague in the manners Frenchko has advanced. This Court should invalidate it as a matter of law.

10

### B. Defendants had notice that "outrages the sensibilities" was an unconstitutional standard.

In May of 2022, the Northern District of Ohio expressly held that the phrase "outrages the sensibilities" violated the First Amendment as applied to speech in *Hinners*, No. 1:19-cv-2868, 2022 U.S. Dist. LEXIS 98018.  Nonetheless, Defendants' Arrest Report cites the entire Statute, and Frenchko's Criminal Complaint cited the entire Statute, which includes the "outrages the sensibilities" standard of R.C. § 2917.12(A)(2).  Defendants' arrest and prosecution of Frenchko was unconstitutional on its face under this Court's precedent.

### C. Defendants violated the First and Fourth Amendment of the United States Constitution.

When a government does not typically enforce rules against people, it may not do so arbitrarily without violating the First Amendment.  In *Moore v. City of Harrodsburg*, Civil Action No. 5: 22-164-DCR, 2023 U.S. Dist. LEXIS 99528, *2 (E.D. Ky. June 2, 2023), the court there described the government's meetings as the "wild west" because the government did not apply consistent rules to regulate speech in its meetings.[5]  However, the government arbitrarily applied rules to the speaker because he was a critic, and they decided to silence insulting statements he wanted to make.  *Id*. at **12-13.  The court there held that this arbitrary application of rules was unconstitutionally viewpoint based.  *Id.*, *citing*, *Cf. Sheck v. Baileyville Sch. Comm*., 530 F. Supp. 679, 690 (D. Me. 1982).

In *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945 (2018), the Court determined that a government could be held liable for speech retaliation even when probable cause exists if top policymakers are involved in that prosecution.  When top policymakers are involved in the prosecution of a critic, like Sheriff Monroe here, it creates a unique set of

---

[5] Frenchko's Counsel, Miller-Novak, represented the plaintiff in *Moore*.

11

circumstances. *Id.* at 1954. This is especially true when these policymakers plan to retaliate against criticisms. *Id.* The Supreme Court has also held that "**the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been**." *Nieves v. Bartlett,* 139 S. Ct. 1715, 1727 (2019) (emphasis added).

Defendants attempt to argue that occurrences predating the July 7, 2022, meeting are irrelevant here. This argument runs completely afoul of Supreme Court precedent laid out in both *Lozman* and *Nieve*s. Transparently, Defendants want to ignore this evidence because it overwhelmingly exhibits the extreme hypocrisy and viewpoint discrimination motivating Defendants' decision to accuse and arrest Frenchko of disrupting the July 7, 2022, meeting. Defendants' meetings prior involved constant interruptions, arguments, as well as salsa dancing, and Defendant Fuda waiving around images of used feminine hygiene products. Defendant Ross admitted he knew that interruptions occurred in past meetings. Moreover, Defendant Monroe approved prosecuting Frenchko even though he was aware that the Sheriff's Department did not arrest a member of the public they removed from several separate meetings. Defendants treated Frenchko differently than every other person who interrupted others in their meetings because she criticized the Sheriff's Department and would not apologize.

### D. Defendants lacked probable cause.

You simply cannot disrupt chaos. Insults and comments that outrage officials' sensibilities are protected from prosecution as a matter of law. *Wood v. Eubanks*, 25 F.4th 414, 419-421 (6th Cir. 2022); *Hinners*, No. 1:19-cv-2868, 2022 U.S. Dist. LEXIS 98018. No reasonable officer should think that a few interruptions in one day were

12

criminal, when that officer is aware that interruptions were common in other meetings. Arbitrary application of rules to stifle critical speech are not proper restraints. *Moore v. City of Harrodsburg*, Civil Action No. 5: 22-164-DCR, 2023 U.S. Dist. LEXIS 99528, **11-12.  Sheriff Monroe acted unreasonably when he approved filing charges against Frenchko because he was angry that she insulted the clerk.

Defendants also recklessly omitted exculpatory evidence to file their probable cause affidavit. *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674 (1978).  Defendants did not inform the court deputy that interruptions and arguments were common occurrences in those meetings, and that Defendant Fuda did not typically even enforce Robert's Rules with any regularity.  Defendants' actions were reckless, they intended to retaliate against Frenchko, and they destroyed their text messages to conceal their plans to retaliate against Frenchko.

### E. Defendants unlawfully destroyed public records.

"Public records are one portal through which the people observe their government, ensuring its accountability, integrity, and equity while minimizing sovereign mischief and malfeasance."  *Kish v. City of Akron*, 2006-Ohio-1244, ¶16, 109 Ohio St. 3d 162, 846 N.E.2d 811 (Ohio 2006).  R.C. § 149.351 "proscribes the destruction, mutilation, removal, transfer, or disposal of or damage to public records and imposes penalties for violation of the law." *Id*. at ¶18. Unless otherwise exempted or excepted, most records that document the activities of a public office satisfy the definition of a "record."  *Id*. at ¶20.  A government unlawfully destroys a public record in violation of R.C. § 149.351 when it engages in "any attempted or actual removal, mutilation, destruction, or transfer of or damage to a public record that is not permitted by law."  *Id*. at ¶42.

13

Defendants Trumbull County, Trumbull County Commissioners, and Trumbull County Sheriff's Department are all "governments" and every one of them destroyed volumes of public records.  Defendants are clearly attempting to make this matter much more complex than it is to escape their undeniable destruction of public records.  Here is a list of very simple realities that Defendants cannot overcome here.

1) Text messages that document government activities are public records. *Kish,* 2006-Ohio-1244, ¶20.

2) Defendant Trumbull County is a "public body" under the Open Records Act. (R.C. § 149.43(A)(1) expressly defines a "county" as a public office).

3) Defendant Trumbull County Commissioners is a "public body" under the Open Records Act. *Id.*

4) Defendant Trumbull County Sheriff's Department is a "public body" under the Open Records Act. *Id.*

5) Defendants' "staff" members are officials of these three "public bodies."

6) Frenchko issued two separate public records requests, which included Defendants' destroyed records on August 8, 2022, and March 2, 2023.

7) Frenchko directly emailed her August 8, 2022, request to the Sheriff and the Commissioners.

8) Frenchko's Counsel directly emailed the County Prosecutor Frenchko's March 2, 2023, public records request.

9) Defendants staff destroyed ninety days' worth of text messages regardless.

Defendants now want to split hairs and complain they could not understand these public records requests, but they never were interested in actually clarifying these

14

requests after receiving them as required under Ohio law.  See *Wellin v. City of Hamilton, Ct. of Cl.* No. 2021-00748PQ, 2022-Ohio-2661, ¶ 17 (public office failed to inform requester how the office maintained and accessed its records when it merely offered to requester to "contact" the office "[i]f you would like to clarify or revise your request"). Defendants instead unlawfully destroyed public records, so they could deprive Frenchko of evidence required for her both her criminal defense and these claims.

### F. Defendants spoiled evidence in violation of Federal Rule 37.

Under the plain language of FRCP 37, a party may move to compel discovery when the other party fails to produce evidence or refuses to produce evidence.  A trial court may compel the production of this evidence, and it may award the movant her attorney fees. A party may also move for sanctions for spoliation when evidence is destroyed.  A moving party may receive inferences and other sanctions for spoliation when the other party willfully destroys evidence knowing it had the duty to preserve that evidence.  *Beaven v. United States DOJ*, 622 F.3d 540, 553-554 (6th Cir. 2010).  Thus, an adverse inference for evidence spoliation is appropriate when the destroyer knew evidence was relevant for trial and lost or destroyed the evidence.  *Id.*  (citing *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir. 2004)).  "An obligation to preserve may arise 'when a party should have known that the evidence may be relevant to future litigation.'"  *Id.* (citing *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)).  Proper spoliation sanctions serve fairness, but they are also punitive.  *Id.*

As an initial matter here, Defendants Sheriff Department, Trumbull County, Defendant Ross, Defendant Wix, and Defendant Monroe have not attempted to even try to restore any of the records they deleted.  Therefore, multiple Entity Defendants were aware for months that their staff deleted evidence, and they have sat on this spoliation,

15

and they continually attempt to enjoy the fruits of it.  Every text message Defendants destroyed was a public record, and Defendants were required to preserve them regardless of whether they received a spoliation letter.  More importantly, Defendants received an abundance of notice that they were required to maintain these records.  A court ordered Defendants to have their "staff" preserve text messages on August 4, 2022.  The Special Prosecutor ordered Monroe to have his "staff" preserve their text messages on August 5, 2022.  The County Prosecutor again instructed Monroe to have his "staff" preserve their text messages on August 10, 2022.  Frenchko requested these staff messages on August 8, 2022.   Miller-Novak emailed and demanded that the Entity Defendants had their "employees" and "agents" preserve these messages on March 9, 2023.

Here is a list of every single one of Defendants' "staff" members and officials, who deleted ninety days' worth of text messages between May 4, 2022, and August 4, 2022, regardless of the preservation demands: (1) Louis Pedula; (2) Michael Geer; (3) William Rodney Wells; (4) Joellen Weaver; (5) Tiffany Alberini; (6) Jennifer Carr; (7) Ken Robbins; (8) Captain Todd Coonce; (9) County Clerk Paula Klotz; (10) Defendant Wix; (11) Defendant Ross; (12) Defendant Cantalamessa; and (13) Defendant Monroe.

Therefore, the Record shows that this entire list of thirteen County officials, including arresting Deputy Defendant Ross and Monroe, communicated through text messages on the day the Defendants arrested Commissioner Frenchko.   These County officials received notice to preserve these messages to the County Prosecutor.  And they all destroyed this evidence.

16

## G. The self-serving Declarations of Defendants Ross and Wix are not credible.

It is sad enough that Defendants brashly deleted ninety days' worth of public records, it is another matter altogether that Defendant Ross and Wix have the audacity to rely upon contradictory, self-serving declarations to inappropriately accuse others of misrepresenting material facts in this Court. The sham affidavit rule is well-established. The rule states that parties may not create a factual issue by "filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." *McClain v. Mason Cnty*., 618 F. App'x 262, 266 (6th Cir. 2015), *quoting*, *Reid v. Sears, Roebuck & Co*., 790 F.2d 453, 460 (6th Cir. 1986). "Under the rule, a post-deposition affidavit" "may be properly stricken by the district court for two reasons: first, if an affidavit 'directly contradicts' the affiant's prior deposition testimony, it should be stricken 'unless the party opposing summary judgment provides a persuasive justification for the contradiction.'" *Id.* When asked in deposition if he received notice to preserve his text messages, Defendant Wix admitted that both he and Ross had received notice to preserve them. Now, Wix wants to flip the script in his Declaration. When pressed on whether he could recall whether he sent messages about Frenchko's arrest, Defendant Ross admitted that he could not actually recall. He now also wants to flip that script.

Defendants' declarations contradict their own testimony, and this Court should not give them any credence.

## III. CONCLUSION

Accordingly, Frenchko respectfully requests that this Court grants her Partial Motion for Summary Judgment, as well as her Motion for Sanctions for Defendants' spoliation of evidence.

17

Respectfully Submitted,

***/s/ Matt Miller-Novak***
Matthew Miller-Novak (0091402)
Steven C. Davis, Esq. (0065838)
Barron, Peck, Bennie & Schlemmer
3074 Madison Road
Cincinnati, Ohio 45209
(513) 721-1350
MMN@BPBSLaw.com
SCD@BPBSlaw.com

***/s/ David J. Betras***
David J. Betras (0030575)
6630 Seville Drive
Canfield, Ohio 44406
Telephone: (330) 746-8484
Facsimile: (330) 702-8280
Email: dbetras@bkmlaws.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I certify that I served notice of this subpoena on Defendants' Counsel via this Court's electronic filing notification system on December 6, 2023.

***/s/  Matt Miller-Novak***

18